IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TRP Brands LLC | Case No. 24-01529 |
| Debtor. | Hon. David D. Cleary |

**RESPONSE OF DEBTORS IN OPPOSITION TO JOLA INTERACTIVE LLC'S MOTION FOR AN ORDER SETTING DEADLINE FOR DEBTOR TO ASSUME OR REJECT CERTAIN EXECUTORY CONTRACTS**

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC, the "**Debtors**" in these jointly administered cases, by and through their counsel, Matthew T. Gensburg, E. Phillip Groben and Gensburg Calandriello & Kanter P.C. respectively submit the following as their response in opposition to *Jola Interactive LLC's Motion for an Order Setting Deadline for Debtor to Assume or Reject Certain Executory Contracts* (the "**Motion**") [Doc. No 156].

**I.      Summary**

1.      In its Motion, Jola Interactive LLC ("Jola") requests that the Court accelerate the date by which the Debtors must decide whether to assume or reject a certain Website Development Agreement and Maintenance Plan under Section 365(d)(2) of the Bankruptcy Code.  For cause, they argue that the Development Agreement will mature on June 30, 2024, and that it would be inequitable to allow the Debtors to receive the full benefit of Jola's post-petition services, even if paid for, without having to cure its pre-petition defaults.  Jola cites to no cases which support this proposition, is incurring no harm which would justify accelerating the section 365(d)(2) date, and seeks relief designed to preserve leverage through which it might force the Debtors to incur cure costs which would otherwise be avoidable, in derogation of the purpose of section 365.  The

Motion should be denied.

## II.        Statutory Framework

2.        Jola's motion implicates Section 365 of the Bankruptcy Code which, recognizing that executory contracts may represent valuable assets of an estate, grants the debtor the right, subject to court approval, to assume those contracts. *In re Monroe Well Service, Inc.,* 83 B.R. 317, 320 (Bankr.E.D.Pa.1988).

3.        If an executory contract is assumed, then the estate becomes liable for the full performance of the contract and must cure any and all prepetition defaults.  Claims arising from an assumed executory contract become first priority administrative obligation of the estate, as do any damages which might arise from a subsequent postpetition breach or rejection. *Monroe Well Service, Inc.,* 83 B.R. at 321.

4.        Alternatively, section 365 grants the debtor the right to reject executory contracts which are burdensome to the estate, with all prepetition defaults and damages arising from rejection constituting an unsecured claim against the estate. 11 U.S.C. §365(g)(1).  Because rejection constitutes a breach of contract, it excuses further performance by the non-debtor party, thereby precluding the debtor from availing itself of post-rejection contractual benefits. *In re Crippin*, 877 F.2d 594 (7th Cir.1989)

5.        While Court approval is required as to any decision to assume or reject, the standard for review related to such decisions is the "business judgment" test. *Monroe Well Service, Inc.,* 83 B.R. at 320.  And as noted in *Matter of J.C. Penney Direct Marketing Services, L.L.C.*, 50 F.4th 532 (5th Cir.2022), the inquiry is whether the debtor's decision regarding the executory contract benefits the debtor, or enhances its ability to reorganize, not whether the decision harms the counter-party.

6. Section 365(d)(2) provides, as a default, that "the trustee may assume or reject an executory contract * * * of the debtor at any time before the confirmation of the plan." But it also allows the court, for cause shown, upon request of any party to such contract, to "order the trustee to determine within a specified period of time whether to assume or reject such contract * * * *." When such a request is made, the movant, here Jola, carries the burden of demonstrating "cause." *In re Dana Corp.,* 350 B.R. 144, 147 (Bankr.S.D.N.Y.2006). Jola has failed to meet its burden.

