**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| TRP BRANDS LLC, et al. | Case No. 24-01529 (Jointly Administered) |
| | Hon. David. Cleary |
| Debtors. | |

**AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**OF TRP BRANDS LLC AND THE ROOMPLACE FURNITURE**
**AND MATTRESS, LLC,**

**GENSBURG CALANDRIELLO &
KANTER, P.C.**
Matthew T. Gensburg (ARDC # 6187247)
E. Philip Groben (ARDC# 6299914)
200 West Adams Street
Suite 2425
Chicago, Illinois 60606
Tel. (312) 263-2200
Fax (312) 263-2242
mgensburg@gcklegal.com
pgroben@gcklegal.com

*Counsel for the Debtor and Debtor-in-Possession*

## INTRODUCTION

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC as Debtors and Debtors-in-Possession in these jointly administered Bankruptcy Cases hereby propose the following Plan for the reorganization of the Debtors and the resolution of the outstanding Claims against and Equity Interests in the Debtors pursuant to the provisions of Chapter 11 of the Bankruptcy Code, and request Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.  Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article I of the Plan or otherwise as provided in the text of the Plan.  The Debtors are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

In summary, but subject to more specific details provided herein, the Plan provides for the reorganization of the Debtors and distribution of the New Membership Interests (as defined below) of the Reorganized Debtors (as defined below) to Furniture Asset Partners, LLC's ("**FAP**") or the FAP Designee (as defined below) in full satisfaction of FAP's Secured and General Unsecured Claims.  The Plan further provides for the creation of a Creditor Trust and the designation of a disinterested third-party acceptable to the Debtors and the Official Committee of Unsecured Creditors to serve as the Creditor Trustee.  The Plan contemplates the assignment to the Creditor Trust of the Creditor Trust Assets (as defined below).  The assets transferred to the Creditor Trust shall be administered for the benefit of holders of Allowed Claims.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or Equity Interest until such time as the Debtors' Joint Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Equity Interests entitled to vote on the Plan.  The Disclosure Statement will be approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and the Disclosure Statement will be distributed simultaneously with the Plan to all Holders of Claims and Equity Interests whose votes are being solicited.  The Disclosure Statement contains, among other things, (a) a discussion of the Debtors' history, businesses, properties, and operations, (b) certain tax consequences of the Plan, (c) a summary of significant events which have occurred to date in the Bankruptcy Cases, (d) a summary of the means of implementing and funding the Plan, and (e) the procedures for voting on the Plan.  Unless otherwise ordered by the Bankruptcy Court, no materials, other than the Plan and the accompanying Disclosure Statement, Disclosure Statement Approval Order, and Ballot may be used in soliciting acceptances or rejections of the Plan.  ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT, AND ANY EXHIBITS ATTACHED THERETO, IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications to the Plan set forth in Article XII, Paragraph 1 of the Plan, the Debtors expressly reserve the right to alter, amend, modify, revoke or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

IN THE OPINION OF THE DEBTORS, THE TREATMENT OF CLAIMS UNDER THE PLAN CONTEMPLATES A RECOVERY NOT LESS THAN THAT WHICH IS LIKELY TO BE ACHIEVED IN A LIQUIDATION OF THE DEBTORS UNDER CHAPTER 7 OF THE BANKRUPTCY CODE. ACCORDINGLY, THE DEBTORS BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS, AND THE DEBTORS RECOMMEND THAT CREDITORS VOTE TO ACCEPT THE PLAN.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTORS' BUSINESSES, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTORS, CERTAIN TAX CONSEQUENCES OF THE PLAN, TRANSACTIONS TO WHICH THE DEBTORS WERE OR ARE PARTIES, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTORS AND NOT TO ANY OTHER PARTY.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

### 1.    Defined Terms

Unless the context requires, the following terms shall have the following meanings when used in capitalized form in this Plan:

a.    **"<u>Administrative Expense Claims</u>"** means (a) any cost or expense of administration of the Bankruptcy Cases under Section 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files, as applicable, a timely proof of claim, application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Bankruptcy Cases on or before the applicable bar date, including the Administrative Expense Claim Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estate or operating the businesses of the Debtors (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in Possession in the ordinary course of their businesses, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtors for any Postpetition tax year or period, and (v) compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court); (b) all fees and charges assessed against the Estates under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (c) any

and all other costs or expenses of administration of the Bankruptcy Cases that are allowed by a Final Order of the Bankruptcy Court; provided, however, that, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any Cure Claim, any Disallowed Claim, or, unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 5.  In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense, except for any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtors for any Postpetition tax year or period and claims arising under Section 503(b)(9) of the Bankruptcy Code.

b.      "**Administrative Expense Claim Bar Date**" means the first Business Day that is thirty (30) days after the Effective Date and is the deadline for a Holder of an Administrative Claim, other than a holder of a Claim under Section 503(b)(9), to file a request with the Bankruptcy Court for payment of an Administrative Claim in the manner indicated in Article II, Paragraph 1 of this Plan.  Any Holder of an Administrative Expense Claim (including a Holder of a Claim for Postpetition federal, state or local taxes) that does not file an application, motion, request or other Bankruptcy Court-approved pleading by the applicable Administrative Expense Claim Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claim against the Debtors, the Creditor Trust, or any of their Properties or against the Estates, and such Holder shall not be entitled to participate in any Distribution under the Plan on account of any such Administrative Expense Claim.  Administrative Expense Claims for any fees and charges assessed against the Estate pursuant to Section 1930 of Title 28 of the United States Code and any fees, costs and expenses incurred by the Debtors in administering the provisions of this Plan prior to the Effective Date, shall be exempt from the Administrative Expense Claim Bar Date.

c.      "**Allowed Amount**" means the dollar amount in which a Claim is allowed.

d.      "**Allowed Claim**" means a Claim or that portion of a Claim which is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed on or before the Bar Date or the Governmental Unit Bar Date, as applicable, or, by order of the Bankruptcy Court, was not required to be so filed, or (b) as to which no Proof of Claim was filed on or before the Bar Date or the Governmental Unit Bar Date, as applicable, but which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) and (b) above, as to which either (i) no objection to the allowance of such Claim has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court, or (ii) any objection as to the allowance of such Claim has been settled or withdrawn or has been overruled by a Final Order.  "Allowed", when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

e.      "**Assumed Contracts**" has the meaning ascribed to such term in Article VII of the Plan.

f.      "**Avoidance Actions**" means any and all actions to avoid or recover a transfer of Property of the Debtors' Estates or an interest of the Debtors in Property under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Section 542, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or under any other similar applicable federal, state or common law, regardless of whether or not such action has been commenced prior to the Effective Date. For avoidance of doubt, Avoidance Actions will not include any actions under Section 542, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code with respect to post-petition refunds made by Tempur Sealy International, Inc. to the Debtors, but only to the extent that any such actions would result in a double recovery.

g.      "**Ballot**" means the ballot accompanying the Disclosure Statement and the Plan, on which Holders of Impaired Claims entitled to vote on the Plan may indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

h.      "**Backstop Commitment**" means the Commitment by FAP to provide up to a maximum of $150,000 of funding to the Creditor Trust on the Effective Date in accordance with the terms of the Backstop Commitment Letter.

i.      "**Backstop Commitment Letter**" means the commitment letter to be included in the Plan Supplement, by and between the Debtors, FAP and the Committee, documenting the terms of the Backstop Commitment, including, without limitation, the following terms: (i) maximum backstop loan amount of $150,000.00 for working capital requirements of the Creditor Trust; (ii) a backstop fee of $10,000, payable only if funds are drawn by the Creditor Trust; (iii) interest rate of 8% for any and all loans drawn by the Creditor Trust; (iv) repayment of any loans drawn, the backstop fee, and any interest accrued will be made from first available net proceeds of Creditor Trust Assets after satisfaction of the Allowed Amount of any Administrative Expense Claims, including the Allowed Administrative Expense Claims of Professionals; provided that such backstop loan repayments shall be made prior to any payments to Allowed General Unsecured Claims and other amounts necessary for administration of the Creditor Trust.

j.      "**Bankruptcy Cases**" means the cases of the Debtors currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, which cases were commenced by the Debtors on the Petition Date and presently bear Case Nos. 24-1529 and 24-1530.

k.      "**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Cases.

l.      "**Bankruptcy Counsel**" means Gensburg Calandriello & Kanter, P.C.

m.      "**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

n.      "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as promulgated under Section 2075 of Title 28 of the United States Code, and the Local

Rules of the United States Bankruptcy Court for the Northern District of Illinois, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Cases.

      **o.**      **"Bar Date"** means June 17, 2024, the date set by the Bankruptcy Court as the last day for filing a Proof of Claim against the Debtors in the Bankruptcy Cases, including any claims arising under Section 503(b)(9) of the Bankruptcy Code, but excluding (a) other Administrative Expense Claims for which a request for payment must be filed with the Bankruptcy Court by the Administrative Expense Claim Bar Date, (b) a Claim for which a bar date is otherwise established by a Final Order of the Bankruptcy Court, for which a Proof of Claim must be filed with the Bankruptcy Court by the date set forth in such Final Order, and (c) a Claim with respect to an executory contract or unexpired lease that is assumed or rejected pursuant to the Plan (as to which the bar date shall be as set forth in Article VII of the Plan, or a Final Order of the Bankruptcy Court.

      **p.**      **"Berman-Related Entities"** means Bruce Berman, Valerie Berman-Knight, FAP, TRP Holdings, Inc., TRP Transportation, LLC, Berman Enterprises, LLC, Furniture Worx LLC, BLB Investment Enterprises, Inc., BBPI, L.L.C., BBPII, L.L.C., BBPIV, L.L.C., BBPV, L.L.C., and BBPVII, L.L.C., and their respective employees, agents, members, partners, shareholders, attorneys, heirs, successors and assigns.

      **q.**      **"Books and Records"** means, with respect to each Debtor, all books and records of that Debtor, including, without limitation, all documents and communications of any kind, whether physical or electronic.

      **r.**      **"Business Day"** means any day other than (a) a Saturday, (b) a Sunday, (c) a legal holiday (as "legal holiday" is defined in Bankruptcy Rule 9006(a)), or (d) a day on which commercial banks in Chicago, Illinois are required or authorized to close by law.

      **s.**      **"Cash"** means cash, cash equivalents and other readily marketable direct obligations of the United States, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a Distribution under the Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from the Creditor Trust drawn on a domestic bank.

