**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>TRP Brands LLC<br><br>     Debtor. | Chapter 11<br><br>Case No. 24-01529<br>(Jointly Administered)<br><br>Hon. David D. Cleary |

**JOINT DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF
REORGANIZATION OF TRP BRANDS LLC AND THE ROOMPLACE FURNITURE
AND MATTRESS LLC**

**MAY 20, 2025**

Matthew T. Gensburg (ARDC # 6187247)
Email: mgensburg@gcklegal.com
E. Philip Groben (ARDC #6299914)
Email: pgroben@gcklegal.com
Gensburg, Calandriello & Kanter, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Phone: (312) 263-2200
Fax: (312) 263-2242

Counsel for TRP Brands, LLC and The RoomPlace Furniture and Mattress LLC

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF ILLINOIS UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE FOR USE IN THE SOLICITATION OF ACCEPTANCES OF THE PLAN DESCRIBED HEREIN.  ACCORDINGLY, THE FILING AND DISTRIBUTION OF THIS DISCLOSURE STATEMENT IS NOT INTENDED, AND SHOULD NOT BE CONSTRUED, AS A SOLICITATION OF ACCEPTANCES OF SUCH PLAN.  THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THIS DISCLOSURE STATEMENT CONTAINS "ADEQUATE INFORMATION" WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE.**

**<u>IMPORTANT DATES</u>**

- Date and time by which Ballots must be received [DATE], 2025 at 5:00 p.m. (Prevailing Central Time)
- Date and time by which objections to Confirmation of the Plan must be filed and served: [DATE], 2025 at 5:00 p.m. (Prevailing Central Time)
- Hearing on Confirmation of the Plan: [DATE], 2025 at [TIME] (Prevailing Central Time)
- Voting Record Date: [DATE], 2025 (Prevailing Central Time)

**DISCLAIMER**

THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT IS INCLUDED FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE CHAPTER 11 PLAN OF REORGANIZATION FILED BY TRP BRANDS LLC AND THE ROOMPLACE FURNITURE AND MATTRESS LLC, AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.  NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL CREDITORS AND INTEREST HOLDERS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT ANY PLAN.  PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT WITH RESPECT TO THE PLAN ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, THE EXHIBITS ANNEXED TO THE PLAN AND ANY OTHER PLAN DOCUMENTS.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT (A) THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF, OR (B) THIS DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.

# SYNOPSIS OF PLAN TREATMENT

## Allowed Claims against the substantively consolidated Bankruptcy Estates of TRP Brands, LLC and The RoomPlace Furniture and Mattress LLC

| Class | Claim(s) Included in Class | Proposed Treatment of Class by Plan | Projected Recovery | Voting Rights |
|---|---|---|---|---|
| 1 | The Secured claim of Furniture Assets Partners LLC | In full and final satisfaction, compromise, settlement, release, and discharge of the FAP Secured Claim, the FAP Designee shall receive the New Membership Interests in the Reorganized Debtors | %N/A | Yes |
| 2 | General Unsecured Creditors | In lieu of a cash payment and in full and final satisfaction, settlement, release and discharge of said Claim, except to the extent that a Holder of an Allowed Class 2 Claim agrees to less favorable treatment, each Holder of an Allowed Class 2 Claim shall receive a beneficial interest in the Creditor Trust, entitling such Holder of an Allowed Class 6 Claim to a Pro Rata share of the distribution from the Creditor Trust equal to such Allowed Class 2 Claim divided by the combined amount of the Uninsured Portion of all Allowed Class 2 Claims | 2.21% to 9.96% | Yes |
| 3 | Unsecured Claims of $2,500 or Less | Each Holder of a Class 3 Claim shall receive fifty percent (50%) of their Allowed Unsecured Claims on the first date in which distributions are made to general unsecured creditors by the Creditor Trust. Holders of Class 2 Claims may elect to receive treatment under Class 3 by electing to reduce their Claim to $2,500 in writing. | %Variable | Yes |
| 4 | Intercompany Claims | On the Effective Date, Holders of Intercompany Claims shall be subordinated and shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan on account of such Claims. | %0.00 | No |
| 5 | Equity Interests | On the Effective Date, all Equity Interests shall be cancelled and released without any distribution on account of such Interests. | N/A | No |

## TABLE OF CONTENTS

I.    INTRODUCTION................................................................................- 1 -
    A.  Disclosure Statement Exhibits ....................................................- 2 -
    B.  Only Impaired Classes Receiving a Distribution Vote ......................- 2 -
    C.  Voting Procedures ......................................................................- 3 -
    D.  Confirmation Hearing ................................................................- 4 -

II.   OVERVIEW OF THE PLAN...........................................................- 4 -
    A.  Treatment of Claims and Interests ..............................................- 4 -
    B.  Summary and Treatment of the Allowed Administrative and Priority Tax Claims .......- 4 -
    C.  Summary, Classification, and Treatment of Allowed Claims and Interests ..................- 5 -

III.  GENERAL INFORMATION CONCERNING THE DEBTORS...........................- 7 -
    A.  Overview of the Debtors and Its Business Operations. ..................................- 7 -
        1.  Generally .........................................................................- 7 -
        2.  Corporate Structure ..........................................................- 9 -
        3.  Management and Board of Directors .....................................- 9 -
        4.  Prepetition Capital and Debt Structure ..................................- 10 -
        5.  TRP Brand's Assets. .........................................................- 11 -
        6.  TRPFM's Assets. .............................................................- 11 -
    B.  Events Leading up to the Chapter 11 Filing for Both Debtors. ...................- 11 -

IV.   EVENTS DURING THE CHAPTER 11 CASES ....................................- 11 -
    A.  Continuation of Business After the Petition Date. ...........................- 11 -
        1.  The Debtors' Schedules and Statements of Financial Affairs. .........- 11 -
        2.  First and Second Day Motions..............................................- 12 -
        3.  Professional Retention. ......................................................- 14 -
        4.  Other Significant Motions and Related Proceedings. ...................- 15 -
    B.  Monthly Operating Reports. .......................................................- 17 -

V.    SUMMARY OF THE PLAN OF REORGANIZATION ...........................- 18 -
    A.  Overview of Chapter 11.............................................................- 18 -
    B.  Plan Objectives. ......................................................................- 19 -
    C.  Claims and Bar Dates...............................................................- 19 -
    D.  Substantive Consolidation. ........................................................- 20 -
    E.  Claims. ..................................................................................- 21 -
        1.  Administrative Claims. ......................................................- 21 -
        2.  Priority Tax Claims...........................................................- 22 -
    F.  Classification and Treatment of Other Claims and Equity Interests.................- 23 -
        1.  Class 1 – The Secured Claim of FAP. ...................................- 23 -
        2.  Class 2 – General Unsecured Claims.....................................- 23 -
        3.  Class 3 – Unsecured Claims of $2,500 of Less .........................- 24 -
        4.  Class 4 – Intercompany Claims. ...........................................- 24 -
        5.  Class 5 – Equity Interests....................................................- 24 -

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statements to Plan of Reorganization        i

G.  Means of Implementation of the Plan. ......................................................- 25 -
    1.  Operations of the Debtors Between Confirmation Date and Effective Date. ......- 25 -
    2.  Issuance of New Membership Interests ...............................................- 25 -
    3.  The Creditor Trust........................................................................- 26 -
        **i.**  Creation of the Creditor Trust.................................................- 27 -
        ii.  Appointment and Termination of the Creditor Trustee .......................- 28 -
        iii.  Treatment of Creditor Trust for Federal Income Tax Purposes................- 28 -
        iv.  Costs and Expenses of the Creditor Trust and Professionals.................- 29 -
        v.  Cash of the Creditor Trust......................................................- 30 -
        vi.  Responsibilities of the Creditor Trustee. ....................................- 30 -
    4.  Vesting of Assets in Reorganized Debtors ..........................................- 30 -
    5.  Income Generated from the Debtors Operations. ...................................- 31 -
    6.  Managers, Board of Directors and Management of the Reorganized Debtors ....- 31 -
H.  Assumption or Rejection of Executory Contracts and Unexpired Leases. ...................- 31 -
I.  Provisions Governing Distributions.........................................................- 33 -
    1.  Determination of Claims. ..............................................................- 33 -
    2.  No Interest on Claims. .................................................................- 34 -
    3.  Compliance with Tax Requirements.................................................- 34 -
J.  Exculpation from Liability, Release, and General Injunction. ...............................- 34 -
    1.  Exculpation from Liability............................................................- 34 -
    2.  Discharge Injunction. .................................................................- 35 -
    3.  Pursuit of Causes of Action. ..........................................................- 35 -
K.  Conditions Precedent to Confirmation of the Plan and the Effective Date. .................- 37 -
    1.  Condition Precedent to Confirmation of the Plan................................- 37 -
    2.  Conditions Precedent to the Effective Date. .......................................- 37 -

**VI.  GENERAL INFORMATION ON VOTING AND CONFIRMATION
    PROCEDURE** ...........................................................................- 38 -
A.  Purpose of Disclosure Statement ..........................................................- 38 -
B.  Voting On the Plan.........................................................................- 38 -
    1.  Who May Vote..........................................................................- 39 -
    2.  Eligibility ................................................................................- 39 -
    3.  Binding Effect...........................................................................- 39 -
C.  Procedure/Voting Deadlines ...............................................................- 40 -
D.  Plan Confirmation Process .................................................................- 40 -
    1.  Requirements ...........................................................................- 40 -
    2.  Confirmation Hearing .................................................................- 43 -
    3.  Objections to Confirmation............................................................- 43 -

**VII.  RISK FACTORS** ..........................................................................- 44 -
A.  Bankruptcy Factors ........................................................................- 44 -
    1.  Classifications of Claims and Equity Interests .....................................- 44 -
    2.  Non-Occurrence of the Effective Date ..............................................- 44 -
    3.  Failure to Receive Requisite Accepting Votes .....................................- 44 -
    4.  Failure to Confirm the Plan...........................................................- 45 -

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statements to Plan of Reorganization    ii

5. Alternative Chapter 11 Plan ................................................................- 46 -

**VIII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES .....................................- 46 -**

A. Certain U.S. Federal Income Tax Consequences to the Debtor ...................................- 47 -

B. Certain U.S. Federal Income Tax Consequences to Holders of Allowed Claims or Equity Interests ................................................................................................- 48 -

1. Exchange of Allowed Claims and Allowed Equity Interests for Debtor Assets ................................................................................- 48 -

2. Information Reporting and Withholding. ...........................................- 49 -

C. Importance of Obtaining Professional Tax Assistance ................................................- 49 -

**IX. RECOMMENDATIONS ............................................................................- 49 -**

**X. CONCLUSION ..........................................................................................- 49 -**

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statements to Plan of Reorganization    iii

# I.     INTRODUCTION

TRP Brands LLC ("**TRP Brands**") and The RoomPlace Furniture and Mattress, LLC ("**TRPFM**" and collectively with TRP Brands the "**Debtors**"), as debtors and debtors in possession in the above-captioned cases (the "**Chapter 11 Cases**") having filed their *Joint Chapter 11 Plan of Reorganization of TRP Brands, LLC and The RoomPlace Furniture and Mattress LLC* (the "**Plan**") with the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "**Bankruptcy Court**").  A copy of the Plan is attached hereto as Exhibit A.

The Debtors hereby submit this joint disclosure statement, dated May 1, 2025 (the "**Disclosure Statement**"), pursuant to Section 1125 of the Bankruptcy Code in connection with the solicitation of acceptances on the Plan from certain Holders of Claims against and Interests in the Debtors.

The purpose of this Disclosure Statement is to set forth information (a) regarding the Debtors' history, business and their respective Chapter 11 Cases, (b) concerning the Plan and alternatives to the Plan, (c) advising the Holders of Claims against and Equity Interests in the Debtors of their rights under the Plan, (d) assisting the Holders of Claims against and Equity Interests in the Debtors in making an informed judgment regarding whether they should vote to accept or reject the Plan and (e) assisting the Bankruptcy Court in determining whether the Plan comply with the provisions of Chapter 11 of the Bankruptcy Code and should be confirmed.

During a hearing to be held on [DATE], the Debtors will ask the Bankruptcy Court to approve this Disclosure Statement as containing "adequate information" in accordance with Section 1125 of the Bankruptcy Code.  Pursuant to section 1125(a)(1) of the Bankruptcy Code, "adequate information" is defined as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and the history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests in the relevant class to make an informed judgment about the plan."  NO STATEMENTS OR INFORMATION CONCERNING THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY HAVE BEEN AUTHORIZED, OTHER THAN THE STATEMENTS AND INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND THE INFORMATION ACCOMPANYING THIS DISCLOSURE STATEMENT.

APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT INDICATE THAT THE BANKRUPTCY COURT RECOMMENDS EITHER ACCEPTANCE OR REJECTION OF THE PLAN NOR DOES SUCH APPROVAL CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT OF THE FAIRNESS OR MERITS OF THE PLAN.

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION SUPPLEMENTARY TO THE PLAN AND IS NOT INTENDED TO TAKE THE PLACE OF THE PLAN. CREDITORS AND INTEREST HOLDERS ARE ADVISED TO STUDY THE PLAN CAREFULLY TO DETERMINE HOW THE PLAN IMPACTS THEIR CLAIMS OR INTERESTS.  THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization     - 1 -

A CERTIFIED AUDIT.  ALTHOUGH THE DEBTORS HAVE ATTEMPTED TO ENSURE
THE ACCURACY OF THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING
PLAN, NEITHER THE DEBTORS NOR THEIR RESPECTIVE PROFESSIONALS CAN
WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN AND
THEREIN IS WITHOUT INACCURACIES OR ERRORS.

**UNLESS OTHERWISE DEFINED HEREIN, ALL CAPITALIZED TERMS
CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE MEANINGS
ASCRIBED TO THEM IN THE PLAN.**

This Disclosure Statement contains important information that may bear upon your
decision to accept or reject the applicable Plan.  The Disclosure Statement also provides
information regarding alternatives to the Plan.  Each Holder of a Claim or Equity Interest should
read this Disclosure Statement and the Plan in their entirety, including the conditions precedent to
the Effective Date of the Plan contained in Article IX of the Plan.

If you are a Holder of a Claim or Equity Interest that is entitled to vote to accept or reject
the applicable Plan, a ballot for the acceptance or rejection of the Plan (the "**Ballot**") is enclosed
herewith.  After carefully reviewing these documents, please indicate your vote with respect to the
Plan on the enclosed Ballot and return it as instructed below and on the Ballot.

The Debtors may supplement or amend this Disclosure Statement, or any exhibits,
schedules, and appendices attached hereto, at any time prior to the hearing to approve this
Disclosure Statement.

The information set forth herein is the product of the Debtors' books and records, available
at the time of preparing this Disclosure Statement.  Although the Debtors have made reasonable
efforts to ensure the accuracy and completeness of the information set forth herein, subsequent
information or discovery may result in changes to this Disclosure Statement.

A.    <u>**Disclosure Statement Exhibits**</u>

This Disclosure Statement has two exhibits:

- The Plan is attached as "<u>Exhibit A</u>" to this Disclosure Statement.
- A formal liquidation analysis of the Debtor's assets is attached as "<u>Exhibit B</u>" to
  this Disclosure Statement.

B.    <u>**Only Impaired Classes Receiving a Distribution Vote**</u>

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that
are "impaired" under a plan may vote to accept or reject such plan.  Generally, a claim or interest
is impaired under a plan if the holder's legal, equitable, or contractual rights are changed under
such plan.  If the holders of claims or interests in an impaired class do not receive or retain any
property under a plan on account of such claims or interests, such impaired class is deemed to have
rejected such plan under Section 1126(g) of the Bankruptcy Code and therefore, such holders do

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization     - 2 -

not cast votes on such plan.  In addition, Classes of Claims that are "unimpaired" are deemed to have accepted the plan and do not cast votes on the plan.

Under Plan, Holders of Claims in Classes 1, 2, 3, and 4 are Impaired and are entitled to vote on the Plan.

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED TO HOLDERS OF CLAIMS IN CLASSES OF 1, 2, 3, AND 4.**

Holders of Claims or Equity Interests may obtain copies of the Plan Supplements that will be Filed with the Bankruptcy Court at least ten (10) days prior to the Voting Deadline by: (a) accessing the case dockets through (i) visiting the office of the Clerk of Court for the Bankruptcy Court for the Northern District of Illinois located within the Dirksen Federal Courthouse, 219 S. Dearborn St., Chicago, Illinois, 60604, (ii) via the internet through PACER or CM/ECF, or (b) by requesting a copy from Debtors' counsel via email at mgensburg@gcklegal.com or pgroben@gcklegal.com.

