**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| TRP BRANDS LLC, et al. | Case No. 24-01529 (Jointly Administered) |
| | Hon. David. Cleary |
| Debtors. | |

**AMENDED PLAN SUPPLEMENT FOR THE AMENDED JOINT CHAPTER 11 PLAN
OF REORGANIZATION OF TRP BRANDS AND
THE ROOMPLACE FURNITURE AND MATTRESS, LLC**

This Amended Plan Supplement contains drafts of the following documents, each of which may be subject to ongoing review and negotiations pursuant to the terms of the Amended Joint Chapter 11 Plan of Reorganization of TRP Brands and The RoomPlace Furniture and Mattress, LLC.  To the extent any Plan Supplement Document is amended, a redline of that amended document will be filed with the Bankruptcy Court.

| Exhibit | Description |
|---|---|
| A | Liquidating Creditor Trust Agreement |
| B | Backstop Commitment Letter |
| C | Board of Directors and Officers of the Reorganized Debtor(s) |
| D | Schedule of Assumed Executory Contracts and Unexpired Leases |

# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| TRP BRANDS LLC, et al. | Case No. 24-01529 (Jointly Administered) |
| | Hon. David. Cleary |
| Debtors. | |

## LIQUIDATING CREDITOR TRUST AGREEMENT

THIS LIQUIDATING CREDITOR TRUST AGREEMENT (the "**Agreement**") is dated as of __ _____, 2025, by and among TRP BRANDS LLC and THE ROOMPLACE FURNITURE AND MATTRESS LLC (collectively the "**Debtors**") and Matthew Brash, not in their respective individual capacities, but solely as the trustee hereunder ("**Trustee**").

## RECITALS

A. WHEREAS, the Debtors filed their voluntary petitions initiating their cases under Chapter 11 of the U.S. Bankruptcy Code ("**Bankruptcy Code**") on February 2, 2024 ("**Petition Date**") in the United States Bankruptcy Court for the Northern District of Illinois ("**Court**"), jointly administered as lead case no. 24-1529 ("**Case**");

B. WHEREAS, on May 21, 2025, the Debtors filed their *Amended Joint Chapter 11 Plan of Reorganization* [ECF 584] (the "**Plan**");

C. WHEREAS, the Plan contemplates that a liquidating trust must be created for the benefit of the holders of Allowed Claims[1] (the "**Creditor Trust**");

D. WHEREAS, the Plan was confirmed by the Court pursuant to that certain Order dated _____, 2025 [ECF No._____](the "**Confirmation Order**");

E. WHEREAS, the Debtors and the Holders (as defined herein) desire to create and fund the Creditor Trust (as defined herein), as contemplated by the Plan, pursuant to this Agreement; and

F. WHEREAS, the Holders desire to receive distributions from the Creditor Trust on account of their Allowed Claims;

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them as defined in the Plan.

NOW THEREFORE, for and in consideration of the premises, and the mutual promises and agreements contained herein and in the Plan, the receipt and sufficiency of which are hereby expressly acknowledged, the Debtors and Trustee hereby agree as follows:

**1.**     **Definitions**.

1.1 <u>Terms Defined Above</u>. As used in this Agreement, each of the terms "Debtors", "Agreement", "Court", "Plan", "Order", and "Trustee" shall have the meanings hereinabove set forth.

1.2 <u>Additional Defined Terms</u>.  As used herein, the following terms shall have the meanings set forth below, unless the context otherwise requires:

(a) "Beneficial Interest" shall mean the rights and interests of each of the Holders in and to the Trust Estate.

(b) "Code" shall mean the Internal Revenue Code of 1986, as amended from time to time.

(c) "Holder" shall mean a holder of an Allowed Claim under the Plan as determined from time to time.

(d) "Creditor Trust" shall have the meaning specified in Section 2.1 hereof.

(e) "Section" shall refer to sections of this Agreement (unless stated otherwise).

(f) "Trust Administrative Fund" shall have the meaning specified in Section 5.1 hereof.

(g) "Trust Estate" shall mean any and all property of the Debtors' Estates which shall be irrevocably assigned, transferred and conveyed to the Creditor Trust as of the Effective Date.

**2.**     **Authority of and Certain Directions to Trustee: Declaration of Trust**.

2.1 <u>Creation of Creditor Trust</u>.  Pursuant to Section IV.14 and the Confirmation Order, and effective as of the Effective Date of the Plan, the Holders and the Debtors hereby create the Creditor Trust for the benefit of the Holders .

2.2 <u>Property in the Creditor Trust</u>.  The Creditor Trust shall hold the legal title to all property at any time constituting a part of the Trust Estate and shall hold such property in trust to be administered and disposed of by it pursuant to the terms of this Agreement and the Plan for the benefit of the Holders. The Trustee is authorized to make disbursements and payments from the Trust Estate in accordance with the provisions of Sections 5 and 6 of this Agreement and pursuant to the Plan.

2.3 <u>Purpose of Liquidating Creditor Trust</u>.  This Creditor Trust is organized for the sole purposes of collecting, holding, liquidating, and distributing the Trust Estate and

administering, compromising, settling, withdrawing, objecting to, or litigating Causes of Action and objections to Claims under the Plan, with no objective to engage in the conduct of a trade or business. In accordance with such express and limited purposes, as of the Effective Date the Trustee is hereby authorized and directed (i) to take any and all steps necessary to maintain the Creditor Trust as a liquidating trust for Federal income tax purposes in accordance with Treasury Regulation Section 301.7701-4(d) and as a "grantor trust" subject to the provisions of Subchapter J, Subpart E of the Code unless otherwise required; (ii) to take all reasonable and necessary actions to conserve and protect the Trust Estate; (iii) to administer, compromise, settle, object to and litigate Causes of Action and objections to Claims under the Plan; and (iv) to maintain, operate or lease (for purposes of holding for sale), or sell or otherwise dispose of the corpus of the Trust Estate, in accordance with the terms of this Agreement, the Plan, or the instructions or orders of the Court, and to distribute the net proceeds of such disposition to the Holders, in as prompt, efficient and orderly a fashion as commercially reasonable in accordance with the provisions of Section 6 hereof. For the avoidance of doubt, nothing herein shall be deemed to impose a duty on the Trustees to liquidate the Trust Estate assets expeditiously. Further pursuant to these purposes, the Holders recognize that, although the Debtors are transferring the Trust Estate to the Creditor Trust, the Holders are acquiring Beneficial Interests in a trust for their benefit and, as such, will be deemed grantors of the Creditor Trust pursuant to the provisions of Subchapter J, Subpart E of the Code.

**3.     Beneficial Interests**.

3.1 <u>Creation of Beneficial Interests</u>.  Beneficial Interests shall be distributed to Holders as provided in the Plan.

3.2 <u>Sharing of Proceeds</u>. Holders of Beneficial Interests shall be entitled to distributions from the Creditor Trust pursuant to the priority afforded to the Claim of the Holder by the Bankruptcy Code and in accordance with the repayment protocol identified in the Plan. Holders of Beneficial Interests arising from General Unsecured Claims shall share ratably in the payment of all expenses, debts, charges, liabilities and obligations with respect to the Creditor Trust.

3.3 <u>No Transfer or Exchange</u>.  Beneficial Interests in the Creditor Trust will not be evidenced by any certificate or other instrument or document.  Beneficial Interests in the Creditor Trust are non-transferable and non-assignable other than to successors in interest, or by will, the laws of descent and distribution as existing in applicable jurisdictions, or by operation of law ("**Permitted Transfer**").

3.4 <u>Absolute Owners</u>.  The Trustee may deem and treat the persons who are Holders (as determined in accordance with the Plan) as the absolute owners of the Beneficial Interests in the Creditor Trust for the purpose of receiving distributions and payments thereof, or on account thereof, and for all other purposes whatsoever. Unless the Trustee receives actual written notice of a Permitted Transfer from the duly authorized transferee not less than 30 days prior to a distribution made pursuant to the terms of this Agreement, and subject to the applicable provisions of Bankruptcy Rule 3001(e), the Trustee shall have no duty or

obligation to make or direct any distributions or payments to such transferee of a Permitted Transfer.