### III      Objection

7. In support of its motion, Jola notes that the Development Agreement at issue will expire on June 30, 2024, but that it is unlikely that any plan developed by the Debtors will be confirmed prior to that date. As a consequence, Jola complaints that, absent an accelerated deadline for the Debtors to assume or reject the agreements, the Debtors will reap the benefits of the Development Agreement by requiring Jola to continue to perform post-petition, while also allowing the Development Agreement to expire on its own terms." It argues that such an event would be inequitable. Jola cites to no cases which actually support this argument.

8. In *In re Adelphia Communications Corp.,* 291 B.R. 283, 292-93 (Bankr.S.D.N.Y.2003) the bankruptcy court described twelve factors that have been considered in deciding whether the date for the debtor to assume or reject a contract should be accelerated. These factors include: (1) the nature of the interests at stake; (2) the balance of hurt to the litigants; (3) the "good to be achieved"; (4) the safeguards afforded to the litigants; (5) whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary; (6) the debtor's failure or ability to satisfy post-petition obligations; [*In re Burger Boys,* 94 F.3d 755, 761 (2nd Cir.1996) ("whether the debtor was paying for the use of the property,"); *Theatre Holdings Corp. v. Mauro (In re Theatre Holding Corp.),* 681 F.2d 102, 105 (2nd Cir.1982) (Noting, in

3

connection with its affirmance of Bankruptcy Judge Schwartzberg's determination to require assumption or rejection within 30 days, that the debtor was not paying for use of the property)]; (7) the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code, [*Burger Boys,* 94 F.3d at 761; *Theatre Holding,* 681 F.2d at 105–106]; (8) the importance of the contract to the debtor's business and reorganization; (9) whether the debtor has sufficient time to appraise its financial situation and the potential value of the assets in formulating a plan; (10) whether there is a need for judicial determination as to whether an executory contract exists; (11) whether exclusivity has been terminated; and (12) "above all," the purpose of Chapter 11, i.e., to permit successful rehabilitation of debtors.  These twelve factors lead the Court to balancing the interests of the non-debtor counter-party against the interests of the debtor and its estate, *In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr.D.Del.2001), while ultimately recognizing that any decision to assume or reject, including the timing of that decision, should benefit the bankruptcy estate and promote the debtor's successful reorganization.

9. None of the factors outlined in *Adelphia*, to the extent they can be applied to the unique facts of this case, support accelerating the section 365(d)(2) date.  Jola bluntly admits that its goal is to recover the prepetition balance due under its contracts, preferably as an administrative claim.  The only harm Jola identifies should the Motion be denied is the perceived loss of leverage that would otherwise arise from the threat of an early termination of its contracts.  The Debtors, on the other hand, have a goal of minimizing administrative claims in furtherance of its restructuring.

10. In balancing these competing interests, it is important to note that Jola is being paid for all post-petition services provided, that is, the Debtors have satisfied and continues to satisfy all of their post-petition obligations to Jola.  Yes, there is a pre-petition arrearage under the

4

contracts, but as noted in *Physician Health* "even if the Debtors were in default of the pre-petition [agreement], it is not a legally cognizable reason to compel the Debtors to decide on an expedited basis whether to assume or reject that agreement." *Physician Health.*, 262 B.R. at 294.

11.  The Debtors are fiduciaries, required to exercise their business judgment in a manner to maximize the value of their assets, minimize their administrative expenses and otherwise promotes their rehabilitation. Therefore, the implied question contained in the Motion is whether it would be appropriate for the Debtors in exercising their business judgment to assume the Jola contracts, pay the required cure amount, just to have the contracts mature on their own accord within 30 to 45 days, i.e., in a situation where the contract currently does not provide for a long-term relationship? *Matter of J.C. Penney Direct Marketing Services, L.L.C.*, 50 F.4th 532 (5th Cir.2022)  *Public Svc. Co. of New Hampshire v. New Hampshire Elec. Coop., Inc. (In re Public Svc. Co. of New Hampshire)*, 884 F.2d 11, 14-15 (1st Cir.1989) ("interests of creditors collectively and the bankrupt estate as a whole will not yield easily to the convenience or advantage of one creditor out of many.")