      **t.**      **"Causes of Action"** means any and all actions, claims, demands, rights, defenses, counterclaims, suits and causes of action of the Debtors or their Estates, whether known or unknown, in law, equity or otherwise, against any Creditor or other third party, including the Avoidance Actions and any and all other claims or rights or proceedings of any value whatsoever, at law or in equity, turnover actions and claims of the type referred to in the Disclosure Statement. When used in the Plan, the term "Causes of Action" shall not include any claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived by the Debtors or their Estates pursuant to a Final Order of the Bankruptcy Court.

u.     **"Charity"** means the Chicago Bankruptcy Help Desk Foundation, or if the Chicago Bankruptcy Help Desk Foundation is unable or unwilling to receive the excess payments described in Article IV, Paragraph 19 of this Plan, then any qualified charity of the Creditor Trustee's choice so long as such qualifying charity has no connection to the Debtors or the Creditor Trustee.

v.     **"Claim"** has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code.  Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Claim" shall be given the broadest possible meaning permitted by applicable law and shall include all manner and type of claim, whenever and wherever such claim may arise.

w.     **"Claims Objection Deadline"** means the date that is one hundred and twenty (120) days following the Effective Date, unless extended the by Bankruptcy Court upon motion of the Debtors or the Creditor Trustee.

x.     **"Class"** means a category of Claims or Equity Interests classified together as described in Article III of the Plan.

y.     **"Collateral"** means Property in which the Estates have (or had) an interest and that secures (or secured), in whole or part, whether by agreement, statute, or judicial decree, the payment of a Claim.

z.     **"Committee"** means the Official Committee of Unsecured Creditors for the Bankruptcy Cases as duly constituted by the United States Trustee pursuant to section 1102(a)(1) of the Bankruptcy Code.

aa.     **"Confirmation"** or **"Confirmation of the Plan"** means the confirmation of the Plan by the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code.

bb.     **"Confirmation Date"** means the date on which the Confirmation Order is entered on the Docket by the Clerk pursuant to Bankruptcy Rule 5003(a).

cc.     **"Confirmation Hearing"** means the hearing at which the Bankruptcy Court considers Confirmation of the Plan and related matters pursuant to Section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

dd.     **"Confirmation Order"** means the order of the Bankruptcy Court in the Bankruptcy Cases confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, as such order may be amended, modified or supplemented, which shall be in form and substance acceptable to the Debtors.

ee.     **"Creditor"** means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Secured Creditors, General Unsecured Creditors, and Creditors with Administrative Expense Claims, Priority Tax Claims, Priority Claims and Cure Claims.

**ff.**    "**Creditor Trust**" means the trust to be created pursuant to <u>Article IV, Paragraph 11</u> of the Plan, evidenced by the Creditor Trust Agreement in substantially the form included in the Plan Supplement.

**gg.**    "**Creditor Trust Agreement**" means that certain trust agreement establishing the Creditor Trust by and among the Debtors and the Creditor Trustee, which shall be included in the Plan Supplement.

**hh.**    "<u>Creditor Trust Assets</u>" means: (a) Cash sufficient to pay (i) in an amount equal to $500,000 pursuant to Paragraph 4.a of the Global Settlement Agreement and, to the extent necessary (ii) all ordinary and necessary expenses of conducting the Store Closing Sales including, but not limited to, payments under any Closing Store Bonus Plan, (iii) accrued and unpaid postpetition non-Professional payables existing as of the beginning of the Store Closing Sales for the reasonable, necessary costs and expenses of preserving the Estates, and (iv) any Professional Fees and expenses payable under the Monthly Professional Compensation Order, (b) Causes of Action including the Avoidance Actions (but excluding Causes of Action related to assets which revest in the Reorganized Debtors pursuant to this Plan, or pledged to FAP or represent proceeds of FAP's collateral) and all proceeds and recoveries thereof, (d) any Excluded Assets (as defined below) and (e) solely related to the foregoing, copies of the books, records and files of the Debtors and of their Estates, in all forms, including electronic and hard copy.  For the avoidance of doubt, the Creditor Trust Assets shall not include (1) the New Membership Interests conveyed to FAP or the FAP Designee, (2) any Postpetition claims or Causes of Action (other than Avoidance Actions and setoff claims) and Causes of Action that have been expressly released, exculpated or waived by the Debtors or their Estates pursuant to the Global Settlement Agreement, a Final Order of the Bankruptcy Court, or pursuant to this Plan and (3) any assets that are encumbered by the security interest of FAP.  Notwithstanding anything in the Plan to the contrary, the Debtors' Professionals' documents shall not be transferred to the Creditor Trust and shall not be Creditor Trust Assets, but shall be made available upon reasonable request, solely to the extent that such documents are (i) related to the Creditor Trust Assets, (ii) required to administer the Creditor Trust, and (iii) not privileged.

**ii.**    "**Creditor Trustee**" means the disinterested third party acceptable to the Debtors and the Committee and designated pursuant to <u>Article IV, Paragraphs 12</u> of the Plan, who shall administer the Creditor Trust as a fiduciary for the beneficiaries thereof.

**jj.**    "**Cure Claim**" means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, pursuant to Section 365(b) of the Bankruptcy Code or otherwise and any Claim for a default (monetary or non- monetary), arising from, relating to or in connection with the assumption by the Debtors of any Assumed Contract under the Plan (provided such Claim is filed with the Bankruptcy Court by the Cure Claim Submission Deadline).

**kk.**    "**Cure Claim Submission Deadline**" means that date established in <u>Article VII, Paragraph 3</u> of the Plan.

ll.     **"Debtors"** and **"Debtor in Possession"** means both TRP Brands LLC and The RoomPlace Furniture and Mattress LLC.

mm.     **"Determination Date"** means the later of (i) the Effective Date and (ii) the date the order of the Bankruptcy Court allowing a Claim becomes a Final Order (if applicable).

nn.     **"Disallowed Claim"** means any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

oo.     **"Disclosure Statement"** means the Disclosure Statement for Plan of Reorganization of TRP Brands LLC and The RoomPlace Furniture and Mattress LLC under Chapter 11 of Title 11, United States Code dated as of _____, 2025, including all Exhibits attached thereto, as submitted and filed by the Debtors pursuant to Section 1125 of the Bankruptcy Code in respect of the Plan and approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and as such Disclosure Statement may be amended, supplemented, modified or amended and restated from time to time.

pp.     **"Disclosure Statement Approval Order"** means the Order Approving Disclosure Statement, Setting Hearing on Confirmation of Plan, and Setting Deadlines with Respect to Confirmation Hearing, dated _____ __, 2025, entered in the Bankruptcy Cases (Doc. No. ___ ).

qq.     **"Disputed Claim"** means any Claim or portion thereof (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules, and, in the case of subparagraph (a) and (b) above, as to which an objection has been or may be  timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court and any such objection has not been (i) withdrawn, (ii) overruled by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court.  In addition to the foregoing, a Disputed Claim shall mean a Claim that is not an Allowed Claim, whether or not an objection has been or may be timely filed, if (a) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (c) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Schedules, or (e) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the amount subject to objection. "Disputed", when used as an adjective herein (such as Disputed Administrative Expense Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Secured Claim, and Disputed Unsecured Claim), has a corresponding meaning.

8

**rr.** "**Distribution**" means a distribution of Cash, the New Membership Interests, or other property of the Estates to a Creditor on account of an Allowed Claim in accordance with the terms of the Plan.

**ss.** "**Distribution Date**" means the date or dates for any Distribution to Holders of Allowed Claims as provided in the Plan, unless such date or dates have been otherwise established by an order of the Bankruptcy Court.

**tt.** "**Effective Date**" means, and shall occur on, the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date contained in Article VIII of the Plan have been satisfied or waived as provided therein.

**uu.** "**Equity Interests**" means the member interest in each of the Debtors held by TRP Holdings, Inc.

**vv.** "**Estates**" means the estates created for the Debtors by Section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Cases.

**ww.** "**Estimation Hearing**" means a hearing for the estimation of Claims under Section 502(c) of the Bankruptcy Code.

**xx.** "**Excluded Assets**" means assets encumbered by the security interest of FAP for which FAP or the FAP Designee has provided written notice to the Debtors prior to the Effective Date of its intent to abandon. If such notice is given, such assets will not revest in the Reorganized Debtors on the Effective Date, but will become a Creditor Trust Asset. As of the date of this Plan, no Excluded Assets have been identified.

**yy.** "**Executory Contract**" means a contract or lease to which the Debtors are a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

**zz.** "**FAP Designee**" means TRP Holdings, Inc. on account of the assignment and contribution of the FAP Secured Claim to TRP Holdings, Inc. immediately prior to the Effective Date.

**aaa.** "**FAP Secured Claim**" means the Claim held by FAP that is secured by a first priority, perfected security interest and lien in substantially all of the Debtors' Assets.

**bbb.** "**Final Decree**" means the final decree for the Bankruptcy Cases entered by the Bankruptcy Court after the Effective Date pursuant to Bankruptcy Rule 3022.

**ccc.** "**Final Order**" means (a) an order, judgment, ruling or other decree (or any revision, modification or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Bankruptcy Cases for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and as to which (i) no appeal, petition for review, reargument, rehearing, reconsideration or certiorari has been taken and is pending and the time for the filing of

any such appeal, petition for review, reargument, rehearing, reconsideration or certiorari has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

    **ddd.** **"General Unsecured Claim"** means any Claim which is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Secured Claim, or Cure Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (b) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the Estate's interest in the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, (c) any Claim arising from the provision of goods or services to the Debtors prior to the Petition Date, and (d) any Claim designated as an Unsecured Claim elsewhere in the Plan or in the Confirmation Order.

    **eee.** **"General Unsecured Creditor"** means any Creditor holding a General Unsecured Claim.

    **fff.** **"Global Settlement Agreement"** means the Global Settlement Agreement attached as Exhibit A to the Joint Motion to Approve Global Settlement Agreement filed on September 24, 2024 [Dkt. No. 388], approved by Order Approving Global Settlement Agreement dated October 28, 2024 [Dkt. No. 437].

    **ggg.** **"Governmental Bar Date"** means July 31, 2024.

    **hhh.** **"Holder"** means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtors, as the case may be, have received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the Debtors' books and records or as otherwise determined by order of the Bankruptcy Court.