For a summary of the treatment of each Class of Claims and Equity Interests, see Section II.B. of this Disclosure Statement, "Overview of the Plan" below.

**C.      Voting Procedures**

If you are entitled to vote to accept or reject the Plan, a Ballot for the acceptance or rejection of the Plan is enclosed for the purpose of voting on the Plan.  If you hold Claims in more than one Class and you are entitled to vote Claims in more than one Class, then you will receive separate Ballots that must be used to vote in each separate Class.  Please vote and return your Ballot(s) by CM/ECF, hand delivery, courier service, overnight mail, or first-class US mail to the address set forth below:

> Clerk of the United States Bankruptcy Court
> 219 S. Dearborn
> 7th Floor
> Chicago, IL 60604

TO BE COUNTED, YOUR BALLOT WITH ORIGINAL SIGNATURE INDICATING ACCEPTANCE OR REJECTION OF THE APPLICABLE PLAN **MUST BE RECEIVED** NO LATER THAN **5:00 P.M. (PREVAILING CENTRAL TIME) ON [DATE]** (the "**Voting Deadline**").

If you are a Holder of a Claim entitled to vote on the Plan, and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any questions concerning this Disclosure Statement, the Plan or the procedures for voting on the Plan, please contact Matthew T. Gensburg by e-mail mgensburg@gcklegal.com, by phone at (312) 263-2200, by first-class mail, hand delivery, courier service or overnight mail to TRP Brands, LLC c/o Matthew T. Gensburg, Esq., Gensburg Calandriello & Kanter, P.C., 200 W. Adams St., Ste. 2425, Chicago, IL 60606.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 3 -

**D.     Confirmation Hearing**

The Bankruptcy Court has scheduled a hearing to consider confirmation of the Plan for [**DATE**] at [**TIME**]11:00 a.m. (prevailing Central Time) (the "**Confirmation Hearing**"). The Bankruptcy Court will conduct the Confirmation Hearing telephonically per the instructions contained in the Notice of Hearing. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be served and Filed on or before [**DATE**], 2025, at 5:00 p.m. (prevailing Central Time) (the "**Confirmation Objection Deadline**") in the manner described in the Confirmation Hearing Notice accompanying this Disclosure Statement. The date of the Confirmation Hearing may be adjourned from time to time without further notice except for an in-court announcement at the Confirmation Hearing of the date and time as to which the Confirmation Hearing has been adjourned or an appropriate Filing on the Bankruptcy Court's docket.

TRP BRANDS AND TRPFM URGES ALL HOLDERS OF CLAIMS IN CLASSES 1, 2, 3, AND 4 TO VOTE IN FAVOR OF THE PLAN. VOTING INSTRUCTIONS ARE DESCRIBED IN SECTION VI OF THIS DISCLOSURE STATEMENT.

The classification and treatment of Claims and Equity Interests under the Plan is described in detail below. Because the Plan provides the greatest likelihood of recovery to all Holders of Allowed Claims and Allowed Equity Interests in these Chapter 11 Cases, the Debtors strongly encourages all Holders of Claims and Equity Interests entitled to vote on the Plan to vote to accept the Plan.

## II.     OVERVIEW OF THE PLAN

**THE FOLLOWING IS A BRIEF SUMMARY OF THE TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN. THE DESCRIPTION OF THE PLAN SET FORTH BELOW CONSTITUTE A SUMMARY ONLY AND IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN, THE PLAN SUPPLEMENTS, AND ANY OTHER PLAN DOCUMENTS. CREDITORS, INTEREST HOLDERS, AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW THE PLAN ITSELF, AND NOT TO RELY ON THE SUMMARY PROVIDED HEREIN. IN THE EVENT OF AN INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN SHALL CONTROL.**

**A.     Treatment of Claims and Interests**

The classification and treatment of Claims and Equity Interests under the Plan is described in Section II.C. below. Because the Plan provides the greatest likelihood of recovery to all Holders of Allowed Claims and Allowed Equity Interests in these Chapter 11 Cases, the Debtors strongly encourage all Holders of Claims and Equity Interests entitled to vote on the Plan to vote to accept the Plan.

**B.     Summary and Treatment of the Allowed Administrative and Priority Tax Claims**

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization     - 4 -

Except as expressly provided in the Plan, each Debtor shall continue to maintain its separate corporate existence for all purposes other than the treatment of Claims under the Plan and distributions from the Creditor Trust. Except as expressly provided in the Plan (or as otherwise ordered by the Bankruptcy Court), on the Effective Date: (a) all Creditor Trust Assets (and all proceeds thereof) and all liabilities of each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (b) no distributions shall be made under the Plan on account of Intercompany Claims among the Debtors, and all such Claims shall be eliminated and extinguished, (c) all guaranties of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor and any guarantee thereof executed by any Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed in any of the Bankruptcy Cases for Plan voting purposes and for distribution purposes shall be treated filed against the consolidated Debtors and shall be treated one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of set off under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the other Debtors. Such substantive consolidation shall not (other than for purposes relating to this Plan) affect the legal and corporate structures of the Reorganized Debtors. Moreover, such substantive consolidation shall not affect the ability of the Reorganized Debtors or the Creditor Trust Trustee, as applicable, to seek to have any Claim or Interest subordinated in accordance with any contractual rights or equitable principles.

The Plan divides all Claims against the Debtors into various Classes, including administrative and priority tax claims. The Tables set forth below summarizes the allowed administrative and priority tax claims, and the proposed treatment of those claims.

### Allowed Administrative and Priority Tax Claims

| Claim | Estimated Amounts of Claims | Proposed Treatment by Plan | Projected Recovery Under the Plan |
|---|---|---|---|
| Administrative Expense Claims | $2,000,000.00 | Payment in full in cash. | 100% |
| Priority Tax Claims | $65,335.91[1] | Payment in full in cash. | 100% |

## C.   **Summary, Classification, and Treatment of Allowed Claims and Interests**

The Plan divides all Claims against the Debtors into various Classes. The Tables set forth below summarizes the Classes of Claims and Interests under the Plan, the treatment of Claims and Interests, and projected recovery for Holders of Allowed Claims and Interests in such Classes and

---

[1] Proof of Claim No. 48 filed in Case No. 24-01530 reflects estimated taxes and is subject to objection and amendment.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 5 -

the entitlement of Holders of Claims and Interests in such Classes to vote to accept or reject the Plan.

**Allowed Claims and Interests**

| Class | Claim(s) Included in Class | Proposed Treatment of Class by Plan | Estimated Class $ Size | Projected Recovery | Status/ Voting Rights |
|---|---|---|---|---|---|
| 1 | Allowed Claim of Furniture Asset Partners | In full and final satisfaction, compromise, settlement, release, and discharge of the FAP Secured Claim, the FAP Designee shall receive the New Equity Interests in the Reorganized Debtors | $14,899,529.00 | 100% | Impaired /Yes |
| 2 | Allowed Unsecured Creditor Claims | In lieu of a cash payment and in full and final satisfaction, settlement, release and discharge of said Claim, except to the extent that a Holder of an Allowed Class 2 Claim agrees to less favorable treatment, each Holder of an Allowed Class 2 Claim shall receive a beneficial interest in the Creditor Trust, entitling such Holder of an Allowed Class 2 Claim to a Pro Rata share of the distribution from the Creditor Trust equal to such Allowed Class 2 Claim divided by the combined amount of the Uninsured Portion of all Allowed Class 2 Claims. | $42,267,095.00 | 2.21% to 9.96% | Impaired /Yes |
| 3 | Allowed Unsecured Claims of $2,500 or Less | Each Holder of Class 3 Claims shall receive fifty percent (50%) of their Allowed Unsecured Claim on the first date in which distributions are made to general unsecured creditors by the Creditor Trust. Holders of Class 2 Claims which elect to receive treatment shall receive 50% of the claim up to the maximum of $2,500. | $40,000.00 | Varies | Impaired /Yes |
| 4 | Intercompany Claims | Holders of Intercompany Claims shall be subordinated and shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan on account of such Claims. | $Unknown | 0.00% | Impaired /Yes |
| 5 | Equity Interests | All Equity Interests shall be cancelled and released without any distribution on account of such Interests | N/A | N/A | Impaired /Yes |

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan takes into account and conforms to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto. The Debtors, each though

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 6 -

the substantive consolidation of their respective estates, are proposing a Plan which provides for the reorganization of the Debtors and distribution of the New Membership Interests (as defined below) of the Reorganized Debtors (as defined below) to Furniture Asset Partners, LLC's ("**FAP**") or the FAP Designee (as defined below) in full satisfaction of FAP's Secured and General Unsecured Claims.  The Plan further provides for the creation of a Creditor Trust and the designation of a disinterested third-party acceptable to the Debtors and the Official Committee of Unsecured Creditors to serve as the Creditor Trustee.  The Plan contemplates the assignment to the Creditor Trust of the Creditor Trust Assets (as defined below).  The assets transferred to the Creditor Trust shall be administered for the benefit of holders of Allowed Claims.

Creditors who have been listed on either of the Debtor's schedules, but have not filed proofs of claim, and have not been listed as "disputed, unliquidated, or contingent," will be paid according to the claim amount listed in the Debtors' schedules, unless the applicable Debtor objects to the claim within the time set forth in the Debtors' plan.

IN THE OPINION OF THE DEBTORS, THE TREATMENT OF CLAIMS UNDER THE PLAN CONTEMPLATES A RECOVERY NOT LESS THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER A LIQUIDATION OF THE DEBTORS UNDER CHAPTER 7 OF THE BANKRUPTCY CODE.   ACCORDINGLY, THE DEBTORS BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS, AND THE DEBTORS RECOMMENDS THAT CREDITORS VOTE TO ACCEPT THE PLAN.

**NOTHING IN THE DISCLOSURE STATEMENT SHALL AFFECT RIGHTS AND DEFENSES, BOTH LEGAL AND EQUITABLE, OF THE DEBTORS WITH RESPECT TO ANY CLAIMS OR EQUITY INTERESTS, INCLUDING, BUT NOT LIMITED TO, ALL RIGHTS WITH RESPECT TO LEGAL AND EQUITABLE DEFENSES TO ALLEGED RIGHTS OF SETOFF OR RECOUPMENT.**

### III.    GENERAL INFORMATION CONCERNING THE DEBTORS

**A.    <u>Overview of the Debtors and Its Business Operations.</u>**

#### 1.    **Generally**

For more than one hundred years, The RoomPlace has been serving the Chicagoland community with a mission of helping families design and furnish the home of their dreams.  The company's roots date back to 1912 when Sam Berman, grandfather of the current CEO, opened Harlem Furniture on Harlem Ave. in Chicago's West Town neighborhood.  The family-owned business operated as a single store until 1985 when it began to expand in the Chicagoland area. As the company grew to 20 locations, it rebranded as The RoomPlace in 2001. A majority stake in the company was purchased by a private equity firm in 2004.  During the private equity ownership, the company expanded into Indianapolis beginning in 2007.  Bruce Berman bought the company back from private equity in 2011.  The Peoria, Illinois store opened in 2018 and Kenosha, Wisconsin in 2019.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization     - 7 -

As of the Petition Date, The RoomPlace operated 27 retail stores in Illinois, Indiana, and Wisconsin, and distribution centers in Romeoville, Illinois and Indianapolis, Indiana. As a key component of its restructuring strategy, the Debtors are engaged in ongoing efforts to optimize their retail network. In the years prior to the Petition date, the Debtors have faced a challenging commercial environment brought on by increased competition and the general shift away from shopping at brick–and-mortar stores. Given the expenses associated with a substantial brick-and-mortar presence, issues affecting the retail industry as a whole, and challenges with retail operations, a small number of the Debtor's stores are operating at sub-optimal performance levels, impacting overall company performance of the Debtor.

Recognizing the need to right-size The RoomPlace's store base while simultaneously creating much-needed liquidity, the Debtor's management team and advisors conducted an extensive store-by-store performance analysis of all existing stores, evaluating, among other factors, historical and recent store profitability, historical and recent sales trends, occupancy costs, the geographic market in which each store is located and specific operational circumstances related to each store's performance (the "**Performance Evaluation**"). Additionally, the Debtor, with the of outside counsel, began lease modification negotiations with many of the Debtor's landlords for rent concessions to reduce annual rent expenses with the goal of improving the Debtor's overall financial performance.

As a result of the Performance Evaluations and its lease negotiations, the Debtors decided to close 8 stores and a distribution center. The stores are located at (i) 14640 Greyhound Plaza, Carmel, Indiana 46032; (ii) 5651 E. 86th Street, Indianapolis, Indiana 46250; (iii) 8401 Michigan Road, Indianapolis, Indiana 46268; (iv) 8301 E. Washington Street, Indianapolis, Indiana 46219; (v) 7609 Shelby Street, Indianapolis, Indiana 46227; (vi) 2575 E. Main Street, Suite 198, Plainfield, Indiana 46168; (vii) 2200 W. War Memorial Drive, Peoria, Illinois 61613; and (viii) 7014B Green Bay Road, Kenosha, Wisconsin 53142, along with the distribution center located at 8301 E Washington Street, Indianapolis, Indiana 46219 (collectively, the "**Indiana Stores**"). The Debtors have concluded, in their business judgment, that the cost of maintaining the aforementioned stores outweighs any revenues that the stores currently generate or are likely to generate in the future. To facilitated the closure of the Indiana Stores, the Debtors filed their *Motion for entry of an Order (I) Authorizing the Debtor to (A) Enter into the Consulting Agreement, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to be Fre and Clear of All Liens, Claims, and Encumbrances, (III) Authorizing and Approving the Store Closing Procedures and (IV) Granting Related Relief* (the "**Consulting Motion**"). [Docket No. 43] The Consulting Motion was granted on February 21, 2024. [Docket No. 93]

The Debtors continued to evaluate their operations and financial condition throughout the process to close Indiana Stores. Unfortunately, the economic climate of the furniture industry continued to deteriorate during this period, with high interest rates and inflation impacting consumer spending on home goods. The housing market, which slowed down after the post-pandemic home buying boom, fueled by soaring mortgage interest rates which hit a 23-year high in October of 2023, did not show signs of rebounding. Fewer home purchases continued to result in fewer large-scale furnishing projects. Like many retailers, the Debtors continued to struggle to support their reduced store footprint as consumers increasingly purchase goods online. Major players in the industry, ranging from high-end to mass-market home furnishings retailers, have felt

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization   - 8 -

the brunt of this shift. The Debtors were not spared the impact of these economic forces, which have led it to experience a cash burn higher than anticipated, and a need to deal with liquidity problems. These continuing problems caused the Debtors to make a strategic pivot in these cases, and on July 10, 2024, the Debtors filed their *Motions for Entry of Orders Approving Sale Process; Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; Approving Form Notices; Schedule an Auction and Sale Approval Hearing; and Shortening Notice* (the "**Sale Motion**"). [Docket No. 243]

Contemporaneously with the filing of the Sale Motion, the Debtors filed *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of SSG Advisors, LLC as Investment Bankers* (the "**SSG Motion**") [Docket No. 242]. Pursuant to the SSG Motion, the Debtors sought to retain SSG Advisors, LLC as its investment banker to solicit competitive offers for the Debtors' businesses as going concerns, or alternatively, for the Debtors' assets to be sold either in bulk or in lots. The SSG Motion was granted on July 17, 2024. [Docket No. 254]. The Sale Motion was granted on July 30, 2024. [Docket No. 273]. The auction contemplated by the Sale Motion was commenced on August 19, 2024, and concluded on August 20, 2024. No buyers has expressed an interest in acquiring the Debtors' businesses as going concerns, nor has any buyer expressed an interest in taking assignment of the Debtors' underlying leases. Two bidders participated in the auction seeking to enter consulting agreements whereby they would liquidate the Debtors' assets. The Debtors, in conjunction with its constituent parties, ultimately decided that none of the submitted bids were acceptable. The hearing to approve a sale, initially set by the Sale Motion, was concluded on August 29, 2024. [Docket No. 321]

Following the conclusion of the sale, the Debtors the best way to maximize the value of their remaining assets would be to further reduce the number of brick and mortar stores through their *Motion for Entry of an Order (A) Approving Procedures for Store Closing Sales, (B) Authorizing Customary Bonuses to Non-Insider Employees of Closing Stores, (C) Authorizing the Debtors to Enter Consignment Transactions, (D) Waiving Page Limits, and (E) Granting Related Relief* (the "**Store Closing Motion**"). [Docket No. 334]  The Store Closing Motion was granted on September 20, 2024.  [Docket No. 380]

### 2.    Corporate Structure

TRPFM is an Illinois limited liability company, organized in March 2022. TRP Brands is an Illinois limited liability company organized in March 2022. Both Debtors are wholly owned by non-debtor TRP Holdings Inc., which is in turn owed by Bruce Berman and various entities controlled by Bruce Berman.  TRPFM is the sole member of TRP Transportation, LLC, an Illinois limited liability company organized in June 2021.