3.5 <u>Means of Payment</u>. Cash payable to Holders pursuant to Section 6 hereof will be paid by checks drawn on an account maintained by the Creditor Trust.

4. **Delivery and Acceptance of Trust Estate**.

4.1.<u>Conveyance by Debtors</u>.  On the Effective Date of the Plan, the Debtors shall execute and deliver to the Trustee bills of sale, deeds, assumptions and assignments, and other instruments of conveyance (as applicable) of all of the assets in and of the Trust Estate as further specified in the Plan and the Confirmation Order. At any time and from time to time after the date hereof at the Trustee's request and without further consideration, the Debtors shall execute and deliver such other instruments of sale, transfer, conveyance, assignment and confirmation, and will cooperate and take such other actions as the Trustee may deem reasonably necessary or desirable in order to more effectively transfer, convey and assign all rights, title and interests in and to the Trust Estate to the Creditor Trust.

4.2 <u>Acceptance of Conveyance</u>.  The Trustee is hereby directed to, and the Trustee agrees that it will:

(a) accept delivery from the Debtors of the Trust Estate on behalf of the Creditor Trust;

(b) accept from the Debtors all bills of sale, deeds, assumptions and assignments, and all other instruments of conveyance required to be delivered by the Debtors with respect to the Trust Estate transferred to the Trustee on behalf of the Creditor Trust pursuant to or in connection with the Plan, the Confirmation Order, or this Agreement; and

(c) take such other action as may be required of the Creditor Trust hereunder, including the receipt and acceptance as part of the Trust Estate of any property or rights, including, without limitation, notes, other negotiable instruments, Causes of Action, and other chases in action, which the Trustee may receive in connection with or in consideration of the Trust Estate.

5. **Administration of Trust Estate**.

5.1 <u>Trust Administrative Fund</u>. As soon as cash becomes available from the Trust Estate, the Trustee shall establish a reserve fund (the "**Trust Administrative Fund**") for the payment by the Trustee of all reasonable and reasonably anticipated expenses, debts, charges, liabilities and obligations relating to the Trust Estate and its administration. The initial amount of the Trust Administrative Fund shall be $500,000.00 and shall be funded in such future amounts deemed reasonably necessary by the Trustee in its sole discretion from the Trust Estate. Any balance remaining in the Trust Administrative Fund, after the payment of all expenses, debts, charges, liabilities and obligations intended to be paid therefrom, shall be distributed to Holders as provided in Section 6 hereof. Any monies deposited in the Trust Administrative Fund pursuant to the terms of this Agreement shall be invested in

interest-bearing deposits or investments that satisfy the requirements of Section 5.3.2 hereof, and the interest earned thereon shall be credited thereto.

5.2 <u>Powers of the Trustee</u>.

5.2.1.  Administrative Powers. During the Trustee's administration of the Creditor Trust, and subject to all the other provisions of this Agreement, the Trustee may exercise the power:

(a)  to receive and hold all the assets of the Trust Estate and to have exclusive possession and control thereof as permissible under applicable law;

(b)  to enter into, perform and exercise rights under contracts binding upon the Creditor Trust (but not upon the Trustee in its respective individual or corporate capacities) which are reasonably incident to the administration of the Creditor Trust and which the Trustee, in the exercise of its best business judgment, reasonably believe to be in the best interests of the Creditor Trust;

(c)  to establish and maintain accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, into which the Trust Administrative Fund or other cash and property of the Creditor Trust may be deposited, and draw checks or make withdrawals from such accounts, and to pay or distribute such amounts of the Trust Estate as permitted or required under this Agreement;

(d)  to employ attorneys, accountants, appraisers, property managers, brokers, realtors, expert witnesses,  insurance, adjusters or other persons whose services may be necessary or advisable in the sole judgment of the Trustee, to advise or assist them in the discharge of their duties as Trustee, or otherwise in the exercise of any powers vested in the Trustee, and to pay from the Trust Estate reasonable compensation to such attorneys, accountants, appraisers, property managers, brokers, realtors, expert witnesses, insurance adjusters or other persons without formal Court approval;

(e)  to hold, operate, market, and lease (for the purposes of holding for sale) the assets in the Trust Estate;

(f)  to sell or otherwise dispose of the assets in the Trust Estate;

(g)  to collect and receive any accounts receivable, income, proceeds of sale, and distributions derived from or relating to the Trust Estate and to distribute the same to the Holders in accordance with the terms of this Agreement;

(h)  to pay any and all necessary expenses attributable or relating to the management, maintenance, operation, preservation or liquidation of the Trust Estate;

(i)  to investigate, file, compromise, settle, withdraw or litigate in the court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) objections to Claims

- 5 -

under the Plan;

G) to sue or be sued in connection with any matter arising from or related to the Plan or this Agreement that affects in any way the rights or obligations of the Creditor Trust, the Trustee or the Holders;

(k) to represent the interests of the Holders with respect to any matters relating to the Plan, this Agreement, or the Creditor Trust affecting the rights of such Holders;

(l) to act as representative of the Estate and to investigate, initiate, prosecute, settle or compromise any and all Causes of Action; and

(m) to do any and all other things, not in violation of any other terms of this Agreement or applicable law, which, in the reasonable business judgment of the Trustee, are necessary or appropriate for the proper liquidation, management, investment and distribution of the assets of the Trust Estate in accordance with the provisions of this Agreement and the Plan.

5.2.2 Objections to Claims. From and after the Effective Date of the Plan, and pursuant to Section 8.3 thereof, the Creditor Trust, through the Trustee, shall be the sole representative of the Debtors' estates for all purposes, including without limitation, investigating, settling, compromising, objecting to, and litigating in court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) objections to Claims under the Plan.

5.3    <u>Limitations on Trustee: Investments</u>.

5.3.1 <u>No Trade or Business</u>. The Trustee shall carry out the purposes of the Creditor Trust and the directions contained herein and shall not at any time enter into or engage in any business (except as may be consistent with the limited purposes of the Creditor Trust), including, without limitation, the purchase of any assets or property (other than such assets or property as are necessary to carry out the purposes of Section 7, Section 7, and Section 5.3.2 hereof), on behalf of the Creditor Trust or the Holders. The Trustee is directed to take all reasonable and necessary actions to dispose of the Trust Estate in as prompt, efficient and orderly a fashion as possible, to make timely distributions of the proceeds of the Trust Estate, and to otherwise not unduly prolong the duration of the Creditor Trust.

5.3.2    <u>Investments</u>. The Trustee shall invest any monies held at any time as part of the Trust Estate, including without limitation, in the Trust Administrative Fund, and any other reserve or escrow funds established pursuant to the terms of this Agreement, only in interest-bearing deposits or certificates of deposit issued by any federally insured banking institution or short-term investments and obligations of, or unconditionally guaranteed as to payment by, the United States of America and its agencies or instrumentalities, or as otherwise permitted pursuant to § 345 of the Bankruptcy Code, pending the need for the disbursement thereof in payment of costs, expenses, and

liabilities of the Creditor Trust or in making a distribution pursuant to Section 6 of this Agreement. The Trustee shall be restricted to the collection and holding of such monies and to the payment and distribution thereof for the purposes set forth in this Agreement and to the conservation and protection of the Trust Estate in accordance with the provisions hereof.

5.4   Transferee Liabilities.   If any liability shall be asserted against the Creditor Trust as transferee of the Trust Estate on account of any claimed liability of or through the Debtors, the Trustee may use such part of the Trust Estate as may be necessary in contesting any such claimed liability and in the payment, compromise, settlement and discharge thereof on terms that are both commercially reasonable and reasonably satisfactory to the Trustee. In no event shall the Trustee be required or obligated to use their own property, funds or assets for any such purposes.