12.  This is not the usual case where section 365(d)(2) motions arise. In those cases, the debtor is not only in default under the contract, but there also exists real determent to the moving party from allowing a delay in the section 365 decision in that the counterparty is being deprived of the use or benefit from its property, without any payment. *In re N-Ren Corp.,* 69 B.R. 85. 86 (Bankr.S.D.Ohio 1987). In *In re Enron Corp.*, 279 B.R. 695, 700-01 (Bankr.S.D.N.Y.2002), although the court ultimately denied the motion to accelerate the section 365(d)(2) date, the non-debtor counterparty (here Florida Gas) asserted that it was engaged in several major expansion projects for its gas pipeline system and believed that, in order not to over expand the pipeline, it needed to learn the extent to which debtor intended to retain its contracted

for capacity. In *In re Travelot Co.*, 286 B.R. 462, 466 (Bankr.S.D.Ga.2002), CNN, insisted that the delay was depriving it of business opportunities to seek a qualified alternative source for providing the goods and services which Debtor would have provided, in that CNN could not contract with such alternative partners so long as the possibility of a Court-ordered assumption of the Contract remained. In the instant case, Jola faces no unique exposure which is not otherwise subject to compensation under the Bankruptcy Code.

13. Jola argues that an accelerated deadline for the Debtors to assume or reject the Development Agreement is required in order to avoid the inequitable result of the Debtors deriving the benefit of the contracts without assuming its burdens. This same argument was rejected in *Matter of Whitcomb & Keller Mortg. Co., Inc.*, 715 F.2d 375, 379-80 (7th Cir.1983), which stated that:

> it may be noted that general principles governing contractual benefits and burdens do not always apply in the bankruptcy context. The purpose of the Bankruptcy Code is to "suspend the normal operation of rights and obligations between the debtor and his creditors." *Fontainebleau Hotel Corp. v. Simon,* 508 F.2d 1056, 1059 (5 Cir.1975). Moreover, successful reorganization under Chapter 11 depends on relieving the debtor of burdensome contracts and pre-petition debts so that "additional cash flow thus freed is used to meet current operating expenses." H.R.Rep. No. 595, 95th Cong., 1st Sess. 221 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6181. The post-petition services provided by Data-Link were operating expenses which Whitcomb & Keller paid in full. But merely providing such services did not alter Data-Link's position as a general unsecured creditor on its *pre-petition* claim. * * * * Here it is undisputed that Whitcomb & Keller paid in full for all services rendered during the administration of the estate, including the preparation of the data base tape. The only alleged breach of the executory contract relates to the indebtedness owed by Whitcomb & Keller when the petition was filed. Data-Link suffered no harm nor prejudice through the continued utilization of its computer services. Rather it presumably earned a profit from the continued use.

14. In these cases, which have been pending for three months, the Debtors are still evaluating whether it is in their best interests to assume the Jola contracts. In the meantime, the Debtors have satisfied and will continue to satisfy all of their post-petition obligations to Jola.

Jola's motion should be denied.

## IV    Conclusion

WHEREFORE, for all of the foregoing reasons, TRP Brands LLC and The RoomPlace Furniture and Mattress LLC respectfully request that this Court deny Jola Interactive's Motion for an Order Setting Deadline for Debtor to Assume or Reject Certain Executory Contracts.

    Respectfully Submitted,

    TRP Brands LLC,
    and The RoomPlace Furniture and Mattress
    LLC, Debtors herein.

    By:    /s/ E. Philip Groben
            One of its Attorneys

E. Philip Groben (ARDC# 6299914)
Email: pgroben@gcklegal.com
Matthew T. Gensburg (ARDC# 6187247)
Email: mgensburg@gcklegal.com
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams St., Ste. 2425
Chicago, Illinois 60606
Phone:  312-263-2200
Fax:  312-263-2242