    **iii.** **"Impaired"** refers to any Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

    **jjj.** **"Initial Distribution"** has the meaning ascribed to such term in Article V, Paragraph 1 of the Plan.

    **kkk.** **"Insurance Policy"** means any contract of insurance or indemnity issued to the Debtors, as such contract has been or is amended, modified, renewed or supplemented from time to time.

lll.     "**Insured Portion**" means, with respect to a given Damage Claim, the insurance or indemnity coverage available to satisfy such Claim under the applicable Insurance Policy.

mmm. "**Intercompany Claims**" means Claims by one Debtor against the other Debtor.

nnn.     "**Liabilities**" means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to any of the Debtors or any predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtors or any predecessor, successor or assign thereof, any Property of the Debtors, the business or operations of the Debtors, the Bankruptcy Cases, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, when used in the Plan, the term "Liabilities" shall not include any obligations of the Debtors expressly set forth in the Plan.

ooo.     "**Lien**" means, with respect to any Property, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such Property, whether voluntary or involuntary and whether arising by law, contract or otherwise.

ppp.     "**Net Liquidation Proceeds**" has the meaning set forth in the Global Settlement Agreement.

qqq.     "**New Board**" means the board of directors for the Reorganized Debtor.

rrr.     "**New Membership Interests**" means the new membership interests in the Reorganized Debtors pursuant to the terms of the Plan and the New Organizational Documents.

sss.     "**New Organizational Documents**" means the new bylaws, certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements, shareholder agreements, or such other organizational documents of the Reorganized Debtors.

ttt.     "**Notice Parties**" means (a) Debtors, (b) Bankruptcy Counsel, (c) the United States Trustee, and (d) all other parties who have requested notice or are required to receive notice pursuant to the Bankruptcy Rules.

uuu.  **"Person"** means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

vvv.  **"Petition Date"** means February 2, 2024, the date on which the Debtors commenced the Bankruptcy Cases by filing their voluntary petitions under Chapter 11 of the Bankruptcy Code.

www.  **"Plan"** means this Plan of Reorganization of TRP Brands LLC and The RoomPlace Furniture and Mattress LLC under Chapter 11 of Title 11, United States Code dated as of _____, 2025, and all Exhibits attached hereto, as the same may be amended, supplemented, modified or restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

xxx.  **"Plan Documents"** means all documents that aid in effectuating the Plan, including without limitation, the Creditor Trust Agreement, the New Organizational Documents, Schedule of Assumed Executory Contracts and Unexpired Leases, and the Backstop Commitment Letter.

yyy.  **"Plan Supplement"** means the supplement to this Plan containing the Documents (to the extent not already on file with the Bankruptcy Court), which shall be filed with the Bankruptcy Court no later than at least seven (7) days before the Voting Deadline.

zzz.  **"Postpetition"** means arising or accruing on or after the Petition Date and before the Effective Date.

aaaa.  **"Prepetition"** means arising or accruing prior to the Petition Date.

bbbb.  **"Priority Claim"** means a Claim that is entitled to a priority in payment pursuant to Sections 507(a)(4) and (5) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim, or an Unsecured Claim.

cccc.  **"Priority Tax Claim"** means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Claim, a Secured Claim, or an Unsecured Claim.

dddd.  **"Professional"** means any professional employed in the Bankruptcy Cases pursuant to an order of the Bankruptcy Court, pursuant to Section 327 or 1103 of the Bankruptcy Code.

eeee.  **"Proof of Claim"** means a proof of claim filed with the Bankruptcy Court with respect to a Claim against any one of the Debtors pursuant to Bankruptcy Rules 3001, 3002 or 3003.

**ffff.    "Property"** means any property or asset of any kind, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind therein.

**gggg.    "Pro Rata Share"** means, with respect to any Distribution under the Plan to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims and all Reserved Claims in such Class and, if applicable, other Classes, all determined as of the applicable Distribution Date.

**hhhh.    "Rejected Contracts"** has the meaning ascribed to such term in Article VII of the Plan.  A list of the Rejected Contracts is set forth in Exhibit A attached to the Plan.

**iiii.    "Related Parties"** means, with respect to an entity, such entity and its current and former affiliates, and such entities' and their current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

**jjjj.    "Reorganized Debtors"** means the reorganized Debtors or any successor thereto, on or after the Effective Date, after giving effect to the transactions implementing this Plan.

**kkkk. "Reserved Claims"** means all Disputed Claims as of the applicable determination date in the full amount listed in the Schedules, unless a Proof of Claim was timely filed with respect to such Claim, in which case in the face amount of such Proof of Claim, or unless such Claim has been estimated by the Bankruptcy Court for the purpose of allowance pursuant to Section 502(c) of the Bankruptcy Code, in which case in such estimated amount.  Unless any order of the Bankruptcy Court estimating a Claim provides otherwise, the amount so estimated shall apply both for voting purposes and for purposes of computing Reserved Claims.  As used in the Plan, the term "Reserved Claims" shall not include any Disallowed Claims.

**llll.    "Schedule of Assumed Executory Contracts and Unexpired Leases"** means the schedule of certain Executory Contracts and Unexpired Leases to be assumed by the Debtor pursuant to this Plan.

**mmmm.    "Schedules"** means, collectively, Schedules A, B, D, E, F, G, and H filed by the Debtors in the Bankruptcy Cases pursuant to Bankruptcy Rule 1007, as any of such Schedules has been or may hereafter be amended or supplemented from time to time.

**nnnn. "<u>Secured Claim</u>"** means any Claim of a Creditor that is (a) secured in whole or in part, as of the Petition Date, by a Lien (i) on Collateral and (ii) which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code, but, with respect to both (a) and (b) above, only to the extent of the value of such Creditor's interest in the Estates' interest in such Collateral or the amount subject to setoff, as the case may be. Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estates' interest in such Collateral or the amount subject to setoff is less than the amount of the Allowed Claim, then such deficiency shall constitute an Unsecured Claim.

**oooo. "<u>Secured Creditor</u>"** means any Creditor holding a Secured Claim.

**pppp.** "<u>Unexpired Lease</u>" means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

**qqqq. "<u>Unimpaired</u>"** means a Claim that is not Impaired.

**rrrr. "<u>United States Trustee</u>"** means the Office of the United States Trustee for the Northern District of Illinois.

**ssss.** ""<u>Voting Deadline</u>" means the last day to file, with the Bankruptcy Court, a Ballot accepting or rejecting the Plan as fixed by the Disclosure Statement Approval Order.

**tttt. "<u>Voting Instructions</u>"** means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions" and in the Ballot.

**2.** Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or in the Bankruptcy Rules, as the case may be (with the Bankruptcy Code or the Bankruptcy Rules, as the case may be, controlling in the case of a conflict or ambiguity).

**3.      Rules of Construction**

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit means such document or Exhibit as may be amended, modified or supplemented; (d) if the Plan's description of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto"

refer to the Plan in its entirety rather than to a particular Article or section or subsection of the Plan; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the Exhibits referred to in the Plan shall be deemed incorporated herein by any such reference and made a part hereof for all purposes; (i) any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; and (j) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in the construction of the Plan, to the extent such rules are not inconsistent with any other provision of the Plan.

4.      **Exhibits**

All exhibits and schedules, if any, to the Plan are incorporated into and are part of the Plan as if set forth here.  All exhibits and schedules to the Plan, including the Plan Supplement, shall be filed with the Clerk of the Bankruptcy Court no later than at least seven (7) days before the Voting Deadline.  The public may inspect these exhibits at the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court.

**ARTICLE II**
**TREATMENT OF ADMINISTRATIVE, PROFESSIONAL, AND PRIORITY CLAIMS**

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan.  The treatment accorded to Administrative Expense Claims and Priority Tax Claims is set forth below in this <u>Article II</u>.

1.      **Administrative Expense Claims**

a.      Except as otherwise provided in Paragraph 1.b. below, each Holder of an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals) shall be paid (a) on the Effective Date, an amount, in Cash, by the Debtor equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be mutually agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtor, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court. All unpaid fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930, for any calendar quarter (or portion thereof) ending prior to the Effective Date shall be paid to the United States Trustee by the Debtor by no later than the Effective Date.  Following the Effective Date, any fees required to be paid to the United States Trustee, pursuant to 28 U.S.C. §1930(a)(6), with respect to the Bankruptcy Cases, shall be paid by the Creditor Trust until the earlier of (i) the closing of the Bankruptcy Cases by the issuance of a Final Decree by the Bankruptcy Court, or (ii) the entry of an order by the Bankruptcy Court dismissing the Bankruptcy Cases or converting the Bankruptcy Cases to another chapter under the Bankruptcy Code.

b.      All Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Bankruptcy Cases shall be paid by the Debtors (a) on the Effective Date, or (b) in the ordinary course of business in accordance with contract terms, or (c) under such other terms as may be

mutually agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtors, as the case may be, or (d) as otherwise ordered by a Final Order of the Bankruptcy Court.

        c.      Administrative Expense Claims will not include Administrative Expense Claims filed or asserted under Section 503(b)(9) of the Bankruptcy Code after the General Bar Date, unless the Debtors or the Creditor Trustee, as applicable and in their respective discretion, choose to treat those Claims as Administrative Expense Claims.

        d.      The deadline for Professionals to file final applications seeking allowance of fees and expenses incurred by such Professionals on a final basis shall be thirty (30) days after the Effective Date.  Any Professional that is required to file and serve a request for approval of Professional fees and expenses that fails to file and serve a timely request will be forever barred, estopped, and enjoined from participating in Distributions under the Plan on account thereof.  All Professionals shall provide the Debtors an estimate of their accrued fees and expenses through the Effective Date (including an estimate for fees and expenses expected to be incurred after the Effective Date to prepare and prosecute allowance of final fee applications) before the Effective Date.

      **2.**      **Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim shall receive from the Debtor, on account of such Allowed Priority Tax Claim, at the election of the Debtor, either payment on the Effective Date, or regular installment payments in Cash beginning on the Effective Date in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code.  If the distribution is made through regular installments, Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at the rate established for delinquent tax obligations pursuant to 26 U.S.C. §6621; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law.  Notwithstanding the above, each Holder of an Allowed Priority Tax Claim may be paid (i) under such other terms as may be mutually agreed upon by both the Holder of such Allowed Priority Tax Claim and the Debtor, or (b) as otherwise ordered by a Final Order of the Bankruptcy Court.