### 3.    Management and Board of Directors

Bruce Berman is the Debtors' Chief Executive Officer and Valerie Berman-Knight is the Debtors' President.  On the Petition Date the Debtors' Chief Financial Officer was Michael Novosel, and on June 5, 2024, the Debtors sought to retain the services of Brent Nicholson as Chief Financial Officer in the *Application for Entry of an Order Authorizing the Expansion of*

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization     - 9 -

*Scope of Novo Advisors, LLC Engagement Retroactive to May 30, 2024* [Docket No. 213], which the granted on June 12, 2024.  [Docket No. 219]

### 4.       Prepetition Capital and Debt Structure

On April 14, 2016, TRP Acquisition Inc. n/k/a RoomPlace entered into an Amended and Restated Loan and Security Agreement (as thereafter amended, modified, or supplement, the "**Loan Agreement**") with The PrivateBank and Trust Company, n/k/a CIBC Bank USA ("**CIBC**") pursuant to which CIBC agreed to make certain loans and extend other financial accommodations as described in the credit agreement and the other "Loan Documents" as defined in the Loan Agreement (the "**Loans**").  On September 25, 2020, CIBC entered into a Non-Recourse Loan Sale Agreement where Furniture Asset Partners LLC (the "**FAP**") purchased all of CIBC's rights in the Loans, the collateral securing the Loans, and all related rights arising under the Loan Agreement. Bruce Berman is the principal of FAP, which owns the majority of the stock in TRP Holdings, Inc., which in turn owns the member interests in both of the Debtors.

On March 28, 2022, TRP Brands executed the Tenth Amendment to Amended and Restated Loan and Security Agreement and Joinder wherein TRP Brands agreed to join in the Credit Agreement and become jointly and severally obligated to repay the Loans to the Lender and to grant to the Lender a security interest in substantially all of their assets to secure the Loans.  As of the Petition Date, the Debtors were jointly and severally indebted to the Lender in the non-contingent liquidated amount of $14,899,529.00 inclusive of principal, accrued and unpaid interest at the base and post-default rates set forth in the Loan Documents and certain fees and expenses reimbursable thereunder, plus certain unliquidated fees and expenses arising thereunder, (the amounts due under the Loans, together with all other indebtedness and/or obligations of the Debtors under the Loan Documents are the "**Prepetition Obligations**").  The Debtors believe that the Prepetition Obligations comprise legal, valid, binding, and enforceable joint and several obligations of the Debtors.

As of the Petition Date, the Prepetition Obligations were secured by liens and security interests (the "**Prepetition Liens**") encumbering substantially all assets of the Debtors as set forth in the Loan Documents, including accounts, certificated securities, chattel paper, claims, deposit accounts, documents, electronic chattel paper, equipment, financial assets, fixtures, general intangibles, goods, instruments, intellectual property (including but not limited to tradenames), inventory (whether or not eligible inventory), investment property, leases, letter-of-credit rights, money (of every jurisdiction whatsoever), payment intangibles, securities, security entitlements, securities accounts, supporting obligations, tangible chattel paper and uncertificated securities, software and computer programs, all books and records pertaining to any of the foregoing, and all proceeds (whether cash proceeds or noncash proceeds), products, offspring, rents, issues, profits and returns of and from any of the foregoing of the foregoing property, including all insurance policies and proceeds of insurance payable by reason of loss or damage to the foregoing property, including unearned premiums.

The Debtors also have other general unsecured creditors, which include, among others, trade claimants and prepetition rent due to the Debtors' landlords.  Seventy-eight (78) creditors have filed proofs of claim against TRP Brands asserting claims totaling $27,535,510.09 and

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 10 -

ninety-six (96) creditors have filed proofs of claim against TRPFM asserting claims totaling $32,881,855.18.

### 5.    TRP Brand's Assets.

TRP Brands does not own real property, and as set forth in its Schedules its primary tangible and intangible assets include the following:

- Inventory………………………………… $1,030,377.79
- Inventory on Open Sale……………………. $182,802.79
- Intangibles and Intellectual Property………. $Unknown
- Vendor Credits……………………………... $193,961.00

### 6.    TRPFM's Assets.

TRPFM does not own real property and its brick and mortar stores were operated from locations leased as set forth in its Schedule G.  Its primary tangible and intangible assets, as set forth in its Schedules, include the following:

- Cash and Cash Equivalents………………    $39,034.64
- Deposits and prepayments………………...    $1,470,972.65
- Accounts Receivable………………………    $53,792.00
- Finished Goods Inventory…………………    $23,483,813.06
- Other Inventory……………………………    $2,941,732.00
- Office Furniture……………………………    $3,337,171.00
- Leasehold Interests…………………………    $Unknown

### B.    Events Leading up to the Chapter 11 Filing for Both Debtors.

As interest rates increased to more than seven percent in late 2022, the home furnishings industry felt an immediate and severe impact. Home sales and construction activity decreased, which negatively impacts furniture sales and profitability. This macroeconomic reality has had an increasingly adverse effect on The RoomPlace's business. The impact on stores in its outlying markets has been particularly severe. To remain a viable business, The RoomPlace must align its costs with its projected sales.

## IV.    EVENTS DURING THE CHAPTER 11 CASES

### A.    Continuation of Business After the Petition Date.

### 1.    The Debtors' Schedules and Statements of Financial Affairs.

Section 521 of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules require the Debtors to prepare and file Schedules and SOFA with the Bankruptcy Court.  On February 28, 2024, TRP Brands filed its Schedules and SOFA.  [Docket No. 110] TRP Brands filed an

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization    - 11 -

unredacted Schedule E/F on March 4, 2024. [Docket No. 122] On February 28, 2024, TRPFM filed its Schedules and SOFA [Docket No. 19] and Amended Schedules A/B, E/F, and SOFA on April 4, 2024 [Docket No. 23].

**2.      First and Second Day Motions.**

Shortly after the Petition Date, the Debtors filed a number of motions with the Bankruptcy Court, seeking various forms of relief, including, without limitation, the following motions, all of which were approved by the Bankruptcy Court:

**(a) Joint Administration:** *Motion of the Debtors for Entry of an order Directing Joint Administration of Related Chapter 11 Cases* [Motion- Docket No. 7; Order- Docket No. 45]. Through this motion, the Debtors sought an order directing joint administration of the TRPFM proceeding, Case No. 24-1530, under the TRP Brands lead case, Case No. 24-1529.

**(b) Cash Collateral:** *Motion of the Debtors for Interim and Final Authority to use Cash Collateral* [Motion- Docket No. 8; Interim Order- Docket No. 29; Final Order- Docket No. 139] A single party-in-interest has alleged an interest in the Debtors' Cash Collateral: FAP, and through this motion the Court granted the Debtors the authority to use FAP's cash collateral. FAP was granted adequate protection in the form of valid and automatically perfected replacement liens and security interests in the same nature, extent, priority, and validity of each its respective lien(s). The final Cash Collateral Order governs and authorizes the Debtors' use of Cash Collateral pursuant to budgets which are filed and served upon interested parties. Parties in interest which do not object to the proposed budget are deemed to consent to the Debtor's continued use of Cash Collateral.

**(c) Maintenance of Customer Programs:** *Motion for Entry of an Order Authorizing the Debtors to Maintain and Administer their Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto and Granting Related Relief* [Motion- Docket No. 9; Order- Docket No. 140] The Debtors sought, and received, authority to continue certain of its customer programs including its (i) Refund and Exchange Program, (ii) the Pre-Payment Program, (iii) the Designer Trade Program, (iv) Gift Card Program, (v) Sales Promotions and Coupons, and (vi) Chargebacks.

**(d) Maintain Existing Bank Accounts:** *Motion of the Debtors for Entry of an Order Authorizing (I) The Maintenance of Bank Accounts, (II) the Continued Use of Existing Business Forms and Checks, and (III) The Continued Use of the Existing Cash Management System, and Waiving Certain Investment and Deposit Guidelines* [Motion- Docket No. 10; Order- Docket No. 141] In the ordinary course of its business the Debtors owned and maintained deposit accounts at CIBC, N.A., and the continued use of existing business forms, waiving any requirement to use a specific account for tax payments, and providing any additional relief required in order to effectuate the foregoing. Through this motion, the Debtors' received authority from the Court to continue these accounts along with the cash management system associated with said account, and also received a waiver of the United States Trustee requirements to open a debtor in possession account.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 12 -

**(e) Pay Prepetition Employee Obligations:** *Motion of the Debtors for Entry of an Order (a) Authorizing Debtors to Pay (I) Prepetition Employee Obligations, and (II) Prepetition Withholding Obligations, and (B) Directing Banks to honor Related Transfers.* [Motion: Docket No. 11; Order: Docket No. 15]  With the motion and in order to enable the Debtors to maintain morale during this critical time, retain its more than 490 employees, and minimize the personal hardship such employees may suffer if prepetition employee-related obligations were not paid when due or honored as expected, the Debtors sought authority, in its discretion, to pay and honor, as the case may be, all prepetition claims of its employees, including, but not limited to, claims for wages and salaries, vacation days, paid personal time off, and certain costs and disbursements related to the foregoing up to the statutory priority cap of $12,850.00 per employee.

In addition, the Debtors sought authority to pay or honor, as the case may be, all claims or payments pursuant to the various employee benefit plan and policies, which provided employees with medical and dental insurance, and other benefits as noted in the motion.  Finally, the motion sought leave to pay all employee federal and state withholding and payroll-related taxes relating to prepetition periods, including, but not limited to, Social Security taxes, unemployment taxes, Medicare taxes, and garnishments, as well as all other withholdings such as contributions to savings, retirement or pension plan, insurance contributions, and charitable contributions.

**(f) Maintain Insurance Policies:** *Motion of the Debtors for Entry of an Order Authorizing Debtors to Maintain Existing Insurance Policies, Pay All Policy Premiums Arising Thereunder, and Renew or Enter into new Policies* [Motion- Docket No. 12; Order- Docket No. 32] The Debtors sought to (a) maintain exiting insurance policies, (b) pay all policy premiums and brokers' fees arising thereunder, whether prepetition or postpetition, and (c) renew or enter into new policies of insurance as needed, without further order of the Court.  The Debtors noted that these policies were essential to the preservation of its business, properties, and assets, and in many cases the insurance coverage was required by various regulations, laws, and contracts that governed its business.  The Debtors received authority to maintain a number of insurance policies necessary to its continued operations including; (i) the medical insurance offered to its employees, (ii) Commercial General Liability insurance and Employee Benefits Liability insurance, (iii) Commercial Automobile, (iv) Excess Follow-Form and Umbrella Liability, (v) Crime Insurance, (vi) Layered Excess Liability insurance, (vii) Workers Compensation and Employer Liability, and (viii) Director and Officer Fiduciary Liability insurance.

**(g) Pay Prepetition Sales, Use, Trust Fund, and Other Taxes:** *Motion of the Debtors for Authority to Pay Prepetition Sales, Use, Trust Fund, and other Taxes and Related Obligations* [Motion- Docket No. 12; Order- Docket No. 32] By this Motion, the Debtors seek an order authorizing, but not directing, the Debtors to pay prepetition sales, use, trust fund, and other similar taxes and related obligations owed to the appropriate federal, state, and local taxing or related authorities  consistent with and in the ordinary course of the Debtors' business, on an unaccelerated basis, as such payments become due, and to the extent adequate funds are available to make such payments.

**(h) Provide Adequate Assurance to Utilities:** *Motion of the Debtors to Authorize Payment of Deposits as Adequate Assurance of Payment for Utility Services.*  [Motion: Docket

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization     - 13 -

No. 14; Order: Docket No. 38]  In the ordinary course of its business the Debtors use electricity, garbage/waste removal, telephone, internet, and other services of the same general type or nature provided by various utility companies.  This motion authorized the Debtors to provide adequate assurances to the utility providers in the form of a cash deposit approximately equal to one-half of the average prepetition invoice.

**(i) Close Certain Retail Locations:** *Motion to Authorize the Debtors to Enter Into Consulting Agreement and Approving the Conduct of Store Closing*.  [Motion: Docket No. 43; Order: Docket No. 93]  Contemporaneously with the preparation for entry into Chapter 11, the Debtors management team and advisors conducted an extensive store-by-store performance analysis of all existing stores, evaluating among other factors, historical and recent store profitability, historical and recent sales trends, occupancy costs, the geographic market in which each store is located and specific operational circumstances related to each store's performance.  As a result of this performance evaluation, the Debtors decided to close eight retail stores and a distribution center.  The Debtors selected Planed Furniture Promotions, Inc. ("**PFP**") to conduct the going out of business or store closing sales.

**3.      Professional Retention.**

The Debtors filed motions seeking approval of the employment of estate professionals.  All of the motions discussed below were approved by the Bankruptcy Court.

**(a) Debtors' Bankruptcy Counsel:**  Shortly after the Petition Date, on February 21, 2024, the Debtor's requested authorization to retain the services of Gensburg Calandriello & Kanter, P.C. ("**GCK**") as general bankruptcy counsel [Application: Docket No. 94; Order: Docket No. 116].  GCK has the resources and experience necessary to represent the Debtors' throughout this cases, and the Debtors determined that GCK's employment is in the best interest of the Debtors, their estates, and their creditors.

**(b) Debtors' Special Counsel:**  On March 20, 2024, the Debtors requested authorization to retain Taft, Stettinius and Hollister LLP ("**Taft**") as special counsel.  [Application: Docket No. 94; Order: Docket No. 116]  The Debtors retained Taft because of (i) its experience and knowledge with respect to labor and employment issues, and (ii) its specific knowledge as to the Debtors' employment practices and operations.  Taft has acted as employment counsel to the Debtors for many years, and the Debtors have determined that Taft has the resources and experience necessary to represent them in this case.

On March 20, 2024, the Debtors requested authorization to retain Husch Blackwell LLP ("**Husch**") as special counsel.  [Application: Docket No. 145; Order: Docket No. 152] The Debtors sought to retain Husch because it has acted as corporate counsel to the Debtors since November 2023, and the Debtors have determined that Husch has the resources and experience necessary to represent them in this case.

**(c) Debtors' Real Estate Professionals:**  On February 28, 2024, the Debtors requested authorization to retain David Wabick and Kreshmore Group ("**Kreshmore**") as Real Estate Professionals.  [Application: Docket No. 112; Order: Docket No. 130]  Kreshmore is

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization     - 14 -

particularly qualified to serve as the Debtors' special real estate counsel in these chapter 11 cases because its employees have experience in real estate finance and acquisition, including the acquisition of distressed debt and properties, and oversight of acquisitions and finance originations.

**(d) Debtors' Financial Advisors:**   On April 10, 2024, the Debtors requested authorization to retain Novo Advisors LLC ("**Novo**") as their financial advisors.  [Application: Docket No. 163; Order: Docket No. 171]   Novo has a wealth of experience in providing financial advisory services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.  The services of Novo were deemed necessary to enable the Debtors to maximize the value of the bankruptcy estate and emerge efficiently from chapter 11.  On June 5, 2024, following the departure of the Debtors' Chief Financial Officer, the Debtors moved the Court to expand the scope of employment of Novo to allow Brent Nicholson to act as an Interim CFO.  [Application: Docket No. 213; Order: Docket No. 219]

**(e) Debtor's Investment Banker:**   On July 10, 2024, the Debtors requested authorization to retain SSG Advisors, LLC ("**SSG**") as their Investment Banker to facilitate in the sale of the Debtors' assets at auction.  [Application: Docket No. 242; Order: Docket No. 254]  As set forth in greater detail in the motion seeking approval of the retention, SSG is an independent boutique investment bank that has assisted middle-market companies and their stakeholders in completing special situation transactions. It provides comprehensive investment banking services in the areas of mergers and acquisitions, private placements, financial restructurings, valuations, litigation and strategic advisory services. SSG has successfully completed sales of equity, asset sales, sales of debt securities and Chapter 11, Article 9 and Receivership sale transactions.