5.5   Administration of Trust.   In administering the Creditor Trust, the Trustee, subject to the express limitations contained herein, is authorized and directed to do and perform all such acts, to execute and deliver such deeds, bills of sale, instruments of conveyance, and other documents as it may deem necessary or advisable to carry out the purposes of the Creditor Trust.

5.6   Payment of Backstop Facility, Promissory Note, and Backstop Fee. The Creditor Trust is authorized to enter into the Backstop Facility and the Promissory Note on the Effective Date and the Backstop Fee is authorized hereby. The repayment of the Backstop Facility, Promissory Note, the Backstop Fee, and any interest accrued will be made in accordance with the terms of the Backstop Commitment Letter, the Promissory Note and the plan. For avoidance of doubt, such amounts owed shall be paid from first available net proceeds of Creditor Trust Assets after satisfaction of the Allowed Amount of any Administrative Expense Claims, including the Allowed Administrative Expense Claims of Professionals, provided that the Backstop Facility and the Promissory Note will be repaid prior to any distributions from the Creditor Trust to Allowed General Unsecured Claims and other amounts necessary for administration of the Creditor Trust.   For avoidance of doubt, repayment of the Note shall occur only after satisfaction of all Allowed Administrative Claims (as defined in the Plan), but prior to any distributions from the Creditor Trust to Allowed General Unsecured Claims and any disbursement of Creditor Trust expenses not constituting Allowed Administrative Claims. The Backstop Fee ($10,000) will be payable in cash only if the Commitment Party makes the Contribution. The Backstop Fee will be paid at the same time as repayment of the Backstop Facility.

5.7   Payment of Expenses and Other Liabilities.   To the extent that the amount of funds in the Trust Administrative Fund is at any time insufficient, the Trustee shall pay from the Trust Estate all expenses, charges, liabilities and obligations of the Creditor Trust, including, without limiting the generality of the foregoing, such debts, liabilities, or obligations as may be payable from the Trust Estate, interest, taxes, assessments, and public charges of every kind and nature, and the costs, charges and expenses in connection with or arising out of the execution or administration of the Creditor Trust and the Trust Estate, and such other payments and disbursements as are provided for in this Agreement or which may be

reasonably determined by the Trustee to be proper charges against the Creditor Trust and the Trust Estate, and the Trustee, in their reasonable discretion and business judgment may determine to be necessary or advisable to meet or satisfy unascertained, unliquidated or contingent liabilities of the Creditor Trust. The Trustee shall make such payments without application to or order of the Bankruptcy Court.

5.7.1  Payment of U .S. Trustee's Fees. After the occurrence of the Effective Date, fees payable to the Office of the United States Trustee during the administration of the Plan and until the case is converted, dismissed or closed, shall be paid by the Trustee from the Trust Administrative Fund in accordance with Section 5.7 of this Agreement.

5.8  Fiscal Year.  The Creditor Trust's fiscal year shall end on December 31 of each year, unless the Trustee deems it advisable to establish some other date on which the fiscal year of the Creditor Trust shall end.

5.9  Reports.  The Trustee shall prepare, deliver, and file, as the case may be, reports as follows:

5.9.1   Prepare and file unaudited interim financial reports as may be required by regulatory authorities, applicable laws, rules or regulations or as the Trustee deems advisable during the fiscal year; and

5.9.2   Prepare, file and mail, within the time required by applicable law or regulation, necessary income tax information, tax returns or reports to the Holders and applicable taxing authorities, including, on an annual basis, the manner and calculation of the Creditor Trust's taxable gain or loss which the Creditor Trust would recognize if it were a separate taxable entity.

**6.      Source of Payments: Distributions to the Holders**.

6.1  Distributions from Trust Estate.  All payments to be made hereunder to the Holders shall be made only from the assets, income and proceeds of the Trust Estate and only to the extent that the Trustee shall have received sufficient  assets, income or proceeds of the Trust Estate to make such payments in accordance with the terms of this Section. Each Holder shall look solely to the assets, income and proceeds of the Trust Estate, and not to the Trustee in its corporate capacity for distribution to such Holder as herein provided.

6.2  Frequency and Amounts of Cash Payments.  As often as in the reasonable discretion and judgment of the Trustee there shall be in the Trust Estate monies in an amount sufficient to render feasible a distribution of cash to the Holders, the Trustee shall transfer and pay, or cause to be transferred and paid, to the Holders (subject to the provisions of Section 3 hereof) such aggregate amount of cash, if any, as shall then be held in the Creditor Trust, excluding reasonable amounts of cash held in the Trust Administrative Fund pursuant to Section 5.1 hereof or otherwise needed to pay the expenses, debts, charges, liabilities and, obligations of the Creditor Trust (the "**Distribution Amount**"). The aggregate amounts required to be distributed to the Holders shall be determined by the Trustee in its reasonable discretion and its determination shall be final and conclusive on all persons, in the absence

of gross negligence or willful misconduct on the part of the Trustee, and shall not be reviewed by the Court. In determining the amount of any such distribution, the Trustee may rely and shall be fully protected in relying upon the advice and opinion of independent public accountants or of counsel to the Trust.

6.3 <u>Establishment of the Claim Accounts</u>.

 6.3.1 (a) At least 30 days prior to the Effective Date of the Plan, but subject to amendment and correction by the Debtors and not less than five days prior to the Effective Date, the Debtors will deliver to the Trustee a list of all Holders Of Allowed Claims and Disputed Claims, including all such Claims arising from rejected leases and executory contracts (collectively, the "**Claims**"), the addresses of all holders of Claims as of a record date which is not more than 15 days prior to the date of the list, and the designation of each such claim as Allowed or Disputed, fixed or contingent, and liquidated or unliquidated (the "**Claims List**"). The Trustee shall be entitled to rely upon the Claims List in calculating and making distributions from the Trust Estate as provided herein; provided, however, that the Claims List shall be adjusted from time to time by the Trustee, as provided in Section 6.5 of this Agreement. The Trustee shall also revise the Claims List from time to time upon receipt of notice from the holder of a Claim stating that such Claim has been transferred pursuant to a Permitted Transfer to a new holder, "that the new holder has complied with any applicable provisions of Bankruptcy Rule 3001(e) (and providing evidence thereof), and setting forth the name and address of such new holder; provided, however, that the Trustee shall not be required to revise such Claims List during the 30 day period preceding the date of any distribution made hereunder. The Trustee shall establish the revised Claims List that is to be used in conjunction with the distribution of any particular Distribution Amount not less than 14 days prior to the date of such distribution .

 6.3.2 Upon receipt of the Claims List, the Trustee will establish on the Creditor Trust's books and records an account representing each Allowed or Disputed Claim as set forth on the Claims List (each, a "**Claim Account**"). It is expressly understood that the establishment of the Claim Accounts by the Trustee or its agents is solely for administrative convenience, and that amounts allocable to such Claim Accounts need not be segregated and may be commingled for investment purposes as specified herein.

6.4 <u>Allocation of Distributions from Trust Estate</u>. Pursuant to the priority assigned to each Beneficial Interest, with respect to each distribution made to the Holders pursuant to the terms of this Agreement, the Trustee will allocate to each Claim Account a Pro Rata portion of the Distribution Amount and will reallocate to other Claim Accounts (other than the Claim Accounts of holders of Claims whose distributions hereunder have been limited or whose Claims have been equitably subordinated under the Plan or by order of the Court) Pro Rata portions of such Distribution Amount previously allocated to any Claim Account on account of a Claim or portion thereof which has been disallowed as provided in Section 6.6 of this Agreement, in each case by multiplying the total amount of such Distribution

Amount by a fraction, the numerator of which is the amount of such Claim Account and the denominator of which is the total amount of Allowed and Disputed Claims as set forth on the Claims List (after reducing by the amount disallowed the amount of each Claim Account from which amounts have been disallowed.) With respect to each distribution made pursuant hereto, the Trustee shall distribute specified amounts to the Holders in accordance with the allocations determined in accordance with this Section. Allocations of the Distribution Amount relating to Disputed Claims shall be retained in the Creditor Trust by the Trustee as part of the Trust Estate pending resolution of the Disputed Claims and further distributions as provided for herein.