      **3.**      **Other Priority Claims**

The Creditor Trustee shall pay in Cash, each Holder of an Allowed Other Priority Claim, in satisfaction of an Allowed Other Priority Claim, the full unpaid amount of an Allowed Other Priority Claim, on the later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date an Allowed Other Priority Claim becomes Allowed or as soon as practicable thereafter, and (iii) the date an Allowed Other Priority Claim is payable under applicable non-bankruptcy law.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

      **1.**      **Summary**

        a.      <u>Classification in General</u>:  Pursuant to Section 1122 of the Bankruptcy

Code, set forth below is a designation of Classes of Claims and Equity Interests.  A Claim or Equity Interest (a) is classified in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and (b) is classified in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class.

b.    Substantive Consolidation:  Except as expressly provided in this Plan, each Debtor shall continue to maintain its separate corporate existence for all purposes other than the treatment of Claims under this Plan and distributions from the Creditor Trust. Except as expressly provided in this Plan (or as otherwise ordered by the Bankruptcy Court), on the Effective Date: (a) all Creditor Trust Assets (and all proceeds thereof) and all liabilities of each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (b) no distributions shall be made under this Plan on account of Intercompany Claims among the Debtors, and all such Claims shall be eliminated and extinguished, (c) all guaranties of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor and any guarantee thereof executed by any Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed in any of the Bankruptcy Cases for Plan voting purposes and for distribution purposes shall be treated filed against the consolidated Debtors and shall be treated one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of set off under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the other Debtors.  Such substantive consolidation shall not (other than for purposes relating to this Plan) affect the legal and corporate structures of the Reorganized Debtors. Moreover, such substantive consolidation shall not affect the ability of the Reorganized Debtors or the Creditor Trust Trustee, as applicable, to seek to have any Claim or Interest subordinated in accordance with any contractual rights or equitable principles.

**2.    Classification and Treatment of Claims and Equity Interests**

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| Class 1 | FAP Secured Claim | Impaired | Entitled to Vote |
| Class 2 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 3 | Unsecured Claims of $2,500 or Less | Impaired | Entitled to Vote |
| Class 4 | Intercompany Claims | Impaired | Not Entitled to Vote |
| Class 5 | Equity Interests | Impaired | Not Entitled to |

| | | | Vote |
|---|---|---|---|

a.      **FAP Secured Claim (Class 1)**

     i.      <u>Classification</u>:  Class 1 consists of the FAP Secured Claim.

     ii.      <u>Treatment</u>:  Class 1 consists of the Secured Claim of FAP.  The Debtors are jointly and severally indebted to FAP in the noncontingent liquidated allowed amount of $14,899,529 inclusive of principal, accrued and unpaid interest at the base and post-default rates set forth in the Loan Documents and certain fees and expenses reimbursable thereunder, plus certain unliquidated fees and expenses arising thereunder, net of adequate protection payments made in the Chapter 11 bankruptcy cases.  In full and final satisfaction, compromise, settlement, release, and discharge of the FAP Secured Claim, the FAP Designee shall receive (i) the New Membership Interests in the Reorganized Debtors, and (ii) any amounts of Net Liquidation Proceeds that FAP is entitled to under the Global Settlement Agreement.

     iii.      <u>Voting</u>:  Class 1 is Impaired and, therefore, the Holder of the FAP Claim is entitled to vote to accept or reject the Plan.

b.      **General Unsecured Claims (Class 2)**

     i.      Classification:  Class 2 consists of General Unsecured Claims.

     ii.      Treatment:  In lieu of a cash payment and in full and final satisfaction, settlement, release and discharge of said Claim, except to the extent that a Holder of an Allowed Class 2 Claim agrees to less favorable treatment, each Holder of an Allowed Class 2 Claim shall receive a beneficial interest in the Creditor Trust, entitling such Holder of an Allowed Class 2 Claim to a Pro Rata share of the distribution from the Creditor Trust equal to such Allowed Class 2 Claim divided by the combined amount of the Uninsured Portion of all Allowed Class 2 Claims.  As part of the settlement and compromises set forth in this Plan, the Holder of FAP's Allowed Claim shall waive and forgo receiving any distribution associated with any deficiency or General Unsecured Claim associated with FAP, which the Debtors estimate would total no less than $11,800,000.

     iii.      Voting:  Class 2 is Impaired and, therefore, Holders of General Unsecured Claims in Class 2 are entitled to vote to accept or reject the Plan.

c.      **Unsecured Claims of $2,500 or Less (Class 3)**

     i.      Classification:  Class 3 is a "convenience class" authorized by Section 1122(b) of the Bankruptcy Code and consists of the Allowed Unsecured Claims of creditors of the Debtors that are $2,500 or less, either originally or by election.  A creditor with an Allowed Unsecured Claim in excess of $2,500 can qualify for inclusion in Class 3 by electing to reduce their Claim to $2,500 in

writing, by appropriate notation on a ballot accepting or rejecting the Plan, provided that such ballot is returned on or before the date fixed by the Bankruptcy Court

ii.      Treatment:  Each Holder of Class 3 Claims shall receive fifty percent (50%) of their Allowed Unsecured Claims (or if they make an election detailed above, the sum of $2,500) on the first date in which distributions are made to general unsecured creditors by the Creditor Trust.

iii.      Voting:  Class 3 is Impaired under the Plan.  The Holder of a Class 3 Claim is entitled to vote to accept or reject the Plan.

**d.      Intercompany Claims (Class 4)**

iv.      Classification:  Class 4 consists of Intercompany Claims.

v.      Treatment:  On the Effective Date, Holders of Intercompany Claims shall be subordinated and shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan on account of such Claims.

vi.      Voting:   In accordance with Section 1126(g) of the Bankruptcy Code the Holders of Intercompany Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan.

**e.      Equity Interest (Class 5)**

i.      Classification:  Class 5 consists of Equity Interests.

ii.      Treatment:   Upon the Effective Date, all Equity Interests shall be cancelled.

iii.      Voting:   In accordance with Section 1126(g) of the Bankruptcy Code the Holders of Equity Interests in Class 5 are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan.

**3.      Nonconsensual Confirmation**

If any Impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majority provided in Section 1126 of the Bankruptcy Code, the Debtors reserve the right to amend the Plan, to undertake to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code, or both.  With respect to Impaired Classes that are deemed to reject the Plan, the Debtors intend to request that the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code notwithstanding the deemed rejection of the Plan by those Classes.

**ARTICLE IV**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**1.      Compromise or Settlement of Claims and Interests.**

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classifications, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests resolved under this Plan, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to Article V hereof, all distributions made to Holders of Allowed Claims (as applicable) in any Class are intended to be and shall be final and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

2.      **Sources of Consideration for Plan Distributions.**

a.      The Debtors shall fund distributions under this Plan with: (i) Cash on hand, including Cash from operations; (ii) the Creditor Trust Assets; (iii) the New Membership Interests; and (iv) proceeds of the Backstop Commitment Letter.  Cash payments to be made pursuant to this Plan will be made by the Reorganized Debtors or the Creditor Trustee, as applicable.  The Reorganized Debtors shall be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under this Plan.

b.      From and after the Effective Date, subject to any applicable limitations set forth in any post-Effective Date agreement (including, without limitation, the New Organizational Documents), the Reorganized Debtors shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as the boards of managers or directors, as applicable (or other applicable governing bodies), of the applicable Reorganized Debtors deem appropriate.

3.      **Restructuring Transactions.**

Following the Confirmation Date and subject to any applicable limitations set forth in any post-Effective Date agreements, the Debtors, the Creditor Trustee, and the Reorganized Debtors may take all actions as may be reasonably necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, including: (a) the execution and delivery of appropriate agreements or other documents of reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of this Plan, including the Backstop Commitment Letter; (c) the filing of appropriate certificates of conversion, formation or incorporation or consolidation with the appropriate governmental authorities pursuant to applicable law; (d) the execution, delivery, and filing, if applicable, of the New Organizational Documents and the Creditor Trust Agreement; (e) transfer of the FAP Secured Claim to the FAP Designee; (f) such other transactions that are required to effectuate the restructuring transactions, including any consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; and (g) all other actions that the Reorganized Debtors reasonably determine are necessary or appropriate.  For the purposes of effectuating this Plan, none of the restructuring transactions contemplated herein shall constitute a "change of control" or "assignment" (or terms with similar effect) under, or any other transaction

or matter that would result in a violation, breach, or default under, or increase, accelerate, or otherwise alter any obligations, rights or liabilities of the Debtors or the Reorganized Debtors under, or result in the creation or imposition of a Lien upon any property or asset of the Debtors or the Reorganized Debtors pursuant to, any agreement, contract, or document of the Debtors, and any consent or advance notice required under any agreement, contract, or document of the Debtors shall be deemed satisfied by Confirmation.

4. **Continued Corporate Existence and Vesting of Assets in Reorganized Debtors.**

a. Except as otherwise provided in this Plan, the Debtors shall continue to exist after the Effective Date as the Reorganized Debtors pursuant to the New Organizational Documents and in accordance with the applicable laws of the respective jurisdictions in which it is incorporated or organized, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law. On or after the Effective Date, the Reorganized Debtors, in their discretion, may take such action as permitted by applicable law and the Reorganized Debtors' New Organizational Documents, as the Reorganized Debtors may determine is reasonable and appropriate, including, but not limited to, causing (a) the legal name of a Reorganized Debtor to be changed; (b) the conversion of a Reorganized Debtor from one entity type to another entity type; (c) the reincorporation of a Reorganized Debtor under the law of jurisdictions other than the law under which the Debtor currently is incorporated.

b. Except as otherwise provided in this Plan, on and after the Effective Date, all property of the Estates, except for the Creditor Trust Assets, shall vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, other encumbrances and Interests, with Holders of any such Claims, Liens, charges, other encumbrances and Interests entitled to receive payment for such Claims, Liens, charges, other encumbrances and Interests only from the Creditor Trust and the Creditor Trust Assets. Subject to Section 2(a) of this Article, on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.

5. **Cancellation of Existing Securities and Agreements**

On the Effective Date, except as otherwise specifically provided for in this Plan, including with respect to the Backstop Commitment Letter: (i) the obligations of the Debtors under any certificate, share, note, bond, agreement, indenture, purchase right, option, warrant, call, put, award, commitment, registration rights, preemptive right, right of first refusal, right of first offer, co-sale right, investor rights, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to this Plan, if any) shall be cancelled, terminated and of no further force or effect, without further act or action, and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors pursuant, relating, or pertaining to

any agreements, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, calls, puts, awards, commitments, registration rights, preemptive rights, rights of first refusal, rights of first offer, co-sale rights, investor rights, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated or assumed pursuant to this Plan, if any) shall be released and discharged.