**(f) Debtors' Store Closing Consultant:**   On September 12, 2024, the Debtors requested authorization to retain HyperAMS, LLC ("**HyperAMS**") their store closing consultant. [Application: Docket No. 362; Order: Docket No. 382]  HyperAMS is particularly qualified to act as a consultant with respect to the Debtors' store closing sales, if such sales are authorized by the Court.  In particular, HyperAMS has a team which provides retail maximization services, which includes (i) maximization of net returns from store closings, (ii) online retailer sales and liquidations, (iii) inventory monitoring and consulting, as well as providing advisory services on how to structure, manage, and reconcile large liquidation projects.

## 4.    Other Significant Motions and Related Proceedings.

In addition to the motions referenced above, other significant motions and related proceeding were brought before the Bankruptcy Court, including the following:

**(a)** *Official Committee of Unsecured Creditors v. Furniture Asset Partners LLC*; **Adversary Proceeding 24-00153:**   On June 10, 2024, the Official Committee of Unsecured Creditors brought an adversary proceeding against FAP seeking the equitable subordination of FAP's claim or in the alternative, the recharacterization of its secured claim as an equity interest in the Debtors.  Adversary Proceeding 24-00153 was dismissed pursuant to a stipulation between the parties on November 7, 2024.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 15 -

**(b)** *Motion to Sell Property Free and Clear of Liens*: On July 10, 2024, the Debtors filed a motion seeking approval of a sale process, bidding procedures, and other related relief consistent with a section 363 asset sale to solicit competitive bids for the sale of the Debtors' assets. [Motion: Docket No. 243; Order: Docket No. 273] Contemporaneously with the filing of this motion, the Debtors sought the retention of SSG Advisors, LLC, as described in more detail above. The Debtors designed the Bidding Procedures to encourage all entities to put their best bids forward and to maximize the value of the Debtors' estates. At the auction, the Debtors declared that none of the bids received were acceptable and concluded the auction without declaring a winner.

**(c)** *Motion to Approve Procedures for Store Closing Sales and Related Relief*: On September 4, 2024, the Debtors brought a motion seeking approval of procedures pursuant to which it would conduct going out of business sales and close certain of its brick and mortar retail locations and its distribution center located in Romeoville, Illinois. [Motion: Docket No. 334; Order: Docket No. 380] Following the grant of this motion, the Debtors commenced a going out of business sale and closed all but three retail locations.

**(d)** *Joint Motion to Approve Compromise of Settlement between the Debtors, the Official Committee of Unsecured Creditors, Furniture Asset Partners, LLC, and the Berman Related Parties*: On September 24, 2024, the above-named parties filed a motion seeking approval of a Global Settlement Agreement ("**Agreement**") settling the allegations of the Official Committee of Unsecured Creditors brought in Adversary Proceeding 24-00153. [Motion: Docket No. 388; Order: Docket No. 437] A true and correct copy of the Agreement is attached hereto as Exhibit C. The Agreement resolved the allegations set forth in Adversary Proceeding 24-00153, and in so doing, made the stipulations regarding FAP's indebtedness within the order granting Debtors' Use of Cash Collateral binding upon all creditors and parties in interest, subject only to the terms of the agreement. The Agreement also provided for a payment to the Debtors from future going out of business sales free and clear from FAP's liens as follows: The first $500,000 of the Net Liquidation Proceeds, as that term is therein defined, generated from the going out of business sales would be delivered to the Debtors, the next $10 million would be paid to FAP and applied to its indebtedness, 10% of the next $5 million would be turned over to the Debtors with the balance paid to FAP, and any additional proceeds paid to the Debtors. Since the inception of these Chapter 11 Cases, FAP has received the sum of $2,200,000, representing monthly adequate protection payments authorized by the Bankruptcy Court pursuant to the *Interim Order Authorizing the Debtors to Use Cash Collateral, Granting Adequate Protection, Granting Related Relief, and Scheduling a Final Hearing* [Docket No. 29] and the *Final Agreed Order Extending the Debtors' Authorized Use of Cash Collateral and Granting Continued Adequate Protection and Related Relief* [Docket No. 139]. FAP has received no payments under the Agreement. The Debtors have retained all remaining operating revenue which has been used in the ordinary course of the Debtors' business. Other than adequate protection payment authorized by the Bankruptcy Court and proceeds from causes of action which secure its claim, it is not anticipated that FAP will receive further payments prior to the Effective Date of the Plan. Lastly, the agreement provided releases for the Berman-Related Entities, as that term was defined in the Agreement.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization     - 16 -

(e)   *The RoomPlace Furniture and Mattress LLC v. Guardian Protection Products, Inc. et al*.; **Adversary Proceeding 25-00071:**  Prior to the Petition Date, the Debtors offered to its customers furniture protection plans offered through Guardian Protection Products, Inc., the predecessor to OnPoint Warranty Solutions, LLC (collectively "**Guardian**"), and the Debtors continued to offer these furniture protection plans to its customers after these bankruptcy cases were filed.  However, after the filing of the voluntary petition, Guardian began withholding funds due and owing to the Debtors related to the sale and administration of these furniture protection plans.  As of the filing of this Disclosure Statement, the issues raised in Adversary Proceeding 28-00071 has not been resolved.

B.    **Monthly Operating Reports.**

Section 586(a)(3) of Title 28 of the United States Code, directs the Office of the United States Trustee to supervise the administration of all Chapter 11 cases.  To comply with this charge, the Office of the United States Trustee has established operating guidelines and reporting requirements for chapter 11 debtors and trustees.  One of the requirements is that Chapter 11 debtors must file monthly operating reports with the clerk of the Bankruptcy Court and serve a paper copy upon the Office of the United States Trustee.  Monthly Operating Reports include an income statement, balance sheet, and cash receipts and disbursements activity detail.  Monthly Operating Reports also include select operating and financial data including, among others: accounts receivable detail and/or aging's; accounts payable detail and/or aging's; taxes paid and payable detail.  As of the date of the filing of this Disclosure Statement, the Debtors have each filed monthly operating reports, and all Monthly Operating Reports were filed under lead case 24-01529.  A summary of the receipts, disbursement and net receipt/disbursement data for the Debtors, separated by entity, by month, is as follows:

| Debtor | Period Ending | Total Receipts | Total Disbursements | Net Receipts |
|---|---|---|---|---|
| TRP Brands | February 29, 2024 | $0.00 | $0.00 | $0.00 |
| TRPFM | February 29, 2024 | $14,402,231.00 | 9,444,857.00 | $4,957,374.00 |
| TRP Brands | March 31, 2024 | $0.00 | $0.00 | $0.00 |
| TRPFM | March 31, 2024 | $9,817,224.00 | 13,511,983.00 | ($3,694,759.00) |
| TRP Brands | April 30, 2024 | $0.00 | $0.00 | $0.00 |
| TRPFM | April 30, 2024 | $11,110,702.00 | $9,893,363.00 | $1,217,339.00 |
| TRP Brands | May 31, 2024 | $0.00 | $0.00 | $0.00 |
| TRPFM | May 31, 2024 | $12,034,990.00 | $13,009.605.00 | ($974,615.00) |
| TRP Brands | June 30, 2024 | $0.00 | $0.00 | $0.00 |
| TRPFM | June 30, 2024 | $9,379,142.00 | $10,103,224.00 | ($724,082.00) |
| TRP Brands | July 31, 2024 | $0.00 | $0.00 | $0.00 |
| TRPFM | July 31, 2024 | $10,422,664.00 | $9,740,564.00 | $681,100.00 |
| TRP Brands | August 31, 2024 | $0.00 | $0.00 | $0.00 |
| TRPFM | August 31, 2024 | $8,285,397.00 | $8,932,752.00 | ($647,355.00) |
| TRP Brands | September 30, 2024 | $0.00 | $0.00 | $0.00 |
| TRPFM | September 30, 2024 | $7,538,733.00 | $7,232,475.00 | $306,258.00 |
| TRP Brands | October 31, 2024 | $0.00 | $0.00 | $0.00 |
| TRPFM | October 31, 2024 | $13,094,480.00 | $11,680,125.00 | $1,414,355.00 |

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization     - 17 -

| TRP Brands | November 30, 2024 | $0.00 | $0.00 | $0.00 |
| TRPFM | November 30, 2024 | $15,932,812.00 | $11,579,399.00 | $4,353,413.00 |
| TRP Brands | December 31, 2024 | $0.00 | $0.00 | $0.00 |
| TRPFM | December 31, 2024 | $10,092,630.00 | $10,820,516.00 | ($727,886.00) |
| TRP Brands | January 31, 2025 | $0.00 | $0.00 | $0.00 |
| TRPFM | January 31, 2025 | $7,018,285.00 | $8,549,681.00 | ($1,531,396.00) |
| TRP Brands | February 28, 2025 | $0.00 | $0.00 | $0.00 |
| TRPFM | February 28, 2025 | $4,320,642.00 | $5,533,064.00 | ($1,212,422.00) |
| TRP Brands | March 31, 2025 | $0.00 | $0.00 | $0.00 |
| TRPFM | March 31, 2025 | $4,602,562.00 | $4,703,256 | ($100,694.00) |

## V.     SUMMARY OF THE PLAN OF REORGANIZATION

The following sections summarize the salient provisions of the Plan. This summary refers to, and is qualified in its entirety by, reference to the Plan, a copy of which is attached hereto as Exhibit A. THE TERMS OF THE PLAN WILL GOVERN IN THE EVENT ANY INCONSISTENCY ARISES BETWEEN THIS SUMMARY AND THE PLAN. Therefore, parties are encouraged to review the Plan in its entirety for a full understanding of its provisions and its impact on Creditors and Holders of Equity Interests.

The Court has not yet confirmed the Plan described in this Disclosure Statement. In other words, the terms of the Plan do not yet bind any person or entity. **HOWEVER, IF THE BANKRUPTCY COURT CONFIRMS THE PLAN AND THE PLAN BECOMES EFFECTIVE, THE PLAN WILL BIND ALL HOLDERS OF CLAIMS OR INTERESTS.**

### A.     Overview of Chapter 11.

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11 of the Bankruptcy Code, a debtor is authorized to reorganize its business for the benefit of itself, its creditors and its interest holders, or to conduct an orderly reorganization to maximize asset recoveries. The commencement of a Chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The consummation of a Chapter 11 plan is the principal objective of a Chapter 11 case. Another goal of Chapter 11 is to promote equality of treatment for similarly situated creditors and similarly situated interest holders with respect to the distribution of a debtor's assets. A plan generally sets forth the means for satisfying claims against and interests in the debtor. Confirmation of a plan by the Bankruptcy Court makes the plan binding upon the debtor, any person or entity acquiring property under the plan and any creditor of, or holder of equity in, the debtor, whether or not such creditor or equity holder (a) is impaired under or has accepted the plan or (b) receives or retains any property under the plan.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization     - 18 -

After a plan has been filed in a Chapter 11 case, certain holders of claims against or equity interests in a debtor are permitted to vote to accept or reject the plan.  Prior to soliciting acceptances of the proposed plan, Section 1125 of the Bankruptcy Code requires a plan proponent to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed decision whether to accept or reject the plan.  The Debtors are submitting this Disclosure Statement to Holders of Allowed Claims against, or Allowed Equity Interests in, TRP Brands and TRPFM in order to satisfy the requirements of Section 1125 of the Bankruptcy Code.

**B.**      **Plan Objectives.**

The primary objectives of the Plan is  to: (i) maximize the value of the ultimate recovery to all Creditors and Holders of Equity Interests on a fair and equitable basis, compared to the value they would receive if the assets of the Debtors were liquidated under Chapter 7 of the Bankruptcy Code; and (ii) settle, compromise or otherwise dispose of certain Claims and Equity Interests on terms believed to be fair, reasonable and in the best interests of the Debtors, the Debtors' Creditors and its Holders of Equity Interests.  The Debtors believes that through the Plan, Holders of Allowed Claims and Allowed Equity Interests will obtain a recovery at least equal to, if not better than, any recovery they would receive if the assets of the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

**C.**      **Claims and Bar Dates.**

On February 28, 2024, TRP Brands filed its Schedules and SOFA. [Docket No. 110] TRP Brands filed an unredacted Schedule E/F on March 4, 2024.  [Docket No. 122]  On February 28, 2024, TRPFM filed its Schedules and SOFA [Docket No. 19] and Amended Schedules A/B, E/F, and SOFA on April 4, 2024 [Docket No. 23].  The schedules of assets and liabilities and statement of financial affairs, as amended, filed by either TRP Brands or TRPFM shall be collectively referred to as the "**Schedules**".  Interested parties may review the Schedules at the office of the Clerk of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, 219 S. Dearborn St., Chicago, Illinois.

On April 17, 2024, the Bankruptcy Court entered an order pursuant to Bankruptcy Rule 3003(c)(3) setting (a) June 17, 2024 as the date by which all Entities (except Governmental Units) are required to file Proofs of Claim for prepetition Claims; and (b) July 31, 2024 as the date by which Governmental Units are required to file Proofs of Claim for prepetition Claims.  The above bar dates also applies to requests for payment under Section 503(b)(9) of the Bankruptcy Code. Claims arising from the rejection of an executory contract or unexpired lease must submit a Proof of Claim based on such rejection on or before the later of (a) the applicable Bar Date and (b) thirty (30) calendar days from (i) the date of entry of the applicable rejection order, or (ii) the effective date of rejection, whichever is later, unless otherwise ordered by the Court. Moreover, counterparties to unexpired leases of nonresidential real property are not required to file a Proof of Claim Form on account of prepetition claims against either Debtor unless and until the applicable lease is rejected or deemed rejected.  In accordance with the Bar Date Order, written notice of the various Bar Dates was mailed to all holders of Claims listed on Debtor's Schedules.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 19 -

D.    **Substantive Consolidation.**

Except as expressly provided in the Plan each Debtor shall continue to maintain its separate corporate existence for all purposes, other than for (i) treatment of Claims under the Plan and (ii) distributions from the Creditor Trust. Except as expressly provided in the Plan (or as otherwise ordered by the Bankruptcy Court), on the Effective Date: (a) all Creditor Trust Assets (and all proceeds thereof) and all liabilities of each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (b) no distributions shall be made under this Plan on account of Intercompany Claims among the Debtors, and all such Claims shall be eliminated and extinguished, (c) all guaranties of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor and any guarantee thereof executed by any Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed in any of the Bankruptcy Cases for Plan voting purposes and for distribution purposes shall be treated filed against the consolidated Debtors and shall be treated one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of set off under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the other Debtors. Such substantive consolidation shall not (other than for purposes relating to this Plan) affect the legal and corporate structures of the Reorganized Debtors. Moreover, such substantive consolidation shall not affect the ability of the Reorganized Debtors or the Creditor Trust Trustee, as applicable, to seek to have any Claim or Interest subordinated in accordance with any contractual rights or equitable principles.

The Plan contemplates, and is predicated upon, the entry of an order, which may be the Confirmation Order, substantively consolidating the Cases solely for the purposes of providing that, on the Effective Date: (a) all Creditor Trust Assets (and all proceeds thereof) and all liabilities of each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (b) no distributions shall be made under this Plan on account of Intercompany Claims among the Debtors, and all such Claims shall be eliminated and extinguished, (c) all guaranties of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor and any guarantee thereof executed by any Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed in any of the Bankruptcy Cases for Plan voting purposes and for distribution purposes shall be treated filed against the consolidated Debtors and shall be treated one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of set off under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the other Debtors. For avoidance of doubt, except as otherwise provided by this Plan or the Confirmation Order, substantive consolidation shall not affect (i) any Debtor's status as a separate legal Entity, (ii) change the organizational structure of the Debtor's business enterprise, (iii) constitute a change of control of any Debtor for any purpose, and (iv) cause a transfer of any assets, or cause a consolidation of any legal Entity, including the Reorganized Debtors. Thus, entry of the Confirmation Order shall constitute the

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 20 -

approval, pursuant to Sections 105(a), 541, 1123, and 1129 of the Bankruptcy Code, effective as of the Effective Date, of the limited substantive consolidation of the Debtors for purposes of voting for the Plan and Distributions.

Except as may be otherwise provided in the Plan, the substantive consolidation provided herein shall not result in the merger or otherwise affect the separate legal existence of each Debtor, other than with respect to distribution rights under the Plan. The compromise shall not (a) impair the validity or enforceability with respect to assumed Executory Contracts; (b) affect valid, enforceable, or unavoidable Liens that would not otherwise be terminated under the Plan, except for Liens that secure a Claim that is eliminated by virtue of the Plan and Liens against Collateral that are extinguished by virtue of the Plan; or (c) have an effect of creating a Claim in a Class different from the Class in which a Claim would have been placed in the absence of this limited substantive consolidation.