6.5  <u>Distributions of Property Allocated to Disputed Claims</u>.  At such time as the Trustee compromises, settles or resolves any or any portion of a Disputed Claim, by Final Order or otherwise (a "**Resolved Claim**"), the Trustee shall take the following actions with regard to the Distribution Amount allocated to the Claim Account established for that Resolved Claim (the "**Disputed Claim Distribution Amount**"): (i) distribute to the holder of the Resolved Claim the same portion of such Disputed Claim Distribution Amount as the portion, if any, of the Resolved Claim which is Allowed; (ii) reallocate to all other Claim Accounts pursuant to Section 6.4 the same portion of such Disputed Claim Distribution Amount as the portion, if any, of the Resolved Claim which was disallowed. Upon the final resolution of any Disputed Claim and the subsequent distribution or reallocation of the Disputed Claim Distribution Amount as herein provided, the Trustee shall adjust the Claims List to reflect the actions taken pursuant to this Section.

6.6  <u>Fractional Distributions</u>.  No distribution in fractions of cents shall be issued. If the Distribution Amount allocated to an Allowed Claim at the time of a distribution hereunder would include fractions of cents, the amount to be distributed shall be rounded down to the highest integral number of cents in the applicable Claim Account, but such rounding down shall not affect such allocation. The aggregate amount of the retained fractional distributions from the Distribution Amount shall be retained in the. Creditor Trust by the Trustee and shall remain part of the Trust Estate.

6.7  <u>Allocation of Unclaimed Property to Claim Accounts</u>.  If, in connection with any distribution under this Section 6, any Holder entitled to a distribution is not found at the address set forth in the Claims List, the Distribution Amount allocated to the Claim Account of such Holder shall be retained as part of the Trust Estate and shall remain allocated to such Holder's Claim Account until the time of the Final Distribution as further provided in Sections 6.8 and 6.9 of this Agreement.

6.8  <u>Distributions of Unclaimed Property</u>.  Unclaimed property held subject to a Claim Account shall be distributed as follows:

6.8.1  <u>Creditor Located</u>. If the holder of the Allowed Claim shall claim the property at any time before 30 days prior to the Final Distribution, then such property shall immediately be delivered to such Holder, unless previously distributed in accordance with Section 6.8.2, in which case the Holder shall have no rights or recourse whatsoever against the Trust Estate, the Trustee, or any agents or representatives thereof.

- 10 -

6.8.2    Unclaimed Property. All monies allocated to a Claim Account which the Trustee have previously attempted to distribute and which remain unclaimed as of 30 days prior to the date of the Final Distribution hereunder shall be reallocated Pro Rata to all remaining Claim Accounts of the Holders as though each Claim with respect to such unclaimed monies had been disallowed in its entirety, and the Claims List shall be adjusted accordingly.

6.9 Final Distribution.  Upon the final collection or liquidation of all of the assets, rights and interests comprising the Trust Estate, and in any event prior to the Termination Date (as defined in Section 6.10 hereof), the Trustee shall prepare a final accounting of any and all monies remaining in any accounts maintained by the Trustee on behalf of the Creditor Trust, including the Trust Administrative Fund, or otherwise remaining in the Trust Estate (the "**Final Cash**"). The final accounting may be made available upon the request of any holder of interests in assets of the Creditor Trust and/or the Trust Estate. Once the amount of the Final Cash has been determined, the Trustee shall deduct and pay from the Final Cash any and all permitted costs, expenses and liabilities of the Creditor Trust. The Trustee shall then allocate Pro Rata to the Claim Account of each Holder the net remaining amount of Final Cash (the "**Final Distribution**"), and the Trustee shall distribute the Final Distribution to the Holders.

6.10  Termination.  The Creditor Trust shall terminate upon the liquidation of all of the assets of the Trust Estate and the distribution of the proceeds thereof to the Holders as set forth above, which date shall not be more than three years from and after the Effective Date of the Plan (the "**Termination Date**"); provided, however, that if in the reasonable determination of the Trustee, in light of existing facts and circumstances, the liquidation of the Trust Estate and the distribution of the proceeds thereof will not be completed prior to the Termination Date, then not more than 90 days prior to the Termination Date, the Trustee may execute an amendment to this Section extending the Termination Date. Nothing in this Section shall be construed as limited the Trustee's ability to request further extensions of the Termination Date from the Court.

7.    **Other Duties of the Trustee**.

7.1 Management of Trust Estate. With respect to the assets of the Trust Estate, the Trustee may, if sufficient funds are available, purchase and maintain in existence such insurance as the Trustee deems reasonable and necessary or appropriate from time to time to protect the Creditor's Trust's, the Trustee, and the Holders' interests in the assets of the Trust Estate or from any potential claims or liabilities relating thereto or the distribution thereof.

7.2 No Implied Duties. The Trustee shall not manage, control, use, sell, dispose, collect or otherwise deal with the Trust Estate or otherwise take any action hereunder except as expressly provided herein, and no implied duties or obligations whatsoever of the Trustee shall be read into this Agreement.

**8.    Concerning the Trustee.**

8.1 <u>Acceptance by Trustee</u>. The Trustee accepts the Creditor Trust hereby created for the benefit of the Holders and agrees to act as Trustee of the Creditor Trust pursuant to the terms of this Agreement. The Trustee shall have and will exercise the rights and powers herein granted and shall be charged solely with the performance of the duties herein declared on the part of the Trustee. The Trustee also agree to receive and disburse all monies actually received by it constituting part of the Trust Estate pursuant to the terms of this Agreement and the Plan.

8.2 <u>Discretionary Submission of Questions</u>. Subject to the provisions of this Section 8, the Trustee, in its sole discretion and reasonable business judgment, may, but shall not be required to, submit to the Court, from time to time, any question or questions with respect to which the Trustee may desire to have explicit approval of the Court for the taking of any specific action proposed to be taken by the Trustee with respect to the Trust Estate, or any part thereof, and the administration and distribution of the Trust Estate. The written authorization of the Court set forth in a Final Order shall constitute approval by the court of the proposed action to be taken by the Trustee. All costs and expenses incurred by the Trustee in the exercise of any right, power, or authority conferred by this Section 8.2 shall be costs and reasonable expenses of the Trust Estate.

8.3 <u>Liability of the Trustee</u>.

8.3.1    <u>Limitation on Liability</u>. No provision of this Agreement shall be construed to impart any liability upon the Trustee unless it shall be proven that the Trustee's actions or omissions constituted gross negligence or willful misconduct in the exercise of or failure to exercise any right or power vested in the Trustee under this Agreement.

8.3.2    <u>Reliance on Certificates or Opinions</u>.  In the absence of gross negligence or willful misconduct on the part of the Trustee, the Trustee may conclusively rely, as to the truth of the statements and correctness of the opinions expressed upon any certificates or opinions furnished to the Trustee and conforming to the requirements of this Agreement.

8.3.3    <u>Discretion of Trustee</u>. The Trustee, within the limitations and restrictions expressed and imposed herein, may act freely under all or any of the rights, powers and authority conferred hereby, in all matters concerning the Trust Estate, after forming their best reasonable business judgment based upon the circumstances of any particular question or situation as to the best course to pursue, without the necessity of obtaining the consent or permission or authorization of the Holders, the Debtors, the Court, or of any official or officer; and the rights, powers and authority conferred on the Trustee by this Agreement are conferred in contemplation of such freedom of reasonable business judgment and action within the limitations and restrictions so expressed and imposed ; provided, however, that the Trustee shall not be liable for any error or exercise of judgment, unless it shall be proved that such Trustee were grossly negligent or acted in

a manner which constituted willful misconduct.