### 6.    Issuance of New Membership Interests.

The New Membership Interests shall be authorized under the New Organizational Documents.  The New Membership Interests shall be issued on or about the Effective Date and delivered on the Effective Date in accordance with this Plan.  All of the New Membership Interests to be issued and/or delivered in accordance with this Plan, when so issued, and/or delivered shall be duly authorized, validly issued, fully paid, and non-assessable.  The issuance and delivery of the New Membership Interests in accordance with this Plan are authorized without the need for any further limited liability company or corporate action and without any further action by any Holder of a Claim or Equity Interest.  Consistent with, but only to the extent required by, Section 1123(a)(6) of the Bankruptcy Code, on the Effective Date, the New Organizational Documents shall prohibit the issuance of non-voting equity securities.

### 7.    Backstop Commitment Letter.

To provide assurance that the Creditor Trust will have sufficient working capital on the Effective Date, FAP has agreed to provide the Backstop Commitment on the terms and subject to the conditions and limitations set forth in the Backstop Commitment Letter.

### 8.    Exemption from Registration Requirements.

To the maximum extent provided by Section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance and distribution of the New Equity Interests shall be exempt from, among other things, the registration and prospectus delivery requirements of section 5 of the Securities Act, and any other applicable state and federal law requiring registration and/or delivery of a prospectus prior to the offering, issuance, distribution or sale of securities, subject to the provisions of Section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act. In addition, any securities issued under the Plan shall be freely transferable under the Securities Act by the recipients thereof, subject to compliance with any rules and regulations of the U.S. Securities and Exchange Commission, if any, applicable at the time of any future transfer of Equity such Interests and applicable regulatory approval, if any.

### 9.    Corporate Action.

a.    On the Effective Date, all actions contemplated by this Plan and the restructuring transactions described in Article IV shall be deemed authorized and approved in all respects, including: (i) the selection of the managers or directors, as applicable, and officers of each of the Reorganized Debtor; (ii) the issuance and delivery of the New

Membership Interests; (iii) the execution and entry into of the New Organizational Documents; and (iv) all other actions contemplated by this Plan (whether to occur before, on, or after the Effective Date), and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court. All matters provided for in this Plan involving the corporate or limited liability company structure of the Debtors or the Reorganized Debtors and any corporate, limited liability company or other governance action required by the Debtors or the Reorganized Debtors in connection with this Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors or otherwise.

b.      On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and, as applicable, directed to issue, execute, deliver, acknowledge and/or file, as applicable, the agreements, documents, securities, certificates of conversion, certificates of formation, certificates of incorporation, operating agreements, and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan) in the name of and on behalf of the Reorganized Debtors, as applicable, including the New Organizational Documents, and any and all agreements, documents, securities, certificates, and instruments relating to the foregoing.

c.      The authorizations, approvals and directives contemplated by this section shall be effective notwithstanding any requirements under non-bankruptcy law.

**10.    Managers, Board of Directors and Management.**

d.      On the Effective Date, the managers and, to the extent applicable, initial board of directors of the Reorganized Debtors, shall consist of those individuals identified in the Plan Supplement. After the Effective Date, the New Organizational Documents, as each may be amended thereafter from time to time, shall govern the designation and election of directors.

e.      Unless reappointed pursuant to Section 7.4(a) of the Plan, managers and/or the members of the board of directors of each Debtor prior to the Effective Date shall have no continuing obligations to the Reorganized Debtors in their capacities as such on and after the Effective Date and each such manager or member shall be deemed to have resigned or shall otherwise cease to be a director of the applicable Debtor on the Effective Date. Commencing on the Effective Date, each of the directors of the Reorganized Debtors shall serve pursuant to the terms of the applicable organizational documents of the Reorganized Debtors and may be replaced or removed in accordance with such organizational documents.

f.      As of the Effective Date, the Chief Executive Officer, Chief Financial Officer and other management positions, if any, to be determined with the consent of the Reorganized Debtors shall consist of those individuals selected by and acceptable to the Holders of the New Membership Interests and shall be set forth in the Plan Supplement.

**11.     Survival of Indemnification and Exculpation Obligations.**

   **a.**      Any D&O Liability Insurance Policies (including any "tail policy" and all agreements, documents, or instruments related thereto) pursuant to which any of the Debtors' or the Liquidating Debtors' current and former directors, officers, managers, or other employees are insured shall remain in force through the expiration of any such D&O Liability Insurance Policy (or "tail policy," as applicable).

   **b.**      On or before the Effective Date, to the extent not already obtained, the Debtors shall obtain a "tail policy" for the existing D&O Liability Insurance Policy. The Debtors and shall assume (and assign to the Reorganized Debtors if necessary), pursuant to section 365(a) of the Bankruptcy Code, either by a separate motion filed with the Bankruptcy Court or pursuant to the terms of the Plan and Confirmation Order, the D&O Liability Insurance Policy.

   **c.**      All indemnification provisions of the Debtors that are in place as of the Petition Date (whether in the by-laws, certificates of incorporation, articles of limited partnership, limited liability company agreements, board resolutions, management agreements or employment or indemnification contracts, or otherwise) for the current directors, officers, and employees of each of the Debtors and such current directors' and officers' respective affiliates shall be assumed by the Debtors to the extent assumable and shall remain obligations of the Reorganized Debtors, irrespective of when such obligation arose, so long as such provisions do not require the Debtors to make any payments or provide any arrangements (including severance payments) to such Persons other than indemnification payments and reimbursement and advancement of expenses. All such provisions shall be deemed and treated as Executory Contracts that are assumed by the Debtors under this Plan and shall continue as obligations of the Reorganized Debtors. Any Claim based on such provisions shall not be a Disputed Claim or subject to any objection, in either case, by reason of Section 502(e)(1)(B) of the Bankruptcy Code or otherwise.

**12.     Plan Distributions**

Distributions to Allowed Administrative Claimants, Allowed Priority Claimants, Class 2 Claimants and Class 3 Claimants shall be made by the Creditor Trustee from the Creditor Trust Assets.  The Plan will be implemented by, among other things, the establishment of the Creditor Trust, the transfer to the Creditor Trust of the Creditor Trust Assets, and the making of Distributions by the Creditor Trustee in accordance with the Plan and the Creditor Trust Agreement.

**13.     Deemed Substantive Consolidation**

   a.      This Plan contemplates, and is predicated upon, the entry of an order, which may be the Confirmation Order, substantively consolidating the Cases solely for the purposes of providing that, on the Effective Date: (a) all Creditor Trust Assets (and all proceeds thereof) and all liabilities of each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (b) no distributions shall be made under this Plan on account of Intercompany Claims among the Debtors, and all such Claims shall be eliminated and extinguished, (c) all

guaranties of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor and any guarantee thereof executed by any Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed in any of the Bankruptcy Cases for Plan voting purposes and for distribution purposes shall be treated filed against the consolidated Debtors and shall be treated one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of set off under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the other Debtors. For avoidance of doubt, except as otherwise provided by this Plan or the Confirmation Order, substantive consolidation shall not affect (i) any Debtor's status as a separate legal Entity, (ii) change the organizational structure of the Debtor's business enterprise, (iii) constitute a change of control of any Debtor for any purpose, and (iv) cause a transfer of any assets, or cause a consolidation of any legal Entity, including the Reorganized Debtors. Thus, entry of the Confirmation Order shall constitute the approval, pursuant to Sections 105(a), 541, 1123, and 1129 of the Bankruptcy Code, effective as of the Effective Date, of the limited substantive consolidation of the Debtors for purposes of voting for the Plan and Distributions.

b.      Except as may be otherwise provided in the Plan, the substantive consolidation provided herein shall not result in the merger or otherwise affect the separate legal existence of each Debtor, other than with respect to distribution rights under the Plan. The compromise shall not (a) impair the validity or enforceability with respect to assumed Executory Contracts; (b) affect valid, enforceable, or unavoidable Liens that would not otherwise be terminated under the Plan, except for Liens that secure a Claim that is eliminated by virtue of the Plan and Liens against Collateral that are extinguished by virtue of the Plan; or (c) have an effect of creating a Claim in a Class different from the Class in which a Claim would have been placed in the absence of this limited substantive consolidation.

c.      The Disclosure Statement and Plan shall be deemed to be a motion requesting that the Bankruptcy Court approve the limited substantive consolidation provided for in the Plan.  Unless an objection to the proposed substantive consolidation is made in writing by any Creditor purportedly affected by such substantive consolidation on or before the deadline to object to confirmation of the Plan, or such other date as may be fixed by the Bankruptcy Court, the substantive consolidation proposed by the Plan may be approved by the Bankruptcy Court at the Confirmation Hearing.  In the event any such objections are timely filed, a hearing with respect thereto shall be scheduled by the Bankruptcy Court, which hearing may, but need not be, the Confirmation Hearing.

**14.     The Creditor Trust**

a.      On or prior to the Effective Date, the Debtors, on their own behalf and on their Estates' behalf and on behalf of the Holders of Claims and Equity Interests that are to be satisfied with Distributions from the Creditor Trust Assets, will execute the Creditor Trust Agreement and will take all other steps necessary to establish the Creditor Trust

pursuant to the Creditor Trust Agreement.  On the Effective Date, and in accordance with
and pursuant to the terms of the Plan, the Debtors will transfer to the Creditor Trust all of
their rights, title, and interests in all of the Creditor Trust Assets.

b.      The Creditor Trust shall be established solely for the purpose of holding and
administering the Creditor Trust Assets in accordance with Treasury Regulation Section
301.7701-4(d), with no objective to continue or engage in the conduct of a trade or
business.  Accordingly, the Creditor Trustee shall hold the Creditor Trust Assets pursuant
to the terms of this Plan and the Creditor Trust Agreement by engaging in the following
activities: (a) pursuing the Causes of Action retained by the Creditor Trust; (b) making all
required Distributions to the beneficiaries provided for under the Creditor Trust
Agreement; and (c) taking other actions as may be necessary to effectuate any of the
foregoing.  The Creditor Trust will not hold itself out as an investment company and will
not conduct a trade or business.  At no time shall the Creditor Trust control or operate the
business of the Debtors or any assets of the Debtors other than the Creditor Trust Assets.

c.      Notwithstanding anything to the contrary in the Plan, any disclosure or
examination of any document which is privileged from disclosure or discovery under state
or federal law (a "Privileged Document") shall be limited to the Creditor Trustee and the
attorneys that the Creditor Trustee has retained on behalf of the Creditor Trust for the
purpose of evaluating and, if necessary, objecting to Claims, or pursuing Causes of Action
or claims retained by the Creditor Trust not released by the Debtors, those attorneys'
administrative support personnel, and any consulting, non-testifying experts retained by
the Creditor Trustee on behalf of the Creditor Trust for the purpose of assisting the Creditor
Trust in pursuing such Causes of Action or claims.  The Creditor Trustee may not disclose
any of the Privileged Documents (or the contents of the Privileged Documents), or
otherwise take any actions that may constitute a waiver of the attorney-client privilege,
work product privilege, common interest privilege, or any other applicable privileges with
respect to the Privileged Documents, or any other privileged communication without
giving three (3) Business Days' notice to the Debtors and any other applicable affected
party and an opportunity to object.  Nothing in the Plan shall constitute a waiver of any
privilege claims over any of the documents, including the Privileged Documents that are
produced to or received by the Creditor Trust or Creditor Trustee.  For the avoidance of
doubt, the Creditor Trust is a successor-in-interest to the Debtors, and thus, the transfer of
the Privileged Documents as provided herein does not impair or waive any privilege.