The Disclosure Statement and Plan shall be deemed to be a motion requesting that the Bankruptcy Court approve the limited substantive consolidation provided for in the Plan. Unless an objection to the proposed substantive consolidation is made in writing by any Creditor purportedly affected by such substantive consolidation on or before the deadline to object to confirmation of the Plan, or such other date as may be fixed by the Bankruptcy Court, the substantive consolidation proposed by the Plan may be approved by the Bankruptcy Court at the Confirmation Hearing. In the event any such objections are filed timely, a hearing with respect thereto shall be scheduled by the Bankruptcy Court, which hearing may, but need not be, the Confirmation Hearing.

**E.      Claims.**

The Debtors estimate that 1) Allowed Administrative Claims in the approximate total amount of $2,000,000 and 2) Allowed Priority Tax Claims in the approximate total amount of $65,335.91, but notes that the proof of claim filed by the Internal Revenue Service reflects estimated tax liabilities. Proofs of Claim totaling $32,165,340.30 have been filed against TRPFM and $9,101,745.92 have been filed against TRP Brands, and the Debtors note there exists a significant amount of duplication of claims filed against the entities. Creditors with gross claims totaling $17,235,752.00 have asserted security interests in all of the Debtors' tangible and intangible assets. Creditors have asserted claims entitled to priority in the amount of $1,236,364.23 against the Debtors. The Debtors dispute certain of these claims disagree as to their relative priorities. The Debtors will have the right to object to claims before and after confirmation of the Plan, and collateral deficiencies will be treated as general unsecured claims. After including cash on hand as of the filing date, TRPFM assets may have a total value ranging between $4,504,177 and $7,542,462, of which between $464,037 and $946,635 is attributable to the Debtors' inventory.

**1.      Administrative Claims.**

Except as otherwise provided in Article II.1.a of the Plan, each Holder of an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals) shall be paid (a) on the Effective Date, an amount, in Cash, by each respective Debtor equal to the Allowed Amount of its Administrative Expense Claim, in accordance with

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 21 -

Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be mutually agreed upon by both the Holder of such Allowed Administrative Expense Claim and the respective Debtor, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court. All fees and charges assessed against each respective Debtor under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930, for any Fiscal Quarter (or portion thereof) shall continue to be paid by each respective Reorganized Debtor until the earlier of (i) the closing of the Bankruptcy Cases by the issuance of a Final Decree by the Bankruptcy Court, or (ii) the entry of an order by the Bankruptcy Court dismissing the Bankruptcy Cases or converting the Bankruptcy Cases to another chapter under the Bankruptcy Code. Any such payment to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant period and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6).

Any party seeking approval of an Administrative Expense Claim, other than the holder of a claim under Section 503(b)(9), must file with the Bankruptcy Court a request for approval and payment of an Administrative Claim no later than the first Business Day more than thirty (30) days after the Effective Date. Any Holder of an Administrative Expense Claim (including a Holder of a Claim for Postpetition federal, state or local taxes) that does not file an application, motion, request or other Bankruptcy Court-approved pleading by the applicable Administrative Expense Claim Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claim against the Debtors, the Creditor Trust, or any of their Properties or against the Estates, and such Holder shall not be entitled to participate in any Distribution under the Plan on account of any such Administrative Expense Claim. Administrative Expense Claims for any fees and charges assessed against the Estate pursuant to Section 1930 of Title 28 of the United States Code and any fees, costs and expenses incurred by the Debtors in administering the provisions of this Plan prior to the Effective Date, shall be exempt from the Administrative Expense Claim Bar Date.

All Allowed Administrative Expense Claims with respect to liabilities incurred by each respective Debtor in the ordinary course of business during the Bankruptcy Case shall be paid by each respective Debtor (a) on the Effective Date, or (b) in the ordinary course of business in accordance with contract terms, or (c) under such other terms as may be mutually agreed upon by both the Holder of such Allowed Administrative Expense Claim and the respective Debtor, or (d) as otherwise ordered by a Final Order of the Bankruptcy Court.

## 2. Priority Tax Claims.

Each Holder of an Allowed Priority Tax Claim against a Debtor shall receive from that Debtor, on account of such Allowed Priority Tax Claim, at the election of the Debtor, either payment on the Effective Date, or regular installment payments in Cash beginning on the Effective Date in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code. If the distribution is made through regular installments, Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at the rate established for delinquent tax obligations pursuant to 26 U.S.C. §6621; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law. Notwithstanding the above, each Holder

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 22 -

of an Allowed Priority Tax Claim may be paid (i) under such other terms as may be mutually agreed upon by both the Holder of such Allowed Priority Tax Claim and each respective, or (b) as otherwise ordered by a Final Order of the Bankruptcy Court.

## F.   **Classification and Treatment of Other Claims and Equity Interests.**

Section 1123 of the Bankruptcy Code provides that, except for administrative expense claims and priority tax claims, a Chapter 11 plan must categorize claims against and equity interests in a debtor into individual classes. Although the Bankruptcy Code gives a debtor significant flexibility in classifying claims and interests, Section 1122 of the Bankruptcy Code dictates that a Chapter 11 plan may only place a claim or an equity interest into a class containing claims or equity interests that are substantially similar. The Plan creates several "Classes" of Claims and Equity Interests which take into account the differing nature and priority of Claims against and Equity Interests in the Debtors.

A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. The Plan provides specific treatment for each Class of Claims or Equity Interests. Only Holders of Allowed Claims or Allowed Equity Interests are entitled to vote on and receive Distributions under the Plan. Unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim or Equity Interest under the Plan will be in full satisfaction, settlement, release and discharge of, and in exchange for, such Claim or Equity Interest. The categories of Claims and Equity Interests and their treatment listed below classify Claims and Equity Interests for all purposes, including voting, confirmation and Distribution pursuant to the Plan, except as otherwise provided herein or in the Plan, and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

### 1.   **Class 1 – The Secured Claim of FAP.**

The FAP Secured Claim shall be an Allowed Claim in an amount not less than $14,899,529.00 inclusive of principal, accrued and unpaid interest at the base and post-default rates set forth in the Loan Documents and certain fees and expenses reimbursable thereunder, plus certain unliquidated fees and expenses arising thereunder, net of adequate protection payments made in the Chapter 11 bankruptcy cases. The Plan provides for the reorganization of the Debtors and distribution of the New Membership Interests (as defined herein) of the Reorganized Debtors (as defined herein) to Furniture Asset Partners, LLC's ("**FAP**") or TRP Holdings, Inc. on account of the assignment and contribution of the FAP Secured Claim to TRP Holdings, Inc. immediately prior to the Effective Date (the "**FAP Designee**"). In full and final satisfaction, compromise, settlement, release, and discharge of the FAP Secured Claim, the FAP Designee shall receive (i) the New Membership Interests in the Reorganized Debtors, and (ii) any amounts of Net Liquidation Proceeds that FAP is entitled to under the Global Settlement Agreement.

### 2.   **Class 2 – General Unsecured Claims.**

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization   - 23 -

General Unsecured Claims include any Claim which is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Secured Claim, or Cure Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (b) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the Estate's interest in the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, (c) any Claim arising from the provision of goods or services to the Debtors prior to the Petition Date, and (d) any Claim designated as an Unsecured Claim elsewhere in the Plan or in the Confirmation Order.

Disbursements to Holders of General Unsecured Claims shall be made from a Creditor Trust. The Plan provides for the creation of a Creditor Trust and the designation of a disinterested third-party acceptable to the Debtors and the Official Committee of Unsecured Creditors to serve as the Creditor Trustee. The Plan contemplates the assignment to the Creditor Trust of all of the Debtors' unencumbered assets or the net proceeds arising from the sale such unencumbered assets occurring prior to the Effective Date, after first satisfying all Allowed Administrative Expense Claims and the Allowed Priority Claims. The Debtors will also assign to the Creditor Trust the Causes of Action, which include the Avoidance Actions. The assets transferred to the Creditor Trust shall be administered for the benefit of holders of Allowed Claims.

### 3.    Class 3 – Unsecured Claims of $2,500 of Less

Class 3 is a "convenience class" authorized by Section 1122(b) of the Bankruptcy Code and consists of the Allowed Unsecured Claims of creditors of the Debtors that are $2,500 or less, either originally or by election. A creditor with an Allowed Unsecured Claim in excess of $2,500 can qualify for inclusion in Class 3 by electing to reduce their Claim to $2,500 in writing, by appropriate notation on a ballot accepting or rejecting the Plan, provided that such ballot is returned on or before the date fixed by the Bankruptcy Court

Each Holder of Class 3 Claims shall receive fifty percent (50%) of their Allowed Unsecured Claims (or if they make an election detailed above, the sum of $2,500) on the first date in which distributions are made to general unsecured creditors by the Creditor Trust.

### 4.    Class 4 – Intercompany Claims.

On the Effective Date, Holders of Intercompany Claims shall be subordinated and shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan on account of such Claims.

### 5.    Class 5 – Equity Interests.

On the Effective Date, all existing Equity Interests shall be cancelled and released without any distribution on account of such Interests.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 24 -

G.    **Means of Implementation of the Plan.**

The following discussion describes the actions to be taken by the Debtors in order to carry out the provisions of the Plan.

1.    **Operations of the Debtors Between Confirmation Date and Effective Date.**

During the period from the Confirmation Date through and until the Effective Date, TRP Brands and TRPFM shall each continue to operate its business as debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

2.    **Issuance of New Membership Interests**

New Membership Interests shall be authorized under the New Organizational Documents. The New Membership Interests shall be issued on or about the Effective Date and delivered on the Effective Date in accordance with this Plan.  All Membership Equity Interests to be issued and/or delivered to FAP, or its designee, in accordance with this Plan, when so issued, and/or delivered shall be duly authorized, validly issued, fully paid, and non-assessable.  The issuance and delivery of the New Membership Interests in accordance with the Plan are authorized without the need for any further limited liability company or corporate action and without any further action by any Holder of a Claim or Equity Interest.

On the Effective Date, except as otherwise specifically provided for in this Plan: (i) the obligations of the Debtors under any certificate, share, note, bond, agreement, indenture, purchase right, option, warrant, call, put, award, commitment, registration rights, preemptive right, right of first refusal, right of first offer, co-sale right, investor rights, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors for the benefit of FAP (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to this Plan, if any) shall be cancelled, terminated and of no further force or effect, without further act or action, and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, calls, puts, awards, commitments, registration rights, preemptive rights, rights of first refusal, rights of first offer, co-sale rights, investor rights, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated or assumed pursuant to this Plan, if any) shall be released and discharged.

On the Effective Date, the New Organizational Documents shall go into effect.  Consistent with, but only to the extent required by, section 1123(a)(6) of the Bankruptcy Code, on the Effective Date, the certificates of incorporation of the Reorganized Debtors shall prohibit the issuance of non-voting equity securities.  After the Effective Date, each of the Reorganized Debtors

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization    - 25 -

may amend and restate its certificates or articles of incorporation, by-laws, or similar governing documents, as applicable, as permitted by applicable law.

To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance and distribution of the New Membership Interests shall be exempt from, among other things, the registration and prospectus delivery requirements of section 5 of the Securities Act, and any other applicable state and federal law requiring registration and/or delivery of a prospectus prior to the offering, issuance, distribution or sale of securities, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act. In addition, any securities issued under the Plan shall be freely transferable under the Securities Act by the recipients thereof, subject to compliance with any rules and regulations of the U.S. Securities and Exchange Commission, if any, applicable at the time of any future transfer of Equity such Interests and applicable regulatory approval, if any.

Following the Confirmation Date and subject to any applicable limitations set forth in any post-Effective Date agreements, the Debtors, the Creditor Trustee, and the Reorganized Debtors may take all actions as may be reasonably necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, including: (a) the execution and delivery of appropriate agreements or other documents of reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law, including the Backstop Commitment Letter; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of this Plan; (c) the filing of appropriate certificates of conversion, formation or incorporation or consolidation with the appropriate governmental authorities pursuant to applicable law; (d) the execution, delivery, and filing, if applicable, of the New Organizational Documents and the Creditor Trust Agreement; (e) transfer of the FAP Secured Claim to the FAP Designee; (f) such other transactions that are required to effectuate the restructuring transactions, including any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; and (g) all other actions that the Reorganized Debtors reasonably determine are necessary or appropriate. For the purposes of effectuating this Plan, none of the restructuring transactions contemplated herein shall constitute a "change of control" or "assignment" (or terms with similar effect) under, or any other transaction or matter that would result in a violation, breach, or default under, or increase, accelerate, or otherwise alter any obligations, rights or liabilities of the Debtors or the Reorganized Debtors under, or result in the creation or imposition of a Lien upon any property or asset of the Debtors or the Reorganized Debtors pursuant to, any agreement, contract, or document of the Debtors, and any consent or advance notice required under any agreement, contract, or document of the Debtors shall be deemed satisfied by Confirmation.

### 3.    The Creditor Trust

The Plan provides for the creation of a Creditor Trust and the designation of a disinterested third-party acceptable to the Debtors and the Official Committee of Unsecured Creditors to serve as the Creditor Trustee.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization    - 26 -

### i.   Creation of the Creditor Trust

On or prior to the Effective Date, the Debtors, on their own behalf and on their Estates' behalf and on behalf of the Holders of Claims and Equity Interests that are to be satisfied with Distributions from the Creditor Trust Assets, will execute a Creditor Trust Agreement and will take all other steps necessary to establish the Creditor Trust pursuant to the Creditor Trust Agreement. On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors will transfer to the Creditor Trust all of their rights, title, and interests in all of the Creditor Trust Assets, which are: (a) Cash sufficient to pay (i) in an amount equal to: (i) $500,000 pursuant to Paragraph 4.a of the Global Settlement Agreement, and, to the extent necessary (ii) all ordinary and necessary expenses of conducting the Store Closing Sales including, but not limited to, payments under any Closing Store Bonus Plan, (iii) accrued and unpaid postpetition non-Professional payables existing as of the beginning of the Store Closing Sales for the reasonable, necessary costs and expenses of preserving the Estates, and (iv) any Professional Fees and expenses payable under the Monthly Professional Compensation Order, (b) Causes of Action including the Avoidance Actions (but excluding Causes of Action related to assets which revest in the Reorganized Debtors pursuant to this Plan, or pledged to FAP or represent proceeds of FAP's collateral) and all proceeds and recoveries thereof, (d) any Excluded Assets and (e) solely related to the foregoing, copies of the books, records and files of the Debtors and of their Estates, in all forms, including electronic and hard copy.

FAP will also provide a "Backstop Commitment" to loan up to a maximum of $150,000 to the Creditor Trust on the Effective Date in a accordance with the terms of the "Backstop Commitment Letter." The Backstop Commitment Letter will be included in the Plan Supplement and will be by and between the Debtors, FAP and the Committee. It will document the terms of the Backstop Commitment, including, without limitation, the following terms: (i) maximum backstop loan amount of $150,000.00 for working capital requirements of the Creditor Trust; (ii) a backstop fee of $10,000, payable only if loans are drawn by the Creditor Trust; (iii) interest rate of 8% for any and all loans drawn by the Creditor Trust; (iv) repayment of any loans drawn, the backstop fee, and any interest accrued will be made from first available net proceeds of Creditor Trust Assets after satisfaction of the Allowed Amount of any Administrative Expense Claims, including the Allowed Administrative Expense Claims of Professionals; provided that such backstop loan repayments shall be made prior to any payments to Allowed General Unsecured Claims and other amounts necessary for administration of the Creditor Trust.