8.4 Reliance by Trustee.

    8.4.1   Genuineness of Documents.   The Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, objection, order, judgment, decree, or other paper or document reasonably believed by it to be genuine and to have been signed, made, entered or presented by the proper party, parties, official, officials, entity or entities.

    8.4.2   Retention of Counsel. The Trustee may consult with legal counsel and with independent public accountants and other experts. The Trustee shall not be liable for any action taken or suffered by them or omitted to be taken by them without gross negligence or willful misconduct in reliance on any opinion or certification of such accountants or in accordance with the advice of such counsel or experts, provided that such accountants, counsel and experts were selected and retained with ·reasonable care.

    8.4.3   Reliance on Trustee. No person dealing with the Trustee shall be obligated to see to the application of any monies, securities, or other property paid or delivered to them or to inquire into the expediency or propriety of any transaction or the right, power, or authority of the Trustee to enter into or consummate the same upon such terms as the Trustee may deem advisable. Persons dealing with the Trustee shall look only to the Trust Estate to satisfy any liability incurred by the Trustee to such persons in carrying out the terms of this Agreement, and, except as otherwise expressly provided herein, the Trustee shall have no personal, individual or corporate obligation to satisfy any such liability.

8.5 Indemnification.

    8.5.1   Indemnification of Trustee and Agents.  The Creditor Trust hereby indemnifies to the full extent of the Trust Estate any person or entity who was or is a party, or is threatened to be made a party to any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative by reason of the fact that such person or entity is or was one of the Trustee or an employee or agent of the Creditor Trust from and against any and all expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person or entity in connection with such action, suit or proceeding, including appeals thereof, if such person or entity acted without gross negligence and willful misconduct in the exercise and performance of any power or duties of such person or entity in accordance with this Agreement.

    8.5.2   Payment of Expenses. Expenses (including attorneys' fees) incurred in defending any action, suit or proceeding referred to in Section 8.5 may be paid by the Creditor Trust in advance of the final disposition of such action, suit or proceeding, upon an unde1iaking by one of the Trustee or an employee or agent. of the Creditor Trust to repay such amount unless-it shall ultimately be determined that such person or entity

- 13 -

is not entitled to be indemnified.

8.5.3   Insurance.  The Creditor Trust may maintain insurance during its existence and after its termination, at its expense, to protect itself and the Trustee, officers, employees or agents of the Creditor Trust of and from any liability, whether or not the Creditor Trust would have the legal power to directly indemnify the Trustee, officers, employees, or agents of the Creditor Trust against such liability. The terms "Trustee," "employer" or "agent" as used herein, where applicable, include the heirs, successors, executors, administrators, personal representatives, or estates of such persons or entities.

8.6 Costs and Expenses of Trustee.

8.6.1   Costs and Expenses. The Trustee shall pay out of the Trust Estate all reasonable costs, expenses and obligations incurred by the Trustee in carrying out its duties under this Agreement, incidental or related to the administration of the Creditor Trust without application to or under of the Bankruptcy Court, including, without limitation:

(a) any reasonable fees and expenses of attorneys, accountants, investment advisors, expert witnesses, insurance adjustors, property managers, realtors, brokers, professionals or other persons whom the Trustee may reasonably deem advisable to employ in connection with the Creditor Trust, or on its own behalf in accordance with the terms of this Agreement; and

(b) any taxes, charges and assessments which may be owed by, or levied or assessed against, the Trust Estate or any property held in trust hereunder.

8.7 Resignation and Removal.

8.7.1   Resignation. The Trustee may resign and be discharged from any future obligations and liabilities hereunder by giving written notice thereof to the Court at least 30 days prior to the effective date of such resignation. Such resignation shall become effective on the day specified in such notice

8.7.2   Appointment of a Successor Trustee.  If, at any time, the Trustee shall give notice of its intent to resign pursuant to Section 8.7 hereof, counsel to the Creditor Trust shall provide notice thereof to the Court, and the Court shall designate a successor Trustee to act under this Agreement.

8.8   Acceptance of Appointment by Successor Trustee. Any successor Trustee appointed hereunder shall execute an instrument accepting such appointment hereunder in the form determined by counsel for the Trust and shall deliver counterparts thereof to the Court. Thereupon, such successor Trustee shall, without any further act, become vested with all of the estates, properties, rights, powers, trusts and duties of its predecessor in the Creditor Trust hereunder with like effect as if originally named herein.

**9.  Supplement and Amendments to this Trust Agreement**.

9.1  Supplements and Amendment.  Subject to the Provisions of Sections 2 hereof, at any time and from time to time, and subject to approval by the Court if sought by the Trustee pursuant to Section 8.2 of this Agreement, the Trustee may execute a supplement or amendment hereto for the purpose of adding provisions to, or changing or eliminating provisions of, this Agreement, or amendments thereto, as specified in such vote or consent, provided, however, that no such supplement or amendment shall (i) require any Holder to furnish or advance funds to the Trustee or shall entail any additional personal liability or the surrender of any individual right on the part of any Holder except with the written consent of such Holder or (ii) without the consent of those Holders holding not less than 75% (in the aggregate dollar amount) of the Beneficial Interests, change or modify the provisions for distribution of the Trust Estate. In no event shall this Agreement be amended so as to change the purposes of the Creditor Trust as set forth in Section 2.

9.2  Notice of Form of Supplement and Amendments Requiring Vote or Consent.  A copy of each amendment or supplement (or a fair summary thereof) shall be furnished to the Holders promptly after the execution thereof, except that with respect to any proposed amendment or supplement for which the consent of the Holders is required, the form of such proposed supplement or amendment (or a fair summary thereof) shall be furnished to the Holders prior to the Trustee, seeking the approval thereof by vote or consent of the Holders.

9.3  Notice and Effect of Executed Amendment. Upon the execution of any declaration of amendment or supplement, this Agreement shall be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Agreement of the Trustee and the Holders shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendment, and all the terms and conditions of any such amendment or supplement shall be thereby deemed to be part of the terms and conditions of this Agreement for any and all purposes.

**10.   Miscellaneous**

10.1  Title to Trust Estate. No Holder shall have title to any part of the Trust Estate

10.2  Sales of Assets of the Trust Estate. Any sale or other conveyance of any assets of the Trust Estate, or part thereof, by the Trustee made in accordance with the terms of this Agreement shall bind the Holders and shall be effective to transfer or convey all right, title and interest of the Trustee and the Holders in and to such asset of the Trust Estate.

10.3  Notices. Unless otherwise expressly specified or permitted by the terms of the Plan or this Agreement, all notices shall be in writing and delivered by registered or certified mail, return receipt requested, or by a hand or by facsimile transmission (and confirmed by mail), in any such case addressed as follows:

If to the Trustee:

Newpoint Attn: Matthew Brash
5600 N. River Rd., #800
Rosemont, IL 60018

and if to any Holder, addressed to its latest mailing address reflected on the Claims List.

10.4   <u>Severability</u>. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

10.5   <u>Counterparts</u>.  This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument.

10.6   <u>Binding Agreement</u>. All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Trustee and their respective successors and assigns and any successor Trustee provided for in Section 8, his respective successors and assigns, and the Holders, and their respective personal representatives, successors and assigns. Any request, notice, direction, consent, waiver or other instrument or action by any party hereto or any Holder shall bind their respective heirs, personal representatives, successors and assigns.

10.7   <u>No Personal Liability of Holders</u>.  The Holders will not incur any personal liability through their ownership or possession of their Beneficial Interests, except for taxes imposed on the Holders pursuant to applicable provisions of federal, state or local law with 'respect to the receipt of such Beneficial Interests or distributions from or transactions of the Creditor Trust and other charges specified herein. Liabilities of the Creditor Trust are to be satisfied in all events (including the exhaustion of the Trust Estate) exclusively from the trust Estate and such liabilities are not to attach to or be paid from any amounts distributed to the Holders, regardless of the time at which such distribution took place, or from the assets of the Holders.