**15.      Appointment and Termination of the Creditor Trustee.**

a.      The Creditor Trustee shall be selected by the Creditors' Committee by no
later than ten (10) days prior to the Voting Deadline.  The Debtors shall identify the
Creditor Trustee selected by the Creditors' Committee in the Plan Supplement.  The
appointment of the Creditor Trustee shall be approved in the Confirmation Order, and such
appointment shall be effective on the Effective Date.

b.      In accordance with the Creditor Trust Agreement, the Creditor Trust shall
continue for a term terminating on the earlier to occur of that date in which (a) all of the
Creditor Trust Assets have been distributed pursuant to this Plan and the Creditor Trust

Agreement, (b) the Creditor Trustee determines, in his/her sole discretion, that the administration of any remaining Creditor Trust Assets or retained Causes of Action are not likely to yield sufficient additional proceeds to justify further pursuit, or (c) all Distributions required to be made by the Creditor Trustee under this Plan and the Creditor Trust Agreement have been made; provided, however, in no event shall the Creditor Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth (5th) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions) is necessary to facilitate or complete the recovery and liquidation of the Creditor Trust Assets.

### 16.   Treatment of Creditor Trust for Federal Income Tax Purposes

a.   The Creditor Trust is intended to qualify as a creditor trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a), with no objective to continue or engage in the conduct of a trade or business. In the event the Creditor Trust shall fail or cease to qualify as a creditor trust in accordance with Treasury Regulations Section 301.7701-4(d), the parties to the Creditor Trust Agreement intend that the Creditor Trustee take such action as it shall deem appropriate to have the Creditor Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership under Code Section 7704), including, if necessary, creating or converting it into a Illinois limited liability company.

b.   For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Creditor Trustee, and the beneficiaries) shall treat the transfer of the Creditor Trust Assets to the Creditor Trust as (1) a transfer by the Debtors of the Creditor Trust Assets (subject to any obligations relating to those assets) directly to the beneficiaries in full satisfaction of the beneficiaries' claims against the Debtors and, to the extent Creditor Trust Assets are allocable to Disputed Claims, to the Distribution Reserve Account (as defined in the Creditor Trust Agreement), followed by (2) the transfer by such beneficiaries to the Creditor Trust of the Creditor Trust Assets in exchange for such beneficiaries interest in the Creditor Trust Assets. Accordingly, the Creditor Trust beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Creditor Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for all state, provincial, territorial and local income tax purposes.

c.   The Creditor Trust shall file returns for the Creditor Trust, except with respect to the Disputed Claims Reserve, as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a). The Creditor Trust's taxable income, gain, loss, deduction or credit will be allocated to each holder in accordance with their relative beneficial interests in the Creditor Trust. As soon as possible after the Effective Date, the Creditor Trust shall make a good faith valuation of assets of the Creditor Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Creditor Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Creditor Trust that are required by any Governmental Unit for taxing purposes. The

Creditor Trust shall file all income tax returns with respect to any income attributable to the Creditor Trust Assets and shall pay any federal, state and local income taxes attributable to the Creditor Trust Assets, based on the items of income, deduction, credit or loss allocable thereto.

d.      The Creditor Trust may request an expedited determination of Taxes of the Debtors or of the Creditor Trust, including the Distribution Reserve Account, under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Debtors and the Creditor Trust for all taxable periods through the dissolution of the Creditor Trust. The Creditor Trustee shall be responsible for filing all federal, state, local and foreign tax returns for the Debtors and the Creditor Trust. The Creditor Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Creditor Trust shall be subject to any such withholding and reporting requirements.

## 17.      Costs and Expenses of the Creditor Trust and Professionals

The Creditor Trustee may retain and compensate professionals to assist in its duties on such terms (including on a contingency or hourly basis) as it deems reasonable and appropriate without Bankruptcy Court approval. The costs and expenses of the Creditor Trust and any professionals retained by the Creditor Trust shall be paid from the Creditor Trust Assets; provided that the Backstop Commitment shall not be used to pay such costs.

## 18.      Cash of the Creditor Trust.

The Creditor Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

## 19.      Responsibilities of the Creditor Trustee.

a.      The responsibilities of the Creditor Trustee, which shall be discharged in accordance with the terms of the Plan and the Creditor Trust Agreement, shall include, but not shall not be limited to, the following:

i.      Administering and monetizing the Creditor Trust Assets;

ii.      Objecting to and resolving Disputed Claims as provided in Article VI of this Plan;

iii.      Investigating, pursuing, litigating, settling, or abandoning any Causes of Action which constitute Creditor Trust Assets;

iv.      Making Distributions in accordance with the terms of the Plan and the Creditor Trust Agreement;

v.      Preparing and filing post-Effective Date operating reports;

vi.      Filing appropriate tax returns in the exercise of its fiduciary obligations;

vii.      Retaining such professionals as are necessary and appropriate in furtherance of its fiduciary obligations; and

viii.      Taking such actions as are necessary and reasonable to carry out the purposes of the Creditor Trust.

b.      To the extent necessary or appropriate, the Creditor Trustee shall be deemed to be a judicial substitute for the Debtor as the party-in-interest in the Bankruptcy Cases, under the Plan or in any judicial proceeding or appeal to which a Debtor is a party consistent with Section 1123(b)(3)(B) of the Bankruptcy Code.

**20.      Bonding of Creditor Trustee.**

The Creditor Trustee shall not be obligated to obtain a bond but may do so, in his, her, or its sole discretion, in which case the expense incurred by such bonding shall be paid by the Creditor Trust.

**21.      Reporting Requirements**

The Creditor Trustee shall file (or cause to be filed) any records, reports, statements, returns or disclosures relating to the Debtors that are required by any Governmental Unit.

**22.      Dissolution of the Creditor Trust**

The Creditor Trust shall be discharged or dissolved, as the case may be, at such time as: (i) the Creditor Trustee determines that the pursuit of additional Causes of Action is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (ii) all objections to Disputed Claims are fully resolved, and (iii) all Distributions required to be made by the Creditor Trust have been made, but in no event shall the Creditor Trust be dissolved later than five (5) years from the Effective Date, except upon further order of the Bankruptcy Court.  Upon dissolution of the Creditor Trust, any remaining Creditor Trust Assets that exceed the amounts required to be paid under the Plan may be transferred by the Creditor Trustee to the Charity.

**23.      Operations of the Debtors Between the Confirmation Date and the Effective Date**

During the period from the Confirmation Date through and until the Effective Date, the Debtors may continue to operate their businesses as Debtors in possession in the ordinary course in a manner consistent with the transactions contemplated by the Plan, subject to all applicable orders of the Bankruptcy Court and the provisions of the Bankruptcy Code.  The retention and employment of the professionals retained by the Debtors shall terminate as of the Effective Date except as otherwise approved by the Bankruptcy Court in the Confirmation Order or subsequent Order.

**24.      Automatic Stay**

29

The automatic stay provided for under Section 362 of the Bankruptcy Code shall remain in effect in the Bankruptcy Cases until the Effective Date.

**25.    The Creditors' Committee**

Upon the Effective Date, the Creditors' Committee shall dissolve, and their members shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from the Bankruptcy Cases.   The retention and employment of the professionals retained by the Creditors' Committee shall terminate as of the Effective Date, except as otherwise approved by the Bankruptcy Court in the Confirmation Order or subsequent Order.

**26.    Books and Records**

As part of the appointment of the Creditor Trustee and at his/her election, the Debtors shall transfer copies of all of their Books and Records, solely to the extent such Books and Records relate to the Creditor Trust Assets, to the Creditor Trustee in a form, manner, or media mutually agreed to by the Debtors and the Creditor Trustee.

**ARTICLE V**
**PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS**

**1.    Initial Distribution.**

On the Effective Date, or as soon as reasonably practicable (as determined by the Creditor Trustee) after the Effective Date, the Creditor Trust shall make the Distributions required under the Plan to the Holders of Allowed Administrative Expense Claims (including Allowed Administrative Expense Claims of Professionals); provided, however, that the Distributions as to Allowed Administrative Expense Claims of Professionals shall be made no more than ten (10) days after the Determination Date.   Thereafter, the Creditor Trust shall make additional Distributions to Holders of Allowed Claims as and when required by the terms of the Plan.

**2.    Determination of Claims**

a.    From and after the Effective Date, the Creditor Trustee shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate all objections to the Disputed Claims and Claims filed against the Debtor. Except as to any late-filed Claims, Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than one hundred and twenty (120) days following the Date (unless such period is extended by the Bankruptcy Court upon motion of the Debtors or the Creditor Trustee, as applicable), and the Confirmation Order shall contain appropriate language to that effect. Objections to Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) one hundred and twenty (120) days following the Effective Date or (b) the date sixty (60) days after Debtors receives actual notice of the filing of such Claim.

b.    Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Creditor Trustee effects

service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Cases on behalf of the Holder of a Claim.

c.      Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. §157(b)(2)(B) unless the Bankruptcy Court orders otherwise.  If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Bankruptcy Cases, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and Distribution.  The Creditor Trust may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Creditor Trust previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution. All of the aforementioned Claim objections, estimation and resolution procedures are cumulative and not exclusive of one another.  Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

**3.      Distributions as to Allowed Claim in Class 1.**

All distributions on account of the FAP Secured Claim in Class 1 shall be made to the FAP Designee. Notwithstanding anything in this Plan to the contrary, and without limiting the exculpation and release provisions of this Plan, FAP shall not have any liability to any Entity with respect to distributions made or directed to be made by the Plan.