The Creditor Trust shall be established solely for the purpose of holding and administering the Creditor Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Accordingly, the Creditor Trustee shall hold the Creditor Trust Assets pursuant to the terms of this Plan and the Creditor Trust Agreement by engaging in the following activities: (a) pursuing the Causes of Action retained by the Creditor Trust; (b) making all required Distributions to the beneficiaries provided for under the Creditor Trust Agreement; and (c) taking other actions as may be necessary to effectuate any of the foregoing. The Creditor Trust will not hold itself out as an investment company and will not conduct a trade or business. At no time shall the Creditor Trust control or operate the business of the Debtors or any assets of the Debtors other than the Creditor Trust Assets.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization   - 27 -

Notwithstanding anything to the contrary in the Plan, any disclosure or examination of any document which is privileged from disclosure or discovery under state or federal law (a "**Privileged Document**") shall be limited to the Creditor Trustee and the attorneys that the Creditor Trustee has retained on behalf of the Creditor Trust for the purpose of pursuing Causes of Action or claims not released by the Debtors, those attorneys' administrative support personnel, and any consulting, non-testifying experts retained by the Creditor Trustee on behalf of the Creditor Trust for the purpose of assisting the Creditor Trust in pursuing such Causes of Action or claims. The Creditor Trustee may not disclose any of the Privileged Documents (or the contents of the Privileged Documents), or otherwise take any actions that may constitute a waiver of the attorney-client privilege, work product privilege, common interest privilege, or any other applicable privileges with respect to the Privileged Documents, or any other privileged communication without giving three (3) Business Days' notice to the Debtors and any other applicable affected party and an opportunity to object. Nothing in the Plan shall constitute a waiver of any privilege claims over any of the documents, including the Privileged Documents that are produced to or received by the Creditor Trust or Creditor Trustee. For the avoidance of doubt, the Creditor Trust is a successor-in-interest to the Debtors, and thus, the transfer of the Privileged Documents as provided herein does not impair or waive any privilege.

## ii.    Appointment and Termination of the Creditor Trustee

The Creditor Trustee shall be selected by the Creditors' Committee by no later than ten (10) days prior to the Voting Deadline for the Plan. The Debtors shall identify the Creditor Trustee in the Plan Supplement. The appointment of the Creditor Trustee shall be approved in the Confirmation Order, and such appointment shall be effective on the Effective Date.

In accordance with the Creditor Trust Agreement, the Creditor Trust shall continue for a term terminating on the earlier to occur of that date in which (a) all of the Creditor Trust Assets have been distributed pursuant to this Plan and the Creditor Trust Agreement, (b) the Creditor Trustee determines, in his/her sole discretion, that the administration of any remaining Creditor Trust Assets or retained Causes of Action are not likely to yield sufficient additional proceeds to justify further pursuit, or (c) all Distributions required to be made by the Creditor Trustee under this Plan and the Creditor Trust Agreement have been made; provided, however, in no event shall the Creditor Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth (5th) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions) is necessary to facilitate or complete the recovery and liquidation of the Creditor Trust Assets.

## iii.    Treatment of Creditor Trust for Federal Income Tax Purposes

The Creditor Trust is intended to qualify as a creditor trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a), with no objective to continue or engage in the conduct of a trade or business. In the event the Creditor Trust shall fail or cease to qualify as a creditor trust in accordance with Treasury Regulations Section 301.7701-4(d), the parties to the Creditor Trust Agreement intend that the

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 28 -

Creditor Trustee take such action as it shall deem appropriate to have the Creditor Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership under Code Section 7704), including, if necessary, creating or converting it into a Illinois limited liability company.

For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Creditor Trustee, and the beneficiaries) shall treat the transfer of the Creditor Trust Assets to the Creditor Trust as (1) a transfer by the Debtors of the Creditor Trust Assets (subject to any obligations relating to those assets) directly to the beneficiaries in full satisfaction of the beneficiaries' claims against the Debtors and, to the extent Creditor Trust Assets are allocable to Disputed Claims, to the Distribution Reserve Account (as defined in the Creditor Trust Agreement), followed by (2) the transfer by such beneficiaries to the Creditor Trust of the Creditor Trust Assets in exchange for such beneficiaries interest in the Creditor Trust Assets. Accordingly, the Creditor Trust beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Creditor Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for all state, provincial, territorial and local income tax purposes.

The Creditor Trust shall file returns for the Creditor Trust, except with respect to the Disputed Claims Reserve, as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a). The Creditor Trust's taxable income, gain, loss, deduction or credit will be allocated to each holder in accordance with their relative beneficial interests in the Creditor Trust. As soon as possible after the Effective Date, the Creditor Trust shall make a good faith valuation of assets of the Creditor Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Creditor Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Creditor Trust that are required by any Governmental Unit for taxing purposes. The Creditor Trust shall file all income tax returns with respect to any income attributable to the Creditor Trust Assets and shall pay any federal, state and local income taxes attributable to the Creditor Trust Assets, based on the items of income, deduction, credit or loss allocable thereto.

The Creditor Trust may request an expedited determination of Taxes of the Debtors or of the Creditor Trust, including the Distribution Reserve Account, under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Debtors and the Creditor Trust for all taxable periods through the dissolution of the Creditor Trust. The Creditor Trustee shall be responsible for filing all federal, state, local and foreign tax returns for the Debtors and the Creditor Trust. The Creditor Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Creditor Trust shall be subject to any such withholding and reporting requirements.

### iv.    Costs and Expenses of the Creditor Trust and Professionals

The Creditor Trustee may retain and compensate professionals to assist in its duties on such terms (including on a contingency or hourly basis) as it deems reasonable and appropriate without Bankruptcy Court approval. The costs and expenses of the Creditor Trust and any professionals retained by the Creditor Trust shall be paid from the Creditor Trust Assets; provided that the

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization    - 29 -

Backstop Commitment shall not be used to pay such costs.

### v.    Cash of the Creditor Trust

The Creditor Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701 4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

### vi.    Responsibilities of the Creditor Trustee.

The responsibilities of the Creditor Trustee, which shall be discharged in accordance with the terms of the Plan and the Creditor Trust Agreement, shall include, but not shall not be limited to, the following:

a. Administering and monetizing the Creditor Trust Assets;
b. Objecting to and resolving Disputed Claims as provided in Article VI, Paragraph 2 of this Plan;
c. Investigating, pursuing, litigating, settling, or abandoning any Causes of Action which constitute Creditor Trust Assets;
d. Making Distributions in accordance with the terms of the Plan and the Creditor Trust Agreement;
e. Preparing and filing post-Effective Date operating reports;
f. Filing appropriate tax returns in the exercise of its fiduciary obligations; \
g. Retaining such professionals as are necessary and appropriate in furtherance of its fiduciary obligations; and
h. Taking such actions as are necessary and reasonable to carry out the purposes of the Creditor Trust.

To the extent necessary or appropriate, the Creditor Trustee shall be deemed to be a judicial substitute for the Debtors as the party-in-interest in the Bankruptcy Cases, under the Plan or in any judicial proceeding or appeal to which a Debtor is a party consistent with Section 1123(b)(3)(B) of the Bankruptcy Code.

### 4.    Vesting of Assets in Reorganized Debtors

Except as otherwise provided in the Plan, the Debtors shall continue to exist after the Effective Date as the Reorganized Debtors pursuant to the New Organizational Documents and in accordance with the applicable laws of the respective jurisdictions in which it is incorporated or organized, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law.  On or after the Effective Date, the Reorganized Debtors, in their discretion, may take such action as permitted by applicable law and the Reorganized Debtors' New Organizational Documents, as the Reorganized Debtors may determine is reasonable and appropriate, including, but not limited to, causing (a) the legal name of a Reorganized Debtor to be changed; (b) the conversion of a Reorganized Debtor from one entity type to another entity type; (c) the reincorporation of a Reorganized Debtor under the law

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 30 -

of jurisdictions other than the law under which the Debtor currently is incorporated.

Furthermore, on and after the Effective Date, all property of the bankruptcy estates, except for the Creditor Trust Assets, shall vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, other encumbrances and Interests, with Holders of any such Claims, Liens, charges, other encumbrances and Interests entitled to receive payment for such Claims, Liens, charges, other encumbrances and Interests only from the Creditor Trust and the Creditor Trust Assets. Subject to Plan provisions to the contrary, if any, on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.

5.      **Income Generated from the Debtors Operations.**

The Debtors will continue to operate certain of its physical stores and digital marketplaces as a going concern; however, no revenues from said operations will be available for disbursement to the creditors or parties in interest to the consolidated bankruptcy estate.

6.      **Managers, Board of Directors and Management of the Reorganized Debtors**

On the Effective Date, the managers and, to the extent applicable, initial board of directors of the Reorganized Debtors, shall consist of those individuals identified in the Plan Supplement. After the Effective Date, the New Organizational Documents, as each may be amended thereafter from time to time, shall govern the designation and election of directors.  Unless properly reappointed, managers and/or the members of the board of directors of each Debtor prior to the Effective Date shall have no continuing obligations to the Reorganized Debtors in their capacities as such on and after the Effective Date and each such manager or member shall be deemed to have resigned or shall otherwise cease to be a director of the applicable Debtor on the Effective Date. Commencing on the Effective Date, each of the directors of the Reorganized Debtors shall serve pursuant to the terms of the applicable organizational documents of the Reorganized Debtors and may be replaced or removed in accordance with such organizational documents.

As of the Effective Date, the Chief Executive Officer, Chief Financial Officer and other management positions, if any, to be determined with the consent of the Reorganized Debtors shall consist of those individuals selected by and acceptable to the Holders of the New Membership Interests and shall be set forth in the Plan Supplement.

H.      <u>**Assumption or Rejection of Executory Contracts and Unexpired Leases.**</u>

On the Effective Date, except as otherwise provided herein, each Executory Contract and unexpired lease not previously assumed or assumed and assigned shall be deemed automatically rejected pursuant to Sections 365(a) and 1123 of the Bankruptcy Code, unless such Executory Contract or unexpired lease: (1) is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 31 -

Executory Contract or unexpired lease as of the Effective Date; or (3) is a contract, instrument, release, or other agreement or document entered into in connection with the Plan.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. In addition, the Bankruptcy Court shall retain jurisdiction to approve the assumption, or assumption and assignment, of any other Executory Contract and Unexpired Lease not previously assumed or assumed and assigned, but sought to be assumed, or assumed and assigned on the later of the Effective Date or the Closing Date.

Any Cure Claim under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the latter of the Effective Date subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of the Cure Claim, (2) the ability of the Debtors to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Claim required by Section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided that prior to the Effective Date, the Debtors may settle any dispute regarding the amount of any Cure Claim without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

At least twenty-one (21) days before the Confirmation Hearing, the Debtors shall cause notice of proposed assumption and proposed Cure Claims to be sent to applicable counterparties. Any objection by such counterparty must be filed, served and actually received by the Debtors not later than fourteen (14) days after service of notice of the Debtor's proposed assumption and associated Cure Claim. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or Cure Claim.

Subject to satisfaction of the Cure Claims, the assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment. Anything in the Schedules and any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtor's Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed with the Bankruptcy Court and served on the Debtors no later than sixty (60) days after the date the Executory Contract or Unexpired Lease is rejected. All Allowed

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization     - 32 -

Claims arising from the rejection of a Debtor's Executory Contracts or Unexpired Leases shall be classified as Class 2 Claims, except as otherwise provided by order of the Bankruptcy Court.

## I.    **Provisions Governing Distributions.**

### 1.    **Determination of Claims.**

Prior to the Effective Date, the Debtors shall have the exclusive authority to, and shall file, settle, compromise, withdraw, or litigate all objections to the Disputed Claims and Claims filed against the Debtors or the bankruptcy estates. Following the Effective Date the Creditor Trust shall have the exclusive authority, subject to the provisions of the Creditor Trust Agreement, to and shall file, settle, compromise, withdraw, or litigate all objections to the Disputed Claims and Claims filed against the Debtors or the bankruptcy estates. Except as to any late-filed Claims, Claims resulting from the rejection of executory contracts or unexpired leases, all objections to Claims shall be filed with the Bankruptcy Court by no later than sixty (60) days following the Effective Date (unless such period is extended by the Bankruptcy Court upon motion of any of the Debtors, and the Confirmation Order shall contain appropriate language to that effect. Objections to Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) sixty (60) days following the Effective Date or (b) the date sixty (60) days after the applicable Debtor receives actual notice of the filing of such Claim.

The applicable party may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether that Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

For purposes of the Plan, an "Allowed Claim" refers to a Claim or that portion of a Claim which is not a claim subject to a bone fide dispute or which has been disallowed by the Court and (a) as to which a Proof of Claim was filed on or before the Bar, or, by order of the Bankruptcy Court, was not required to be so filed, or (b) as to which no Proof of Claim was filed on or before the Bar Date but which has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent and, in the case of subparagraph (a) and (b) above, as to which either (i) no objection to the allowance of such Claim has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court, or (ii) any objection as to the allowance of such Claim has been settled or withdrawn or has been overruled by a Final Order. "Allowed Claim" shall also include a Claim that is allowed by the Bankruptcy Court in a Final Order. "Allowed", when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization     - 33 -

For purposes of the Plan, a "Disputed Claim" refers to a Claim or portion thereof (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules and, in the case of subparagraph (a) and (b) above, as to which an objection has been timely filed or deemed filed under the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court, and any such objection has not been (i) withdrawn, (ii) overruled by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the amount subject to objection.  "Disputed", when used as an adjective herein (such as Disputed Administrative Expense Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Secured Claim, and Disputed Unsecured Claim), has a corresponding meaning.

## 2.      No Interest on Claims.

Except as otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Unsecured Claim shall be entitled to the accrual of post-petition interest or the payment of post-petition interest, penalties, or late charges on account of such Allowed Unsecured Claim for any purpose.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Unsecured Claim in respect of the period from the Effective Date to the date a Disputed Unsecured Claim becomes an Allowed Unsecured Claim.

## 3.      Compliance with Tax Requirements.

In connection with the Plan, the Debtors shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations on account of such Distribution.

## J.      Exculpation from Liability, Release, and General Injunction.

## 1.      Exculpation from Liability.

**EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, TO THE MAXIMUM EXTENT PERMITTED BY THE BANKRUPTCY CODE AND APPLICABLE LAW, NONE OF (A) THE DEBTORS, (B) THE REORGANIZED DEBTORS, (C) THE CREDITOR TRUST, (D) THE CREDITOR TRUSTEE, (E) THE CREDITORS' COMMITTEE, (F) THE MEMBERS OF THE CREDITORS' COMMITTEE IN THEIR OFFICIAL CAPACITIES, FOR CONDUCT WITHIN THE SCOPE OF THEIR DUTIES, (G) THE PROFESSIONALS, FOR CONDUCT WITHIN THE SCOPE OF THEIR DUTIES, (H) THE BERMAN-RELATED ENTITES, SOLELY TO THE EXTENT PERMITTED BY APPLICABLE LAW, OR (I) ANY OF THEIR**

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 34 -

RESPECTIVE EMPLOYEES, REPRESENTATIVES, FINANCIAL ADVISORS, ATTORNEYS, OR AGENTS ACTING IN SUCH CAPACITY, AND FOR CONDUCT WITHIN THE SCOPE OF THEIR DUTIES, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, ON OR AFTER THE PETITION DATE, SHALL HAVE OR INCUR ANY LIABILITY TO, OR BE SUBJECT TO ANY RIGHT OF ACTION BY, ANY HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST RELATING TO, OR ARISING OUT OF, THE BANKRUPTCY CASES, FORMULATING, NEGOTIATING, OR PURSING TO CONFIRMATION THE PLAN, OR IMPLEMENTING OR CONSUMMATING THE PLAN, THE ADMINISTRATION OF THE PLAN, OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR THEIR WILLFUL MISCONDUCT, GROSS NEGLIGENCE, AND ACTUAL FRAUD, AND IN ALL RESPECTS THE PERSONS DESCRIBED IN THIS SECTION SHALL BE ENTITLED TO RELY REASONABLY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN. NOTHING HEREIN SHALL PROHIBIT ANY PERSON FROM OBJECTING TO THE ALLOWANCE OF COMPENSATION FOR ANY PROFESSIONALS.

2.    Discharge Injunction.

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Equity Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

3.    Pursuit of Causes of Action.

The term "Causes of Action" is defined in the Plan means any and all actions, claims, demands, rights, defenses, counterclaims, suits and causes of action of the Debtors or their Estates, whether known or unknown, in law, equity or otherwise, against any Creditor or other third party,

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization    - 35 -

including the Avoidance Actions and any and all other claims or rights or proceedings of any value whatsoever, at law or in equity, turnover actions and claims of the type referred to in the Disclosure Statement. This term shall not include any claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived by the Debtors or their Estates pursuant to a Final Order of the Bankruptcy Court. Included in the Creditor Trust Assets are those Causes of Action including the Avoidance Actions (but excluding Causes of Action related to assets which revest in the Reorganized Debtors pursuant to this Plan, or pledged to FAP or represent proceeds of FAP's collateral) and all proceeds and recoveries thereof. For the avoidance of doubt, the Creditor Trust Assets shall not include any Postpetition claims or Causes of Action (other than Avoidance Actions and setoff claims) and Causes of Action that have been expressly released, exculpated or waived by the Debtors or their Estates pursuant to the Global Settlement Agreement, a Final Order of the Bankruptcy Court, or pursuant to this Plan

Except as otherwise provided in the Plan or Confirmation Order, on and after the Effective Date, the Creditor Trustee shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Causes of Action that were held by the Debtors and the Estates, in accordance with the Creditor Trust Agreement and in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Bankruptcy Cases.