10.8   <u>Headings</u>.  The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

10.9   <u>Construction</u>.  Except where the context otherwise requires, words importing the masculine gender shall include the feminine, if appropriate; words importing the singular number shall include the plural number and vice versa ; and words importing persons shall include partnerships, associations, and corporations.

10.10   <u>Governing Law</u>.  This Agreement, including all matters of construction, validity and performance hereof, shall in all respects be governed by, and construed and interpreted in

accordance with the internal laws of the State of Illinois.

10.11 <u>Construction with the Plan</u>. The Plan is hereby incorporated fully by reference and is made a part hereof for all purposes. In the event of any inconsistency or conflict between the terms, conditions, definitions and provisions of this Agreement and the terms, conditions and provisions of the Plan, the terms, conditions, definitions and provisions of the Plan shall control.

10.12  <u>Subject to Court's Jurisdiction</u>.  The Court shall retain jurisdiction over this Creditor Trust, the Trust Estate, the Trustee and the Debtors to issue any and all orders and to take other actions necessary to the implementation of this Agreement, such jurisdiction to include, without limitation, the jurisdiction contemplated by Section 1142 of the Bankruptcy Code.

10.13  <u>Intention of the Parties</u>.  The Debtors, the Holders and the Trustee hereby express their intent to create and maintain the Creditor Trust as a liquidating trust for Federal income tax purposes in accordance with Treasury Regulation Section 301.7701-4(d) and as a "grantor trust" subject to the provisions of Subchapter J, Subpart E of the Code, and the Trustee further represent that the Creditor Trust shall not: (a) receive transfers of listed stocks, securities, any readily-marketable assets (other than those constituting the Trust Estate), or any assets of a going business; (b) receive and will not retain cash in excess of a reasonable amount to meet claims and contingent liabilities, determined in the reasonable discretion of the Trustee in accordance with the provisions herein; and (c) receive general or limited partnership interests or the unlisted stock of any single issuer that represents 80 percent or more of the stock of such issuer.

[*Signature page follows.*]

- 17 -

IN WITNESS WHEREOF, the parties have executed to have hereunto caused this Agreement to be duly executed, as of the day and year first written above.


**TRP Brands LLC**

By: _____

Name: _____
Title: _____


**The RoomPlace Furniture and Mattress LLC**

By: _____

Name: _____
Title: _____

**Trustee**

By: _____

Name: Matthew Brash (solely in his capacity as Trustee of the Creditor Trust)
Title: Creditor Trust Trustee and Authorized Signatory

*[Signature page to Liquidating Creditor Trust Agreement.]*

# Exhibit B

June 10, 2025

TRP Brands LLC
The RoomPlace Furniture and Mattress LLC
1000-46 N. Rohlwing Rd.
Lombard, IL 60148
Attn: Ms. Valerie Berman-Knight

Official Committee of Unsecured Creditors for the Chapter 11 Cases
c/o Matthew M. Wawrzyn
FisherBroyles, LLP
203 North LaSalle Street, Suite 2100
Chicago, IL 60601

<u>Backstop Facility Commitment Letter</u>[1]

Ladies and Gentlemen:

On February 2, 2024, TRP Brands LLC ("<u>TRP</u>") and The RoomPlace Furniture and Mattress LLC ("<u>RoomPlace</u>", together with TRP, the "<u>Debtors</u>"), filed voluntary petitions (the "<u>Chapter 11 Cases</u>")[2] for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Northern District of Illinois (the "<u>Bankruptcy Court</u>"), and the Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. The Debtors' *Amended Joint Chapter 11 Plan of Reorganization of TRP Brands LLC and The RoomPlace Furniture and Mattress, LLC* [ECF 584] (the "<u>Plan</u>")[3] and the *Joint Disclosure Statement for Chapter 11 Plan of Reorganization of TRP Brands LLC and The RoomPlace Furniture and Mattress LLC* [ECF 585] (the "<u>Disclosure Statement</u>") provide for the creation of a trust (the "<u>Creditor Trust</u>" or "<u>Borrower</u>") on the Effective Date of the Plan. In connection with establishment of the Creditor Trust, the Official Committee of Unsecured Creditors for the Chapter 11 Cases (the "<u>Committee</u>") requested that Furniture Asset Partners, LLC ("<u>FAP</u>" or the "<u>Commitment Party</u>", together with the Debtors, the "<u>Parties</u>") backstop up to a $150,000 one-time cash contribution (the "<u>Contribution</u>") to be made by the Debtors on the Effective Date into the Creditor Trust through the origination of an unsecured loan in an aggregate

---

[1]   This Commitment Letter is not an offer with respect to any securities, or a solicitation of acceptances of any Chapter 11 plan within the meaning of section 1125 of the Bankruptcy Code or any other plan of reorganization, scheme of arrangement, or similar process under any other applicable law. Any such offer or solicitation will comply with all applicable securities laws, provisions of the Bankruptcy Code and/or other applicable laws. No party shall be bound with respect to any transaction until the agreement, execution, and delivery of definitive documentation after obtaining all necessary and applicable internal and external approvals.

[2]   The Chapter 11 Cases are jointly administered under lead case number 24-01529 (the "<u>Lead Case</u>"). Docket number references contained herein shall refer to filings in the Lead Case.

[3]   Capitalized terms used but not defined herein have the meanings assigned to them in the Plan.

amount of the Contribution (the "<u>Backstop Facility</u>")[4] under Section 364 of the Bankruptcy Code subject to the conditions as outlined in Article 3 contained herein.

1.      <u>Commitment</u>

In connection with the foregoing, FAP is pleased to advise the Debtors and the Committee of its commitment to backstop the Contribution by providing the Backstop Facility in the amount of $150,000 (the "<u>Backstop Commitment</u>") upon the terms set forth or referred to in this Commitment Letter, the Promissory Note (the "<u>Promissory Note</u>") attached hereto as **Exhibit A**, the Plan, and subject only to the satisfaction or waiver by FAP of the conditions precedent outlined in Article 3 hereto.  If FAP is required to make the Contribution, the Backstop Facility will accrue interest at the rate of 8% per annum to be paid in kind.

The amount of the Contribution shall be determined as follows: on the Effective Date of the Plan, after taking into account the transfer of Cash from the Debtors to the Creditor Trust sufficient to pay (i) in an amount equal to $500,000 pursuant to Paragraph 4.a of the Global Settlement Agreement and, to the extent necessary, (ii) all ordinary and necessary expenses of conducting the Store Closing Sales including, but not limited to, payments under any Closing Store Bonus Plan, (iii) accrued and unpaid postpetition non-Professional payables existing as of the beginning of the Store Closing Sales for the reasonable, necessary costs and expenses of preserving the Estates, and (iv) any Professional Fees and expenses payable under the Monthly Professional Compensation Order, if there is less than $150,000 of Cash available in the Creditor Trust after paying or reserving appropriate amounts with respect to the obligations of the Creditor Trust related to clauses (ii), (iii) and (iv) of this paragraph, then the amount of the Contribution shall be the lesser of (i) $150,000 and (ii) such amount that is required for the Creditor Trust to have Cash in an amount up to $150,000 after paying or reserving appropriate amounts with respect to the obligations of the Creditor Trust related to clauses (ii), (iii) and (iv) of this paragraph; *provided* that, under no circumstances will the Commitment Party be required to fund more than $150,000.