**4.      Distributions as to Allowed Claims in Class 2 and Class 3.**

a.      Notwithstanding any provision herein to the contrary, no Distribution shall be made to the Holder of a Disputed Claim in Class 2 or Class 3 unless and until such Disputed Claim becomes an Allowed Claim.  If, on the Distribution Date, any Disputed Claims in Class 2 and Class 3 remain, then the Creditor Trustee shall withhold from any such Distribution the amount of Cash that would be necessary to make the same proportionate distribution to the Holders of all Class 2 Claims and Class 3 Claims which are Disputed Claims as if each such Disputed Claim were an Allowed Class 2 Claim and Allowed Class 3 Claims.  At such time that such Disputed Claim becomes an Allowed Class 2 Claim or Allowed Class 3 Claim, the Holder of such Allowed Class 2 Claim or Allowed Class 3 Claims shall receive the Distribution to which such Holder is then entitled under the Plan.

b.      Notwithstanding any provision herein to the contrary, if, on any applicable Distribution Date, the Holder of a Class 2 Claim or Class 3 Claim is subject to a proceeding against it by the Creditor Trustee or the Debtors, as applicable, under Section 502(d) of the Bankruptcy Code, or otherwise, then the Creditor Trust (in its sole discretion) may withhold a Distribution to such Holder until the final resolution of such proceeding.

c.      Distributions to a Holder of an Allowed Claim in Class 2 and Class 3 shall be made at the address of such Holder set forth in the Schedules or on the books and records of the Debtors or the Creditor Trust at the time of the Distribution, unless the Debtors or the Creditor Trustee, as the case may be, have been notified in writing of a change of address, including by the filing of a Proof of Claim or statement pursuant to Bankruptcy Rule 3003 by such Holder that contains an address for such Holder different than the address for such Holder as set forth in the Schedules.  The Creditor Trust shall not be liable for any Distribution sent to the address of record of a Holder in the absence of the written change thereof as provided herein.

i.      To avoid the disproportionate expense and inconvenience associated with making *de minimis* distributions, the Creditor Trustee will not be required to make, and will be excused from making, distributions in amounts of less than ten dollars ($10.00) to any Holders of Allowed General Unsecured Claims. Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made under the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

## 5.      Unclaimed Distributions.

a.      If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within one-hundred and twenty (120) days of the date such check was issued, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

b.      If a check for a Distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Creditor Trust due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Creditor Trust or the Creditor Trustee, as applicable, as to such check within one-hundred and twenty (120) days of the date such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

c.      Following the Final Distribution, and after payment in full of the fees and expenses incurred by the Creditor Trustee and its Professionals in accordance with the terms of the Plan, any remaining amount shall be distributed to the Charity.

**6.      Transfer of Claim.**

In the event that the Holder of any Claim shall transfer such Claim on and after the Effective Date, such Holder shall immediately advise the Creditor Trustee, in writing, of such transfer and provide sufficient written evidence of such transfer.  The Creditor Trustee shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Creditor Trust shall have received written notice to the contrary.  Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Creditor Trustee shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

**7.      One Distribution Per Holder**.

If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of Distribution hereunder, and only one Distribution shall be made with respect to the single aggregated Claim.

**8.      Effect of Pre-Confirmation Distributions.**

Nothing in the Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Plan; and all such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Creditor Trust to such Holder under the Plan.

**8.      No Interest on Claims**.

Except as otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Unsecured Claim shall be entitled to the accrual of post-petition interest or the payment of post-petition interest, penalties, or late charges on account of such Allowed Unsecured Claim for any purpose.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Unsecured Claim in respect of the period from the Effective Date to the date a Disputed Unsecured Claim becomes an Allowed Unsecured Claim.

**9.      Compliance with Tax Requirements.**

In connection with the Plan, the Debtors and the Creditor Trust shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements.  Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction

and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.

### 10.    No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary contained in the Plan, no Holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

### 11.    Setoff and Recoupment

The Creditor Trustee, as applicable, may setoff against, or recoup from, any Claim and the Distributions to be made under the Plan in respect thereof, any Claims or defenses of any nature whatsoever that any of the Debtors or the Estates may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates, or the Creditor Trustee of any right of setoff or recoupment that any of them may have against the Holder of any Claim.  Any such setoffs or recoupments may be challenged in Bankruptcy Court.

### 12.    United States Trustee Fees

All US Trustee's Fees incurred before the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Debtors or the Creditor Trustee, as applicable, shall pay any and all such fees payable by the Debtors, when due and payable, and shall file with the Bankruptcy Court quarterly reports for each of the Debtors, in a form reasonably acceptable to the U.S. Trustee. Each Debtor shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

### 13.    No Distributions on Late-Filed Claims

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was required to be filed and was first filed after the applicable bar date in the Bankruptcy Cases, including, without limitation, the General Bar Date and any bar date established herein or in the Confirmation Order, shall automatically be deemed a late-filed Claim that is disallowed in the Bankruptcy Cases, without the need for (i) any further action by the Creditor Trustee, or (ii) an order of the Bankruptcy Court.

## ARTICLE VI
## DISPUTED CLAIMS

### 1.    Objections to and Resolution of Disputed Claims

From and after the Effective Date, the Creditor Trustee shall have the exclusive authority to compromise, resolve and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, and any agreement entered into by that Creditor Trustee (acting in

accordance with the terms of the Creditor Trust Agreement) with respect to the Allowance of any Disputed Claim shall be conclusive evidence and a final determination of the Allowance of such Claim.

### 2.      Objection Deadline

All objections to Disputed Claims shall be filed no later than the Claims Objection Bar Date, which date may be extended upon presentment of an Order to the Bankruptcy Court by the Debtors or the Creditor Trustee, as applicable, prior to the expiration of such period and without need for notice or hearing.

### 3.      No Distributions Pending Allowance

Notwithstanding any other provision in the Plan, if any portion of a Claim is Disputed, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.  To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  Upon allowance, a Holder of the Allowed Disputed Claim shall receive any Distributions that would have been made up to the date of allowance to such Holder under the Plan had the Disputed Claim been Allowed on the Effective Date.

### ARTICLE VII
### TREATMENT OF EXECUTORY CONTRACTS

### 1.      Assumption or Rejection of Executory Contracts and Unexpired Leases

In accordance with Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtors and any Person or Entity shall be deemed rejected by the Debtors as of immediately prior to the Confirmation Date, except for any executory contract or unexpired lease (i) that has been assumed or rejected by an order of the Bankruptcy Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Effective Date, (iii) that previously expired or terminated pursuant to its own terms, or (iv) that appears on the Schedule of Assumed Executory Contracts and Unexpired Leases that will be filed with the Plan Supplement.   Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of rejection under Section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejection is in the best interests of the Debtors, their Estates, and all parties in interest in the Bankruptcy Cases. . To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease, including any "change of control" provision, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory.

### 2.      Claims Based on Rejection of Executory Contracts and Unexpired Leases

Claims created by the rejection of executory contracts and unexpired leases under this Plan, which have not been previously rejected, must be filed with the Bankruptcy Court and served on the Debtors and/or the Creditor Trustee, as applicable, no later than thirty (30) days after service of notice of the Effective Date. Any Claims arising from the rejection of an executory contract or unexpired lease under this Plan for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estates, the Creditor Trustee, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article IX herein. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III herein.

**3.     Cure Obligations.**

**a.**     Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan or otherwise shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount by the Reorganized Debtors in Cash on the Effective Date or in the ordinary course of business, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Bankruptcy Court shall hear such dispute prior to the assumption becoming effective. The Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

**b.**     Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute a finding by the Bankruptcy Court that (i) each such assumption is in the best interest of the Debtors and their Estates, (ii) the requirements of section 365(b)(1) of the Bankruptcy Code are deemed satisfied, and (iii) the assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether money or nonmonetary, as of the Effective Date.

**c.**     Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article VII shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Bankruptcy Cases, including pursuant to the

Confirmation Order, and for which any Cure has been fully paid pursuant to this <u>Article VII</u> shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

**4.      Certain Insurance Policy Matters**

 **a.**      Insurance policies issued to, or insurance agreements entered into by, the Debtors prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct) shall continue in effect after the Effective Date. To the extent that such insurance policies or agreements are considered to be Executory Contracts or Unexpired Leases, this Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors and their Estates. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy.

 b.      Nothing in the Disclosure Statement, the Plan, the Confirmation Order, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable, or contractual rights and defenses, if any, of the insureds, the Debtors or any insurer with respect to any insurance policies or related agreements. The rights and obligations of the insureds, the Debtors, the Creditor Trustee, and insurers shall be determined under the insurance policies or related agreements, including all terms, conditions, limitations and exclusions thereof, which shall remain in full force and effect, and under applicable non-bankruptcy law.

**ARTICLE VIII
CONDITIONS PRECEDENT**

**1.      Conditions Precedent**

The following are conditions precedent to the Effective Date that must be satisfied or waived:

 1.      The Bankruptcy Court shall have entered the Confirmation Order.

 2.      There shall be no stay or injunction in effect with respect to the Confirmation Order, which such Confirmation Order shall contain approval of the releases provided for herein.

 3.      The appointment of the Creditor Trustee shall have been confirmed by order of the Bankruptcy Court.

 4.      The New Equity Interests (with all conditions precedent thereto having been

37

satisfied or waived) shall have been issued in accordance with the Plan and the New Organizational Documents.

5.     All amounts required to be funded or paid on or before the Effective Date pursuant to this Plan or the Confirmation Order shall have been funded or paid.

6.     All Plan Documents, agreements and instruments shall be (i) in a form reasonably acceptable to the Debtors, (ii) have been duly executed and delivered and (iii) be in full force and effect and not subject to any unfulfilled conditions or contingencies; *provided*, *however*, that no party to any such agreements and instruments may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring.

7.     The transfers of the Debtors' assets to the Creditor Trust on the Effective Date shall have been made.

## ARTICLE IX
## DISCHARGE, CONFIRMATION INJUNCTION, AND EXCULPATION

### 1.     Discharge; Injunction

a.     <u>Discharge of Claims and Termination of Interests</u>.[1] Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Equity Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

---

[1] <u>Note to draft</u>: Make paragraph numbering consistent.

b.    <u>Discharge Injunction</u>.[2] As of the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, all Entities shall be precluded from asserting against the Debtors or the Reorganized Debtors and their respective assets and property or the Estates, any other or further Claims, or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, relating to the Debtors or Reorganized Debtors or any of their respective assets and property or the Estates, based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as expressly provided in this Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors, the Reorganized Debtors, or their respective assets, property and Estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability. Except as otherwise specifically provided in this Plan or the Confirmation Order, all Persons or Entities who have held, hold or may hold Claims or Interests that arose prior to the Effective Date and all other parties-in-interest, along with their respective present or former employees, agents, officers, directors, principals, representatives and Affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim (including a Section 510(b) Claim) against or Equity Interest in the Reorganized Debtors or property of the Reorganized Debtors, other than an action against the Creditor Trust to enforce any right to a distribution pursuant to the Plan, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Reorganized Debtors or property of the Reorganized Debtors, other than an action against the Creditor Trust to enforce any right to a distribution pursuant to this Plan, (iii) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Reorganized Debtors or against the property or interests in property of the Reorganized Debtors, other than an action against the Creditor Trust to enforce any right to a distribution pursuant to this Plan or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Reorganized Debtors or against the property or interests in property of the Reorganized Debtors, with respect to any such Claim or Equity Interest.  Such injunction shall extend to any successors or assignees of the Reorganized Debtors and their respective properties and interest in properties.