No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Creditor Trustee will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or consummation of the Plan.

The Debtors reserve the Causes of Action notwithstanding the rejection of any executory contract or unexpired lease during these Bankruptcy Cases or pursuant to the Plan. Except as otherwise provided by the Creditor Trust Agreement, prior to the Effective Date, the Debtors, and on and after the Effective Date, the Creditor Trustee, shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court to the fullest extent permitted by Section 1123 of the Bankruptcy Code and all other applicable law. Notwithstanding anything contained herein to the contrary, the settlement of Claims and Causes of Action which are expressly to be settled by confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself.

The Debtors, through their counsel and professionals, have carefully considered whether claims exist that might or should be pursued against each other. TRPFM does not believe that it has any claims against TRP Brands. Its review of TRPFM's affairs has led it to conclude that TRP Brands has conducted itself in a wholly appropriate manner in connection with the operation of TRPFM. Any business setback that TRPFM has suffered is not due to any circumstance that might

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization   - 36 -

give rise to any claim against TRP Brands by reason of it being an affiliate of TRPFM.  TRP Brands may have claims against TRPFM for indemnification or contribution on various claims by reason of their affiliate relationship.  Nevertheless, in TRP Brands's judgment, the terms and provisions of the Plan are such that further claims for indemnification or contribution would be without merit.  For these reasons, no claim or Cause of Action is deemed to exist in favor of TRPFM against TRP Brands or in favor of TRP Brands against TRPFM. None will be pursued in furtherance of the Plan or otherwise.

TRP Brands does not believe that it has any claims against TRPFM. Its review of TRP Brands's affairs has led it to conclude that TRPFM has conducted itself in a wholly appropriate manner in connection with the operation of TRP Brands. Any business setback that TRP Brands has suffered is not due to any circumstance that might give rise to any claim against TRP Brands by reason of it being an affiliate of TRP Brands.  TRPFM may have claims against TRP Brands for indemnification or contribution on various claims by reason of their affiliate relationship. Nevertheless, in TRPFM's judgment, the terms and provisions of the Plan are such that further claims for indemnification or contribution would be without merit.  For these reasons, no claim or Cause of Action is deemed to exist in favor of TRP Brands against TRPFM or in favor of TRP Brands against TRP Brands. None will be pursued in furtherance of the Plan or otherwise.

**K.    Conditions Precedent to Confirmation of the Plan and the Effective Date.**

**1.    Condition Precedent to Confirmation of the Plan.**

The following are conditions precedent to the occurrence of the Confirmation of the Plan: (a) the Confirmation Order shall have been entered in form and substance satisfactory to the Debtors and (b) the Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Orders in a manner consistent with the provisions of the Plan.

**2.    Conditions Precedent to the Effective Date.**

The Plan shall not be consummated and the Effective Date shall not occur unless each of the following conditions has been satisfied following the Confirmation Date or waived by the Debtor:

      i.    The Bankruptcy Court shall have entered the Confirmation Order.

     ii.    There shall be no stay or injunction in effect with respect to the Confirmation Order, which such Confirmation Order shall contain approval of the releases provided for herein.

    iii.    The appointment of the Creditor Trustee shall have been confirmed by order of the Bankruptcy Court.

    iv.    The New Membership Interests (with all conditions precedent thereto having been satisfied or waived) shall have been issued in accordance with the Plan and the New Organizational Documents.

     v.    All amounts required to be funded or paid on or before the Effective Date pursuant to this Plan or the Confirmation Order shall have been funded or paid.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization     - 37 -

    vi.    All Plan Documents, agreements and instruments shall be (i) in a form reasonably acceptable to the Debtors, (ii) have been duly executed and delivered and (iii) be in full force and effect and not subject to any unfulfilled conditions or contingencies; provided, however, that no party to any such agreements and instruments may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring.

    vii.   The transfers of the Debtors' assets to the Creditor Trust on the Effective Date shall have been made.

## VI.    GENERAL INFORMATION ON VOTING AND CONFIRMATION PROCEDURE

### A.    <u>Purpose of Disclosure Statement</u>

The Disclosure Statement is generally provided to all Holders of Claims and Equity Interests entitled to vote upon the Plan pursuant to Section 1125 of the Bankruptcy Code to enable such Holders to make an informed decision concerning the Debtors' solicitation of acceptances of the Plan.  After notice and a hearing conducted on [DATE], the Debtors will ask the Bankruptcy Court to approve this Disclosure Statements as containing "adequate information" (as defined in Section 1125(a) of the Bankruptcy Code) of a kind, and in sufficient detail, to enable a hypothetical reasonable investor typical of the Holders of Claims against or Equity Interests in the Debtors to make an informed decision in voting to accept or reject the Plan.  Approval of this Disclosure Statements by the Bankruptcy Court, however, does not constitute a recommendation to accept or reject the Plan.

### B.    <u>Voting On the Plan</u>

The following is a summary of the procedures and requirements that have been established for voting on the Plan.  If you are entitled to vote to accept or reject the Plan, you should receive a Ballot for the purpose of voting on the Plan.  If you hold Claims in more than one Class and you are entitled to vote such Claims in more than one Class, you will receive separate Ballots, which must be used for each separate Class of Claims.  If you are entitled to vote and did not receive a Ballot, or you received a damaged Ballot, or you lost your Ballot, please contact Debtors' bankruptcy counsel, Matthew T. Gensburg, c/o Gensburg Calandriello & Kanter, P.C., 200 W. Adams St., Ste. 2425, Chicago, IL 60606, e-mail mgensburg@gcklegal.com or E. Philip Groben, c/o Gensburg Calandriello & Kanter, P.C., 200 W. Adams St., Ste. 2425, Chicago, IL 60606, e-mail pgroben@gcklegal.com.

Votes <u>cannot</u> be transmitted orally, by facsimile or by electronic mail (e-mail).  Accordingly, you are urged to return your signed and completed Ballot promptly.  Any executed Ballot that does not indicate either an acceptance or a rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, will not be counted as a vote to either accept or reject the Plan.

THE DEBTORS RESERVE THE RIGHT TO SEEK TO SATISFY THE REQUIREMENTS FOR CONFIRMATION OF THE PLAN UNDER THE CRAMDOWN

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization    - 38 -

PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE IN THE EVENT ANY OF THE VOTING CLASSES VOTE TO REJECT THE PLAN AND, IF REQUIRED, MAY AMEND THE PLAN TO CONFORM TO THE STANDARDS OF SUCH SECTION.

SUBJECT TO THE TERMS AND CONDITIONS OF THE PLAN, THE DEBTORS RESERVE THE RIGHT TO AMEND THE PLAN EITHER BEFORE OR AFTER THE PETITION DATE.

AMENDMENTS TO THE PLAN THAT DO NOT MATERIALLY AND ADVERSELY AFFECT THE TREATMENT OF CLAIMS OR EQUITY INTERESTS MAY BE APPROVED BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING WITHOUT THE NECESSITY OF RESOLICITING VOTES.    IN THE EVENT RE-SOLICITATION IS REQUIRED, THE DEBTORS WILL FURNISH NEW BALLOTS TO BE USED TO VOTE TO ACCEPT OR REJECT THE PLAN, AS AMENDED.

1.    **Who May Vote**

Pursuant to Section 1126 of the Bankruptcy Code, only the Holders of Claims or Equity Interests in Classes that are Impaired by and are receiving Distributions under the Plan may vote on the Plan.  Holders of Claims that are Unimpaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan.  Administrative Claims and Priority Tax Claims are not generally classified for purposes of voting or receiving Distributions under the Plan.

**Holders of Claims in Classes 1 and 2 and Holders of Equity Interests in Class 4 are entitled to vote to accept or reject the Plan**.  If you are entitled to vote to accept or reject the Plan, a Ballot has been enclosed for the purpose of voting.

2.    **Eligibility**

In order to vote to accept or reject the Plan, a Holder of an Allowed Claim must have timely Filed or been assigned a timely Filed proof of claim, unless its Claim is listed on the Debtors' Schedules and is not identified therein as disputed, unliquidated or contingent or has not been objected to prior to the Confirmation Hearing.   The Voting Record Date will be used for determining (a) the Holders of Claims and Equity Interests in the Voting Classes, who are entitled to receive Solicitation Packages and vote to accept or reject the Plan, and (b) the Holders of Claims in the Non-Voting Classes, who will receive a Non-Voting Package. Creditors or Holders of Equity Interests having an Allowed Claim or Allowed Equity Interest in more than one Class may vote in each Class in which they hold a separate Claim or Equity Interest by casting a Ballot in each Class.

3.    **Binding Effect**

Whether a Holder of an Allowed Claim or Allowed Equity Interest votes on the applicable Plan or not, such Holder shall be bound by the terms of that Plan if the Plan is confirmed by the Bankruptcy Court.  Unless a Ballot is completed and returned in accordance with approved Bankruptcy Court procedures, a Holder of an Allowed Claim or Allowed Equity Interest that

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 39 -

submits a vote on a Plan shall not be counted for purposes of determining the amount and number of Creditors and Holders of Equity Interests voting on the Plan.

**C.      Procedure/Voting Deadlines**

In order for your vote to be counted, you must complete, date, sign and properly mail or deliver the enclosed Ballot via CM/ECF, hand delivery, courier service, overnight mail, or first-class mail so that it is received on or before the Voting Deadline, 5:00 p.m. (prevailing Central Time) on [DATE], to the following address:

> Clerk of the United States Bankruptcy Court
> 219 S. Dearborn
> 7th Floor
> Chicago, IL 60604

Ballots submitted via facsimile or email will not be counted.

Once you have delivered your Ballot to the Clerk of Court, you may change your vote by submitting to the Clerk of Court a valid subsequent Ballot to be received by the Voting Deadline. You may not, however, change your vote after the Voting Deadline, except upon cause shown to the Bankruptcy Court after notice and a hearing or upon the agreement of the Debtor. You are urged to timely complete, date, sign and promptly return the enclosed Ballot by mail, overnight mail, courier service or hand delivery. Please be sure to complete the Ballot properly and legibly, identifying the exact amount of your Claim, the Class or Classes in which the Claim(s) or Equity Interest(s) is/are classified under the Plan and the name of the Creditor or Equity Interest Holder.

**D.      Plan Confirmation Process**

**1.      Requirements**

The requirements for confirmation of the Plan are set forth in detail in Section 1129 of the Bankruptcy Code. The following summarizes some of the pertinent requirements:

**(a) Acceptance by All Impaired Classes:**

Except as noted below, each Impaired Class of Claims must vote to either accept the applicable Plan or be deemed to accept the Plan. "Impaired" is defined in Section 1124 of the Bankruptcy Code. A Claim is Impaired unless the Plan leaves unaltered the legal, equitable, or contractual rights of the Holder. Under the Plan, Claims in Classes 1 and 2 and Equity Interests in Class 4 are Impaired.

As a voting Creditor or Equity Interest Holder, your acceptance of the Plan is important. In order for the Plan to be accepted by an Impaired Class of Claims, Creditors holding a majority in number and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Plan. At least one Impaired Class of Creditors, excluding the votes of Insiders (if any), must actually vote to accept the Plan.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 40 -

**(b) Feasibility:**

Pursuant to Section 1129(a)(11) of the Bankruptcy Code, the Bankruptcy Court must determine, among other things, that confirmation of the plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtors or any successors to the debtors under the plan (unless such liquidation or reorganization is proposed in the plan).  In addition, Section 1129(a)(13) of the Bankruptcy Code requires that all fees payable under Section 1930 of Title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.  These conditions are often referred to as the "feasibility" of the plan.

**(c) "Best Interests" Test:**

Pursuant to Section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court must find that the Plan is in the best interests of Creditors (commonly referred to as the **"Best Interests"** test).  To satisfy the "Best Interests" test, the Bankruptcy Court must determine that each Holder of an Impaired Claim either: (i) has accepted the applicable Plan; or (ii) will receive or retain under the applicable Plan money or other property which, as of the Effective Date, has a value not less than the amount such Holder would receive if the Debtor's property was liquidated under Chapter 7 of the Bankruptcy Code on that date.

**(d) Costs and Expenses of Liquidation:**

In Chapter 7 liquidation, a trustee in bankruptcy would be appointed.  The Debtors' business likely would not be operated by the Chapter 7 trustee, and the trustee would likely liquidate the Debtors' assets on a piecemeal basis.  The net amount generated from the liquidation of Debtors' remaining assets would be reduced by the administrative expenses of both the Chapter 7 case and this Bankruptcy Case, including the fees and commissions of the Chapter 7 trustee, as well as those of counsel and other professionals that might be retained by the Chapter 7 trustee, in addition to unpaid expenses incurred by Debtors' during the Bankruptcy Case.  These expenses and costs would reduce the net proceeds available to Holders of Allowed Claims or Allowed Equity Interests.

Any remaining net cash would be allocated to creditors and stockholders in strict accordance with the priorities set forth in Section 726 of the Bankruptcy Code.  The present value of such allocation of the hypothetical liquidation proceeds (after deducting the amounts described above) is then compared with the present value of the proposed Distributions under Debtors' Plan to each of the Classes of Claims and Equity Interests to determine if Debtors' Plan is in the best interests of each Creditor or Holder of an Equity Interest.  If the present value of the Distributions available to unsecured creditors under the hypothetical liquidation is less than or equal to the present value of the Distributions available to unsecured creditors under Debtors' Plan, then the Debtors' Plan is in the best interests of creditors and can be considered in the "best interests of creditors" by the Bankruptcy Court.

**(e) The Plan Meets the Best Interests Test:**

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization     - 41 -

The Debtors believe that the Plan will produce a recovery for Holders of Claims and Equity Interests that would be substantially better than would be achieved in Chapter 7 liquidation. A formal liquidation analysis is attached hereto as Exhibit B. A Chapter 7 liquidation would likely result in an increase in Administrative Claims, because there would be an additional tier of Administrative Claims by the Chapter 7 trustee and his or her professionals. The Chapter 7 trustee's professionals, including legal counsel and accountants, would add administrative expenses that would be entitled to be paid ahead of Allowed Claims against the Debtor. The estate would also be obligated to pay all unpaid expenses incurred by the Debtors during these Bankruptcy Cases (such as compensation for professionals), which would continue to be allowed in the Chapter 7 case as well. In addition, the cash to be distributed to Creditors and Holders of Equity Interests would be reduced by the Chapter 7 trustee's statutory fee, which is calculated on a sliding scale from which the maximum compensation is determined based on the total amount of moneys disbursed or turned over by the Chapter 7 trustee.

Additionally, the *pro rata* disbursements in a Chapter 7 liquidation will be significantly less than those pursuant to the Plan in that the Chapter 7 bankruptcy estate will include the unsecured portion of the claim of FAP. As set forth in more detail above and in the Liquidation Analysis, the claim held by FAP, estimated to be $14,899,529.00 will be extinguished in exchange for, among other consideration, the extinguishment of Equity Interests of the Debtors and the issuance of the New Membership Interests to FAP or FAP's designee. A Chapter 7 liquidation would result in the portion of FAP's claim not secured by the value of the Debtors' assets, with an estimated value of between $12,180,743 and $13,370,190 receiving treatment as a general unsecured claim against the Chapter 7 bankruptcy estates.

For these reasons, the Debtors firmly believe that creditors are better served by this Plan than they would be in liquidation and accordingly, that this Plan meets the Best Interests of Creditors requirement of the Bankruptcy Code.

### (f) "Cramdown" Provisions:

Pursuant to Section 1129(b) of the Bankruptcy Code, the Bankruptcy Court may confirm a plan even though a class of claims or equity interests has not voted to accept the plan, as long as one impaired class of claims has accepted the plan (excluding the votes of Insiders, if any) and the plan is "fair and equitable" and "does not discriminate unfairly" against the non-accepting classes.

The Plan impairs certain Classes of Claims and Equity Interests. Therefore, the Debtors may, if applicable, pursue confirmation through a "cramdown" provision only under Section 1129(b)(2)(B), which states, in pertinent part, that a plan is "fair and equitable" to a class if, among other things, the plan provides, with respect to unsecured claims and equity interests, that the holder of any such claim or equity interest that is junior to the claims or equity interests of such class, will not receive or retain, on account of such junior claim or equity interest, any property unless the senior class is paid in full.