Additionally, the repayment of the Backstop Facility and Promissory Note, the Backstop Fee (as defined below), and any interest accrued will be made from first available net proceeds of Creditor Trust Assets after satisfaction of the Allowed Amount of any Administrative Expense Claims, including the Allowed Administrative Expense Claims of Professionals, provided that the Backstop Facility and the Promissory Note will be repaid prior to any distributions from the Creditor Trust to Allowed General Unsecured Claims and any payments on account of other amounts necessary for administration of the Creditor Trust.  For avoidance of doubt, repayment of the Note shall occur only after satisfaction of all Allowed Administrative Claims (as defined in the Plan), but prior to any distributions from the Creditor Trust to Allowed General Unsecured Claims and any disbursement of Creditor Trust expenses not constituting Allowed Administrative Claims.

---

[4]      As of the date hereof, the Commitment Party holds a secured Class 1 Claim in the amount of $14,899,529 (the "<u>FAP Secured Claim</u>"). As detailed in the Disclosure Statement and Plan, FAP will receive New Equity Interests in the Reorganized Debtors as of the Effective Date in full and final satisfaction, compromise, settlement, release, and discharge of the FAP Secured Claim. In conjunction with the discharge of the FAP Secured Claim, FAP has agreed to make the Backstop Facility to backstop the Contribution into the Creditor Trust to fund certain working capital needs of the Creditor Trust.

2.      Backstop Fee

As consideration for the commitments and agreements of the Commitment Party hereunder, the Parties agree that the Creditor Trust shall pay or cause to be paid a nonrefundable backstop fee (the "Backstop Fee") in cash in the amount of $10,000. The Backstop Fee will be payable only if the Commitment Party makes the Contribution. The Backstop Fee will be paid at the same time as repayment of the Backstop Facility.

3.      Conditions

The Commitment Party's obligation to fund the Backstop Commitment and the agreements hereunder in respect of the Backstop Facility are subject solely to the prior or concurrent satisfaction or waiver of each of the following conditions:

(i)      The Bankruptcy Court shall have entered the Confirmation Order approving the Plan, both of which shall be in a form acceptable to the Commitment Party, in its sole discretion;

(ii)     There shall be no stay or injunction in effect with respect to the Confirmation Order, which such Confirmation Order shall contain approval of the releases;

(iii)    The New Equity Interests (with all conditions precedent thereto having been satisfied or waived) shall have been issued in accordance with the Plan and the New Organizational Documents; and

(iv)     All Plan Documents, agreements and instruments shall be (i) in a form acceptable to the Commitment Party, in its sole discretion, (ii) have been duly executed and delivered and (iii) be in full force and effect and not subject to any unfulfilled conditions or contingencies.

4.      Limitation of Liability

It is agreed that the Commitment Party shall only have liability to the Creditor Trust (as opposed to any other person) in conjunction with the Commitment Letter. Neither FAP nor its respective directors, officers, members, managers, employees, advisors, and agents shall be liable for any indirect, special, punitive or consequential damages in connection with this Commitment Letter, the Backstop Facility, or the transactions contemplated hereby.

5.      Amendment

This Commitment Letter may not be modified, amended, or otherwise altered except in writing executed and delivered jointly by the Debtors, the Creditor Trust, and FAP.

- 3 -

6.      Successors and Assigns

This Commitment Letter shall inure to the benefit of and be binding upon the Debtors, the Creditor Trust, and FAP and their respective successors and assigns, including, without limitation, any trustee that may be appointed in any jurisdiction.

7.      Entire Agreement

This Commitment Letter constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements, understandings, representations and statements, oral or written, between the Parties on the subject matter hereof, which agreements shall be of no further force or effect. Each Party acknowledges that, in entering into this Agreement, such Party is not relying on any statements or representations made by the other Parties other than as expressly set forth herein.

8.      Binding Agreement; No Conflict

Each of the Parties agrees that this Commitment Letter is a binding and enforceable agreement with respect to the subject matter herein, it being acknowledged and agreed that the commitment provided hereunder is subject to the satisfaction or waiver of the conditions established in Article 3 hereto.

9.      Governing Law

This Commitment Letter shall be governed by, interpreted, construed, and enforced in accordance with the laws of the State of Illinois, without regard for that State's conflicts of law or choice of law principles.

10.     Jurisdiction

The Bankruptcy Court (or, upon withdrawal of the reference to the Bankruptcy Court, the District Court for the Northern District of Illinois) shall retain exclusive jurisdiction and venue of this Commitment Letter and the Parties for the duration of the performance of the terms and provisions of this Commitment Letter.

11.     Effectiveness

The terms of this Commitment Letter will be effective upon the date hereof.

*[Signature page follows.]*

Very truly yours,

Furniture Asset Partners, LLC
By:_____
Name:
Title:

[NOTICE
ADDRESS]

TRP Brands LLC
By: _____
Name:
Title:
[NOTICE
ADDRESS]


The RoomPlace Furniture and
Mattress LLC
By: _____
Name:
Title:
[NOTICE
ADDRESS]

*[Signature Page to Backstop Facility Commitment Letter]*

## EXHIBIT A

Promissory Note

## PROMISSORY NOTE

**[MONTH] [DATE], 2025**

For value received, [INSERT LEGAL NAME OF THE CREDITOR TRUST], an [INSERT ENTITY TYPE AND STATE] (the "***Creditor Trust***"), hereby promises to pay to Furniture Asset Partners, LLC ("***Holder***"), the principal sum of [INSERT THE COMMITMENT AMOUNT]

[1] on the date on which the Creditor Trust has either (i) satisfied the Allowed Amount of any Administrative Expense Claims, including the Allowed Administrative Expense Claims of Professionals;[2] or (ii) has adequately reserved sufficient cash to satisfy all Administrative Expense Claims, including the Allowed Administrative Expense Claims of Professionals; and (iii) has cash available to pay the amount of this Note (the "***Maturity Date***"), together with interest thereon from the date hereof in accordance with the provisions of this Promissory Note (this "***Note***").

1. <u>Payment of Interest</u>.   Except as otherwise provided in paragraph 3(b)(i), interest shall accrue on the principal amount owing under this Note at the rate of 8% per annum (the "***Interest Rate***") to be paid in kind. The Creditor Trust shall pay to the Holder all accrued and unpaid interest in arrears on the last business day of each March, June, September and December, beginning on **[_____, 2025]** (each an "***Interest Payment Date***") and on the Maturity Date.  All interest on this Note payable prior to the Maturity Date shall be paid in-kind on each Interest Payment Date by capitalizing such interest and adding it to the aggregate outstanding principal amount of this Note on such Interest Payment Date (all such capitalized interest being referred to herein as "***Capitalized Interest***").   All accrued and unpaid interest outstanding on the Maturity Date shall be due and payable on such date in immediately available funds.  Repayment shall be subordinate to Allowed Administrative Claims as defined in the Plan, and senior to any distributions from the Creditor Trust to Allowed General Unsecured Claims and Creditor Trust expenses unless such expenses qualify as Allowed Administrative Claims.  Interest on this Note that becomes Capitalized Interest shall for all purposes of this Note be deemed to be principal of this Note and shall bear interest in accordance with the terms of this Note.

2. <u>Payment of Principal on Note</u>.

(a) <u>Maturity</u>.  On the Maturity Date, the Creditor Trust shall pay (i) the entire principal amount of this Note then outstanding, (ii) all accrued and unpaid interest thereon, and (iii) $10,000, as a backstop fee.

(b) <u>Optional Prepayments</u>.   The Creditor Trust may prepay the principal amount outstanding under this Note in whole or in part at any time without premium or penalty; <u>provided</u>, <u>however</u>, that all accrued and unpaid interest on this Note must be paid prior to any prepayment of principal.

---

[1] Pursuant to the Plan and the Backstop Commitment Letter, this amount shall not exceed ONE-HUNDRED AND FIFTY THOUSAND DOLLARS AND 00/100 CENTS ($150,000.00).

[2] Capitalized terms used but not defined herein have the meanings assigned to them in the *Amended Joint Chapter 11 Plan of Reorganization of TRP Brands LLC and The RoomPlace Furniture and Mattress, LLC* [ECF 584] (the "<u>Plan</u>").