**2.      Release of Liens.**

Except as otherwise provided in this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests

---

[2] <u>Note to draft</u>: Make paragraph numbering consistent.

shall revert to the Reorganized Debtors and their successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

3.      **Debtors' Release.**

As of the Effective Date, the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates, shall be deemed to have fully, completely and finally waived, released, remised, acquitted, and forever discharged and covenanted not to sue any Berman Related Entity and the Related Parties of the Berman-Related Entities with respect to any and all claims, demands, suits, obligations, debts, liabilities, torts, covenants, contracts, or causes of action of any kind whatsoever, at law or in equity, including without limitation, from all known and unknown charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, expenses (including attorneys' fees and costs actually incurred) and punitive or special damages, of any nature whatsoever, known or unknown arising out of or in connection with the Debtors' businesses, either before or after the Petition Date through the Effective Date, including claims relating to the FAP Indebtedness, loans made by B. Berman to the Debtors, payments made by the Debtors to any of the Berman-Related Entities before the Petition Date, the Adversary Proceeding, and Chapter 5 of the Bankruptcy Code.

4.      **Exculpation and Limitation of Liability**

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, TO THE MAXIMUM EXTENT PERMITTED BY THE BANKRUPTCY CODE AND APPLICABLE LAW, NONE OF (A) THE DEBTORS, (B) THE REORGANIZED DEBTORS, (C) THE CREDITOR TRUST, (D) THE CREDITOR TRUSTEE, (E) THE CREDITORS' COMMITTEE, (F) THE MEMBERS OF THE CREDITORS' COMMITTEE IN THEIR OFFICIAL CAPACITIES, FOR CONDUCT WITHIN THE SCOPE OF THEIR DUTIES, (G) THE PROFESSIONALS, FOR CONDUCT WITHIN THE SCOPE OF THEIR DUTIES, (H) THE BERMAN-RELATED ENTITES, SOLELY TO THE EXTENT PERMITTED BY APPLICABLE LAW, OR (I) ANY OF THEIR RESPECTIVE EMPLOYEES, REPRESENTATIVES, FINANCIAL ADVISORS, ATTORNEYS, OR AGENTS ACTING IN SUCH CAPACITY, AND FOR CONDUCT WITHIN THE SCOPE OF THEIR DUTIES, OR ANY OF THEIR SUCCESSORS OR

**ASSIGNS, ON OR AFTER THE PETITION DATE, SHALL HAVE OR INCUR ANY LIABILITY TO, OR BE SUBJECT TO ANY RIGHT OF ACTION BY, ANY HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST RELATING TO, OR ARISING OUT OF, THE BANKRUPTCY CASES, FORMULATING, NEGOTIATING, OR PURSING TO CONFIRMATION THE PLAN, OR IMPLEMENTING OR CONSUMMATING THE PLAN, THE ADMINISTRATION OF THE PLAN, OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR THEIR WILLFUL MISCONDUCT, GROSS NEGLIGENCE, AND ACTUAL FRAUD, AND IN ALL RESPECTS THE PERSONS DESCRIBED IN THIS SECTION SHALL BE ENTITLED TO RELY REASONABLY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN. NOTHING HEREIN SHALL PROHIBIT ANY PERSON FROM OBJECTING TO THE ALLOWANCE OF COMPENSATION FOR ANY PROFESSIONALS.**

**5.      Survival of Indemnification and Exculpation Obligations.**

The obligations of the Debtors to indemnify and exculpate any past and present directors, officers, agents, employees and representatives who provided services to the Debtors prior to or after the Petition Date, pursuant to certificates or articles of incorporation, by-laws, contracts, and/or applicable statutes, in respect of all actions, suits, and proceedings against any of such officers, directors, agents, employees, and representatives, based upon any act or omission related to service with, for or on behalf of the Debtors, shall not be discharged or Impaired by Confirmation or consummation of this Plan, but rather shall be assumed by the Reorganized Debtors. For the avoidance of doubt, this Article IX, Paragraph 8 affects only the obligations of the Debtors and Reorganized Debtors with respect to any indemnity or exculpation owed to or for the benefit of past and present directors, officers, agents, employees, and representatives of the Debtors, and shall have no effect on nor in any way discharge or reduce, in whole or in part, any obligation of any other Person, including any provider of director and officer insurance, owed to or for the benefit of such past and present directors, officers, agents, employees, and representatives of the Debtors.

**ARTICLE X**
**POST-CONFIRMATION JURISDICTION**

**1.      Retention of Jurisdiction**

a.      Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Bankruptcy Cases and all Entities with respect to all matters related to the Bankruptcy Cases, the Debtors,  and the Plan as is legally permissible, including, without limitation, jurisdiction to:

i.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest against the Debtors, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of Claims;

ii.       grant, deny or otherwise resolve any and all applications of professionals or Persons retained in the Bankruptcy Cases by the Debtors or the Creditors' Committee for allowance of compensation or reimbursement of expenses authorized by the Bankruptcy Code or the Plan, for periods ending by the Effective Date;

iii.       resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired leases to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

iv.       ensure that Distributions to Holders of Allowed Claims are accomplished under the provisions of the Plan, including by resolving any disputes regarding the Debtors' entitlement to recover assets held by third parties and the use of Cash held under the Escrow Agreement;

v.       decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Creditor Trustee after the Effective Date;

vi.       enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

vii.       resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

viii.       issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

ix.       enforce the provisions herein, including the Releases and Injunctions described herein;

x.       resolve any cases, controversies, suits or disputes with respect to the releases, injunction, and other provisions contained herein, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions, and other provisions of this Plan;

xi.       enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked, or vacated;

xii.       resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract,

instrument, release, indenture, or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

xiii.        approve any modification of this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code or approve any modification of the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, the Plan Supplement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, the Plan Supplement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

xiv.        hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

xv.        enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Bankruptcy Cases;

xvi.        enter an order and a Final Decree closing the Bankruptcy Cases; and

xvii.        hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

**1.        Modification of Plan**

a.        <u>Preconfirmation Amendment</u>

The Debtors may modify the Plan, subject to Section 1127 of the Bankruptcy Code, at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the disclosure statement pertaining thereto meet applicable Bankruptcy Code requirements.

b.        <u>Post confirmation Amendment Not Requiring Resolicitation</u>

After the entry of the Confirmation Order, the Debtors may modify the Plan, subject to Section 1127 of the Bankruptcy Code, to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan; provided that the Debtors obtain approval of the Bankruptcy Court for such modification, after notice and a hearing. Any waiver under this <u>Article XII</u> of this Plan shall not be considered to be a modification of the Plan.

**2.        Revocation or Withdrawal of the Plan**

The Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent Chapter 11 plans. If the Debtors revoke or withdraw the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity.

### 3.      Binding Effect

On the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, a Debtor and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not such Holder is entitled to a Distribution under the Plan.

### 4.      Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### 5.      Effectuating Documents and Further Transactions.

Each of the Debtors and the Reorganized Debtors is authorized to execute, deliver, file or record such contracts, instruments, certificates, notes, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan, the Backstop Commitment Letter and the New Membership Interests issued under or in connection with this Plan.

### 6.      Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, unless otherwise stated, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Illinois without giving effect to the principles of conflict of laws thereof.

### 7.      Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Effective Date occurs. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (i) any Debtor with respect to the Holders of Claims or Equity Interests or other parties-in-interest; or (ii) any Holder of a Claim or other party-in-interest prior to the Effective Date.

### 8.      Section 1146 Exemption

Pursuant to section 1146(a) of the Bankruptcy Code: (a) the issuance, transfer or exchange of equity securities under this Plan; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; or (c) the making or delivery of any deed or other instrument of transfer under this Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, or recording fee or other similar tax or governmental assessment in the United States.   The Confirmation Order shall direct the appropriate federal, state, or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 9.      Section 1125(e) Good Faith Compliance

Confirmation of the Plan shall act as a finding by the Court that the Debtors and each of their respective Representatives have acted in "good faith" under Section 1125(e) of the Bankruptcy Code.

### 10.      Further Assurances

The Debtors and the Creditor Trustee, all Holders of Claims receiving Distributions hereunder, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### 11.      Service of Documents

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors shall be sent by first class U.S. mail, postage prepaid as follows:

**To the Debtors:**

Matthew T. Gensburg
Gensburg Calandriello & Kanter, P.C.
200 W. Adams, Street, Suite 2425
Chicago, Illinois 60606

**To the Creditors' Committee:**

Matthew Wawrzyn
FisherBroyles, LLP
203 North LaSalle Street, Suite 2100
Chicago, Illinois 60601

**To FAP:**

Furniture Asset Partners LLC

45

Eric Prezant
Arnold & Porter
70 West Madison Street
Chicago, Illinois  60606-4321

**To the Creditor Trustee:**


12.     **Filing of Additional Documents**

By the Effective Date, the Debtors may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

13.     **No Stay of Confirmation Order**

The Debtors shall request that the Court waive stay of enforcement of the Confirmation Order otherwise applicable, including under Federal Rules of Bankruptcy Procedure 3020(e), 6004(h), or 7062.


Respectfully Submitted,

TRP BRANDS LLC and THE
ROOMPLACE FURNITURE AND
MATTRESS LLC,
Debtors herein.

By:    /s/ Matthew T. Gensburg_____
One of its Attorneys

Matthew T. Gensburg (ARDC# 6187247)
Email: mgensburg@gcklegal.com
E. Philip Groben (ARDC# 6299914)
Email: pgroben@gcklegal.com
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams St., Ste. 2425
Chicago, Illinois 60606
Phone:  312-263-2200
*Counsel for the Debtors and Debtors-in-Possession*