A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are similar to those of

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization   - 42 -

the dissenting class and if no class receives more than it is entitled to receive on account of its claim or interest. The Debtors will invoke the "cramdown" provisions of Section 1129(b)(2)(B) of the Bankruptcy Code should any voting Class fail to accept the Plan.

###    2.    Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan. To confirm the Plan, the Bankruptcy Court must determine whether the Plan meets the requirements of Section 1129 of the Bankruptcy Code. The Bankruptcy Court has set **[DATE], at 11:00 a.m. (prevailing Central Time)** for the Confirmation Hearing. The Confirmation Hearing will be conducted in the courtroom of the Honorable LaShonda A. Hunt, United States Bankruptcy Court for the Northern District of Illinois, Everett McKinley Dirksen Building, U.S. Courthouse, 219 South Dearborn Street, Courtroom 644, Chicago, Illinois 60604.

###    3.    Objections to Confirmation

Any party in interest may object to confirmation of the Plan and appear at the Confirmation Hearing to pursue such objection. The Bankruptcy Court has set **[DATE], at 5:00 p.m. (prevailing Central Time)** as the deadline for Filing and serving objections upon the Debtors' attorneys. Objections to confirmation must be Filed with the Bankruptcy Court electronically or at the following address:

>    **UNITED STATES BANKRUPTCY COURT**
>    Northern District of Illinois
>    Everett McKinley Dirksen Building
>    219 South Dearborn Street
>    Chicago, Illinois 60604

with a copy simultaneously served upon the attorneys for the Debtors at the addresses below:

>    **Gensburg, Calandriello & Kanter, P.C.**
>    200 West Adams Street, Suite 2425
>    Chicago, Illinois 60606
>    Attn: Matthew T. Gensburg

and a copy simultaneously served upon the Office of the United States Trustee at the address below:

>    **OFFICE OF THE UNITED STATES TRUSTEE**
>    Everett McKinley Dirksen Building
>    219 South Dearborn Street
>    Room 873
>    Chicago, Illinois 60604
>    Attn: Suhey Ramirez

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 43 -

and a copy simultaneously served upon the Official Committee of Unsecured Creditors at the address below:

> **TRP Brands Official Committee of Unsecured Creditors**
> 203 N. LaSalle St., Ste. 2100
> Chicago, IL 60601
> Attn: c/o Matthew M. Wawrzyn

## VII.    RISK FACTORS

ALL IMPAIRED HOLDERS OF CLAIMS OR INTERESTS SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.

## A.    **Bankruptcy Factors**

### 1.    **Classifications of Claims and Equity Interests**

Parties in interest may object to the Debtors' classification of Claims and Equity Interests. Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtors believe that the classification of Claims and Equity Interests under the Plan, including classifying the claim of West Montrose as a Class 6 Claim, comply with the requirements set forth in the Bankruptcy Code. However, there can be no assurance that the Bankruptcy Court will reach the same conclusion. If the classification scheme is not approved, the Plan cannot be confirmed.

### 2.    **Non-Occurrence of the Effective Date**

If the conditions precedent to the Effective Date, which are discussed in detail in Article XI of the Plan, have not been satisfied or waived, the Bankruptcy Court may vacate the Confirmation Orders. THERE CAN BE NO ASSURANCE THAT ALL OF THE VARIOUS CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN WILL BE TIMELY SATISFIED OR WAIVED. In the event that the conditions precedent to the Effective Date have not been timely satisfied or waived, the Plan would be deemed null and void and the Debtors may propose or solicit votes on an alternative plan that may not be as favorable to parties-in-interest as the current Plan, convert this Chapter 11 Cases or dismiss this Chapter 11 Cases.

### 3.    **Failure to Receive Requisite Accepting Votes**

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization        - 44 -

There can be no assurance that the requisite acceptances to confirm the Plan will be received.  In order for the Plan to be accepted, of those Holders of Claims who cast Ballots, the affirmative vote of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Allowed Claims in each voting Class is required; and of those Holders of Equity Interests who cast Ballots, the affirmative vote of at least two-thirds (2/3) in amount of Allowed Equity Interests in Class 11 is required.

If the requisite votes are not received, these Chapter 11 Cases could be converted into a cases under Chapter 7 of the Bankruptcy Code.  There can be no assurance that the distributions under a Chapter 7 liquidation would be similar to or as favorable to Holders of Claims or Equity Interests as those proposed in the Plan.

### 4.    Failure to Confirm the Plan

Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan.  A non-accepting creditor or equity holder of the Debtors might challenge the confirmation of the Plan or the balloting procedures and/or voting results as not being in compliance with the Bankruptcy Code or Bankruptcy Rules.  Even if the Bankruptcy Court determines that this Disclosure Statement and the balloting procedures and results are appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for confirmation have not been met, including that the terms of the Plan are fair and equitable to non-accepting Classes.

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, a finding by the Bankruptcy Court that the Plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting Classes and that the value of Distributions to non-accepting Holders of Claims within a particular Class under the Plan will not be less than the value of Distributions such Holders would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.  While there can be no assurance that these requirements will be met, the Debtors believes that non-accepting Holders within each Class under the Plan will receive Distributions at least as great as would be received following a liquidation under Chapter 7 of the Bankruptcy Code when taking into consideration all administrative claims and costs associated with any such Chapter 7 case.

If the Plan are not confirmed, it is unclear what Distributions Holders of Claims or Equity Interests ultimately would receive with respect to their Claims.  If alternative Plan could not be agreed to, it is possible that the Debtors would convert this Chapter 11 Cases to a Chapter 7 cases, in which case it is likely that Holders of Claims or Equity Interests would receive substantially less favorable treatment than they would receive under the Plan.

In addition, in the event that the Plan are not confirmed, the Debtors will incur substantial expenses related to the development and confirmation of a new plan and possibly the approval of a new disclosure statements.  This would only unnecessarily prolong the administration of the Debtors' assets and negatively affect Creditors' and Holders of Equity Interests' recoveries on their Claims and Equity Interests.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 45 -

Similarly, as described above, in the event this Chapter 11 Cases are converted to a cases under Chapter 7 of the Bankruptcy Code, the Debtors will incur substantial expenses related to hiring additional professionals and paying the fees of the Chapter 7 trustee. The additional cost will only serve to reduce Distributions to Creditors and Holders of Equity Interests.

### 5.    Alternative Chapter 11 Plan

If the Plan is not confirmed, any other party-in-interest may attempt to formulate alternative Chapter 11 plan. The prosecution of alternative Chapter 11 plans would unnecessarily delay Creditors' and Holders of Equity Interests' receipt of Distributions and, due to the incurrence of additional administrative expenses during such period of delay, may provide for smaller Distributions to Holders of Allowed Claims and Holders of Allowed Equity Interests, than are currently provided for in the Plan. Accordingly, the Debtors believes that the Plan will enable all Creditors to realize the greatest possible recovery on their respective Claims and Equity Interests with the least delay.

## VIII.   CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following discussion is a summary of certain material United States federal income tax aspects of the Plan, is for general information purposes only, and should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of a Claim or Equity Interest. This discussion does not purport to be a complete analysis or listing of all potential tax considerations.

This discussion is based on provisions of the Internal Revenue Code of 1986, as amended (the "<u>IRC</u>"), proposed Treasury Regulations promulgated thereunder, and administrative rulings and court decisions, all as in effect on the date hereof. Legislative, judicial, or administrative changes or interpretations enacted or promulgated after the date hereof could alter or modify the analyses set forth below with respect to the United States federal income tax consequences of the Plan. Any such changes or interpretations may be retroactive and could significantly affect the United States federal income tax consequences of the Plan. To the extent that the following discussion relates to the consequences to Holders of Allowed Claims or Equity Interests, it is limited to Holders that are United States persons within in the meaning of the IRC. For purposes of the following discussion, a "<u>United States person</u>" is any of the following:

- An individual who is a citizen or resident of the United States;
- A corporation created or organized under the laws of the United States or any state or political subdivision thereof;
- An estate, the income of which is subject to federal income taxation regardless of its source; or
- A trust that (a) is subject to the primary supervision of a United States court and which has one or more United States fiduciaries who have the authority to control all substantial decisions of the trust, or (b) has a valid election in effect under applicable United States Treasury regulations to be treated as a United States person.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization        - 46 -

The federal income tax consequences of the Plan is complex and are subject to significant uncertainties. No ruling has been requested or obtained from the Internal Revenue Service (the "**IRS**") with respect to any tax aspects of the Plan and no opinion of counsel has been sought or obtained with respect thereto. Thus, no assurance can be given as to whether the IRS will agree with the assertions and conditions discussed herein. No representations or assurances are being made to the Holders of Claims or Equity Interests with respect to the United States federal income tax consequences described herein.

This summary is limited to those Holders of Claims or Equity Interests who have held such Claims and Equity Interest as capital assets. Certain Holders (including, among others, insurance companies, banks, tax exempt organizations, financial institutions, broker-dealers, small business investment companies, regulated business companies, investors in pass-through entities, foreign companies, persons who are not citizens or residents of the United States, dealers in securities or foreign currency, and persons holding Claims that are a hedge against, or that are hedged against, currency risk or that are part of a straddle, constructive sale or conversion transaction) may be subject to special rules and are not discussed below. In addition, this summary does not address federal taxes other than income taxes or the foreign, state, or local tax consequences of the Plan.

## A.    <u>Certain U.S. Federal Income Tax Consequences to the Debtor</u>

Under the IRC, a taxpayer generally must include in gross income the amount of any cancellation of indebtedness income ("**COD Income**") realized during the taxable year. Section 108 of the IRC provides an exception to this general rule, however, if the cancellation occurs in a case under the Bankruptcy Code, but only if the taxpayer is under the jurisdiction of the bankruptcy court and the cancellation is granted by the court or is pursuant to a plan approved by the court.

Section 108 of the IRC requires the amount of COD Income so excluded from gross income to be applied to reduce certain tax attributes of the taxpayer. The tax attributes that may be subject to reduction include the taxpayer's net operating losses and net operating loss carryovers (collectively, "<u>**NOLs**</u>"), certain tax credits and most tax credit carryovers, capital losses and capital loss carryovers, tax bases in assets, and foreign tax credit carryovers. Attribute reduction is calculated only after the tax for the year of the discharge has been determined. Section 108 of the IRC further provides that a taxpayer does not realize COD Income from cancellation of indebtedness to the extent that payment of such indebtedness would have given rise to a deduction.

Under the Plan, Holders of Allowed General Unsecured Claims are expected to receive less than full payment on their Claims. The Debtors' liability to the Holders of Allowed General Unsecured Claims in excess of the amount satisfied by Distributions under the Plan will be canceled and therefore, will result in COD Income to the Debtors. The Debtors should not realize any COD Income, however, to the extent that payment of such Allowed General Unsecured Claims would have given rise to a deduction to the Debtors had such amounts been paid. In addition, any COD Income that the Debtors realize should be excluded from the Debtors' gross income pursuant to the bankruptcy exception to section 108 of the IRC described above, because the cancellation will occur in a case under the Bankruptcy Code, while the taxpayer is under the jurisdiction of the bankruptcy court, and the cancellation is granted by the court or is pursuant to a plan approved by the court.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization    - 47 -

The exclusion of the COD Income, however, will result in a reduction of certain tax attributes of the Debtors, such as the NOLs, as described above. Because attribute reduction is calculated only after the tax for the year of discharge has been determined, the COD Income realized by the Debtors under the Plan should not diminish the NOLs and other tax attributes that may be available to offset any income and gains recognized by the Debtors in the taxable year that includes the Effective Date.

**B.** **Certain U.S. Federal Income Tax Consequences to Holders of Allowed Claims or Equity Interests**

    **1.** **Exchange of Allowed Claims and Allowed Equity Interests for Debtor Assets**

A Holder of an Allowed Claim or Equity Interest will generally recognize ordinary income to the extent that the amount realized on the exchange is attributable to interest that accrued on a Claim or Equity Interest but was not previously paid by the Debtors or included in income by the Holder of the Allowed Claim or Equity Interest, and will generally recognize gain or loss on the exchange equal to the difference between the Holder's adjusted basis in the Claim or Equity Interest and the amount realized by the Holder that is not attributable to accrued but unpaid interest.

If the amount realized by a Holder of an Allowed Claim that is not attributable to accrued but unpaid interest is less than its tax basis in such Claim or Equity Interest, such Holder may be entitled to a bad debt deduction in the year of receipt or in an earlier or later year if either: (i) the Holder is a corporation; or (ii) the Claim constituted (a) a debt created or acquired (as the case may be) in connection with a trade or business of the Holder or (b) a debt the loss from the worthlessness of which is incurred in the Holder's trade or business. The rule governing the character, timing and amount of bad debt deductions place considerable emphasis on the facts and circumstances of the holder, the obligor and the instrument with respect to which a deduction is claimed. Holders of Allowed Claims, therefore, are urged to consult their tax advisor with respect to their ability to take such a deduction.

The character of any gain or loss that is recognized by a Holder of an Allowed Claim or Equity Interest will depend upon a number of factors, including the status of the Creditor or Holder of an Equity Interest, the nature of the Claim or Equity Interest in the Creditor's or Equity Interest Holder's hands, whether the Claim or Equity Interest was purchased at a discount, whether and to what extent the Creditor or Holder of Equity Interests has previously claimed a bad debt deduction with respect to the Claim or Equity Interest, and the Creditor's or Equity Interest Holder's holding period of the Claim or Equity Interest. If the Claim or Equity Interest in the Creditor's or Equity Interest Holder's hands is a capital asset, the gain or loss realized will generally be characterized as a capital gain or loss. Such gain or loss will constitute long-term capital gain or loss if the Creditor or Holder of Equity Interests held such Claim or Equity Interest for longer than one year, or short-term capital gain or loss if the Creditor or Holder of Equity Interests held such Claim or Equity Interest for less than one year. If the Holder realizes a capital loss, the Holder's deduction of the loss may be subject to limitations.

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization     - 48 -

Holders previously required to include in their gross income any accrued but unpaid interest with respect to a Claim or Equity Interest may be entitled to recognize a deductible loss to the extent the amount realized on the exchange of the Claim or Equity Interest for Debtor assets is less than the amount of such interest.

Holders of a Claim or Equity Interest constituting any installment obligation for tax purposes may be required to currently recognize any gain remaining with respect to such obligation if, pursuant to the exchange of the Claim or Equity Interest for Debtor assets, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of section 453B of the IRC.

### 2.     Information Reporting and Withholding.

Under the Internal Revenue Code's backup withholding rules, the holder of an Allowed Claim may be subject to backup withholding with respect to Distributions or payments made pursuant to the Plan unless the holder comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact, or provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividend and interest income.  Backup withholding is not an additional tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of tax. Holders of Allowed Claims may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

### C.     Importance of Obtaining Professional Tax Assistance

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL.  THE FOREGOING DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE UNCERTAIN IN MANY CASES AND MAY VARY DEPENDING ON A CLAIM HOLDER'S OR INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES.  ACCORDINGLY, CLAIM HOLDERS AND INTEREST HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

### IX.     RECOMMENDATIONS

The Debtors believe that the Plan is substantially preferable to any other plan, preferable to liquidation under Chapter 7 of the Bankruptcy Code, and preferable to a dismissal of these Chapter 11 Cases  Therefore, the Debtors strongly recommends that you vote in favor of the Plan.

### X.     CONCLUSION

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 49 -

It is important that you exercise your right to vote on the Plan. The Debtors believe that the Plan fairly and equitably provides for the treatment of all Claims against, and Equity Interests in the Debtors and recommend that you cast your Ballot in favor of the Plan.

Respectfully Submitted,

TRP BRANDS LLC and THE
ROOMPLACE FURNITURE AND
MATTRESS LLC,
Debtors herein.

By:    /s/ Matthew T. Gensburg
       One of its Attorneys

Matthew T. Gensburg (ARDC# 6187247)
Email: mgensburg@gcklegal.com
E. Philip Groben (ARDC# 6299914)
Email: pgroben@gcklegal.com
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams St., Ste. 2425
Chicago, Illinois 60606
Phone: 312-263-2200
*Counsel for the Debtors and Debtors-in-Possession*

TRP Brands LLC and The RoomPlace Furniture and Mattress LLC
Case Nos. 24-01529 and 24-01530
Joint Disclosure Statement to Plan of Reorganization      - 50 -

**EXHIBITS**

**Exhibit A**      The Plan
**Exhibit B**      Liquidation Analysis