3.  Event of Default.

(a) Definition.  For purposes of this Note, an "***Event of Default***" shall be deemed to have occurred if the Creditor Trust fails to pay when due and payable (whether at maturity or otherwise) any principal of, or any interest on or other amount on or in respect of, this Note.

(b) Consequences of Event of Default. Upon the occurrence and during the continuance of an Event of Default, the Holder may, at its option, increase the Interest Rate by an increment of two (2) percentage point(s) *per annum*.  Any increase of the Interest Rate resulting from the operation of this subparagraph shall terminate as of the close of business on the date on which no Event of Default exists.

4.  Payments.  All amounts payable to the Holder under or pursuant to this Note shall be paid in lawful money of the United States of America in immediately available funds, and in the event that any payments submitted hereunder are in funds not available until collected, said payments shall continue to bear interest in accordance with the terms hereof until collected.

5.  Waivers of Notice, etc.  The Creditor Trust waives presentment, demand, protest, notice of dishonor, notice of demand or intent to demand, notice of acceleration or intent to accelerate, and all other notices, and agrees that no extension or indulgence to the Creditor Trust, whether with or without notice, shall affect the obligations of the Creditor Trust.

6.  Amendment and Waiver.  The terms and conditions of this Note may not be amended, waived or modified except in a writing signed by a duly authorized officer of the Holder and the Creditor Trust expressly stating that the writing constitutes an amendment, waiver or modification of the terms of this Note.

7.  Transfers.  This Note shall be binding upon the successors and assigns of the Creditor Trust and shall inure to the benefit of the Holder and its successors and assigns, except that (i) the Creditor Trust shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of the Holder and (ii) the Holder shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of the Creditor Trust.

8.  Rights of Holder Cumulative.  No delay or failure of the Holder in exercising any right, power or privilege hereunder shall affect such right, power or privilege, nor shall any single or partial exercise thereof preclude any further exercise thereof, or the exercise of any other power, right or privilege.  The rights of the Holder hereunder are cumulative and not exclusive of any right or remedy which the Holder would otherwise have, whether by other instruments or by law.

9.  Notices.  All notices, demands or other communications to be given or delivered under or by reason of the provisions of this Note shall be in writing and shall be deemed to have been given when delivered personally to the recipient, sent to the recipient by reputable overnight courier service (charges prepaid), mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, or sent by telecopier.  Such notices, demands and other communications shall be sent to the Holder and to the Creditor Trust at the respective addresses indicated below:

If to the Creditor Trust:

Newport Advisors Corporation
Attn: Matt Brash
750 Old Hicokry Blvd Building 2, Suite 150
Brentwood, TN 37027

2

If to the Holder:

      Furniture Asset Partners LLC
      Attn: Bruce Berman
      1000-46 Rohlwing Road
      Lombard, IL 60148

With a copy to

      Eric Prezant and Matt Micheli
      Arnold & Porter Kaye Scholer LLP
      70 West Madison Street, Suite 4200
      Chicago, IL 60606-4321

or to such other address or to the attention of such other person as the recipient party has specified by prior written notice to the sending party.

      10. **GOVERNING LAW.   THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ILLINOIS.**

      11. <u>Jurisdiction</u>.   The parties hereto agree that any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Note or the transactions contemplated hereby may only be brought in Illinois state courts within Cook County and the United States District Court of the Northern District of Illinois, and each of the parties hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in any such court or that any such suit, action or proceeding which is brought in any such court has been brought in an inconvenient forum.   Process in any such suit, action or proceeding may be served on any party anywhere in the world, whether within or without the jurisdiction of any such court.

      12. **WAIVER OF JURY TRIAL.   THE CREDITOR TRUST (AND BY ITS ACCEPTANCE HEREOF, THE HOLDER) HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS NOTE AND FOR ANY COUNTERCLAIM THEREIN.**

      13. <u>Maximum Permitted Interest</u>.   It is the intention of the Creditor Trust and the Holder to conform strictly to all applicable usury laws now or hereafter in force, and any interest payable under this Note shall be subject to reduction to the amount not in excess of the maximum legal amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters.   In the event any interest is paid on this Note which is deemed to be in excess of the then legal maximum rate, then that portion of the interest payment representing an amount in excess of the then legal maximum rate shall be deemed a payment of principal and applied against the principal of this Note.

*[Signature page follows.]*

IN WITNESS WHEREOF, the Creditor Trust has caused this Note to be executed by its duly authorized officer on the day and year first above written.

[INSERT LEGAL NAME OF THE CREDITOR TRUST]

By_____

Its_____

_____

_____

[*Signature Page to Promissory Note*]

# Exhibit C

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>TRP BRANDS LLC, et al.<br><br><div align="right">Debtors.</div> | Chapter 11<br><br>Case No. 24-01529<br>(Jointly Administered)<br><br>Hon. David. Cleary |

**BOARD OF DIRECTORS AND OFFICERS OF THE REORGANIZED DEBTOR(S)**

The identities and affiliations of the individuals currently proposed to serve as members of the board of directors of TRP Holdings, Inc., as member-manager of the Reorganized Debtors are listed below:

- Bruce Berman: Chief Executive Officer
- Valerie Berman-Knight: President

The identities and affiliations of the individuals currently proposed to serve as officers of the Reorganized Debtors are listed below:

- Bruce Berman: Chief Executive Officer
- Valerie Berman-Knight: President

# Exhibit D

| Contract Counterparty | Cure Amount | Street Address |
|---|---|---|
| Accurate Background Services | $    - | 3800 Golf Rd Ste 200, Rolling Meadows, IL 60008 |
| ADP - Workforce Now | $    - | 100 NW Point Blvd., Elk Grove Village, IL 60007 |
| Alarm Detection Service Systems | $    7,508 | 1111 Church Rd., Aurora, IL 60505 |
| ADT Commercial | $    8,691 | 1501 Yamato Rd., Boca Raton, FL 33431 |
| Altimate Delivery Service | $    - | 3201 Tollview Dr., Rolling Meadows, IL 60008 |
| Cybersource | $    1,082 | PO Box 8999, San Francisco, CA 64128 |
| FedEX | $    - | 3885 Airways Blvd., Module J 2nd floor, Memphis, TN 38116 |
| FrontApp | $    - | 1455 Market St., FL 19, San Francisco, CA 94103 |
| Humano | $    26,708 | 4231 Balboa Ave., #1109, San Diego, CA 92117 |
| JDM | $    34,438 | 311 N. Main St., Atkinson, WI 53538 |
| Kaseya | $    - | 701 Brickell Avenue, Ste. 400, Miami, FL 33131 |
| Kount | $    750 | 1005 W Main St., Boise, ID 83702 |
| Metropolitan Warehouse Services | $    10,738 | 960 High Street, Perth Amboy, NJ 08861 |
| Package AI (Jenny Labs) | $    - | 4069 Holly Ct., Weston FL, 33331 |
| Rackpace | $    9,932 | 1718 Dry Creek Way Suite 115, San Antonio, TX 78259 |
| Shift 4 | $    - | 3501 Corporate Parkway, Center Valley, PA 18034 |
| Storis | $    10,480 | 400 Valley Road, Suite 302, Mr. Arlington, NJ 0756 |
| Tidal Commerce (new name Quantam epay) | $    - | 8185 E. Kaiser Blvd., Anaheim, CA 92808 |
| WASTE MANAGEMENT Lombard | $    - | 700 E. Butterfield Rd., 4th Floor, Lombard, IL 60148 |
| WASTE MANAGEMENT Lincolnwood | $    - | 700 E. Butterfield Rd., 4th Floor, Lombard, IL 60148 |
| Exclusive Concepts dba Agital (TRP Brands contract only) | $    15,329 | 1 Wall Street, Ste. 5, Burlington, MA 01803 |